## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-34028 |
| | § | |
| NORTHSTAR OFFSHORE GROUP, LLC | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| JAMES KATCHADURIAN, Litigation Trustee, on behalf of Northstar Litigation Trust, | § § § | |
| | § | ADVERSARY NO. 18-03079 |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; DAVID HAYES; S. GLYNN ROBERTS; GAYLON FREEMAN; MARK STEVENS; and JAMES P. ULM, II, | § § § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

## MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT
### AND BRIEF IN SUPPORT

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE**

**MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

# TABLE OF CONTENTS

**Page**

I.  Introduction ........................................................................................................1

II. Argument and Authorities ...............................................................................6

    A.    Plaintiff fails to state claims for fraudulent transfer against Movants. ...................7

        1.    Plaintiff fails to plead facts showing that any Movants caused Northstar to make fraudulent transfers. .......................................................9

        2.    Plaintiff fails to state a claim against any Movants for the payment of the purchase price to Propel Energy for the Creole Assets. .................11

        3.    Plaintiff fails to state a claim that the release of any Movant from a capital commitment, other than NGP-NOG, was a fraudulent transfer. ...................................................................................................13

        4.    Plaintiff fails to state a claim under TUFTA that the release of NGP-NOG's Supplemental Commitment was a fraudulent transfer. ........16

        5.    NGP-NOG's Supplemental Commitment was not Northstar's property under 11 U.S.C. § 548 because the Supplemental Commitment would not have been an asset of Northstar's bankruptcy estate. .......................................................................................18

        6.    Plaintiff fails to plead actual fraudulent-transfer claims with the particularity that Federal Rule of Civil Procedure 9(b) requires. ..............20

        7.    Plaintiff violates Federal Rule of Civil Procedure Rule 8(a) by impermissibly grouping together Defendants. ...........................................24

        8.    Plaintiff fails to identify any "triggering" unsecured creditor required to state a claim under 11 U.S.C. § 544(b). ...................................25

        9.    Plaintiff fails to plausibly establish that Northstar received less than reasonably equivalent value for its release of Supplemental Commitments. .....................................................................................26

        10.    Plaintiff fails to plead facts supporting Northstar's insolvency at the time of each alleged transfer. ..........................................................28

        11.    The one-year statute of limitations bars Plaintiff's constructive fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b). ....................................................................................30

12.   Plaintiff's other fraudulent-transfer claims are barred to the extent they seek to avoid transfers beyond the relevant statutes of limitations. ...........................................................................31

B.   Plaintiff fails to state a claim for breach of fiduciary duty against Movants. ........31

1.   Plaintiff fails to plead facts rebutting the business-judgment-rule presumption protecting Individual Movants. ...............................................32

a.   Plaintiff fails to state a claim that any Individual Movant breached his duty of loyalty. ...........................................................32

i.   Plaintiff fails to show that Individual Movants were interested in any transaction at issue. ...................................33

ii.   Plaintiff fails to show that Individual Movants lacked independence. ....................................................................35

b.   Plaintiff fails to state a claim that any Individual Movant breached his duty of care to Northstar. ...........................................36

2.   Plaintiff fails to plausibly allege that NGP-NOG owed fiduciary duties to Northstar. ......................................................................................37

C.   Plaintiff fails to state a claim for breach of contract against NGP-NOG. ..............39

1.   Plaintiff misrepresents the term of the Contract he claims NGP-NOG breached. ......................................................................................39

2.   Plaintiff fails to allege that NGP-NOG breached its obligation to pay the Working Capital Deficit, as that term is defined in the Contract. ......................................................................................41

3.   Plaintiff cannot allege that NGP-NOG failed to pay the NOG Contribution. ......................................................................................42

D.   Plaintiff fails to state a claim for conspiracy against Movants. ............................43

1.   Plaintiff fails to state a claim for conspiracy to commit breaches of fiduciary duty. ......................................................................................43

a.   Movants cannot conspire with each other. ......................................43

b.   Plaintiff fails to plead facts supporting elements of a conspiracy claim. .........................................................................44

2.   Plaintiff fails to state a claim for conspiracy to commit fraudulent transfers. ......................................................................................44

E.      Plaintiff fails to state a claim for aiding and abetting. ...........................................45

F.      Any amendment to the Complaint would be futile.................................................45

III.    Conclusion ........................................................................................................................45

# TABLE OF AUTHORITIES

## Cases

*Asarco LLC v. Americas Mining Corp.*,
    382 B.R. 49 (S.D. Tex. 2007) .................................................................................................. 10, 32

*ASARCO LLC v. Americas Mining Corp.*,
    396 B.R. 278 (S.D. Tex. 2008) ...................................................................................................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................................... 7

*Baker v. Great N. Energy, Inc.*,
    No. 3:14-CV-0240, 2014 WL 6805483 (N.D. Tex. Dec. 3, 2014) ...................................... 41

*Begier v. Internal Revenue Serv.*,
    496 U.S. 53 (1990) ................................................................................................................... 15, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 6, 7, 44

*BFP v. Resolution Tr. Corp.*,
    511 U.S. 531 (1994) ........................................................................................................................ 26

*Clapper v. Am Realty Inv'rs, Inc.*,
    3:14-CV-2970-D, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016) ........................................... 12

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................................. 13, 40

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015) ............................................. 24

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ........................................................................................................ 21

*Freuler v. Parker*,
    CIV.A., H-10-3148, 2012 WL 896414 (S.D. Tex. Mar. 14, 2012), *aff'd*, 517 F. App'x 227 (5th Cir. 2013) ........ 24

*Frontier Bank v. Brown (In re Northern Merchandise, Inc.)*,
    371 F.3d 1056 (9th Cir. 2004) ...................................................................................................... 27

*Gladstone v. U.S. Bancorp*,
    811 F.3d 1133 (9th Cir. 2016) ................................................................................................ 15, 19

*Glaser v. Enzo Biochem, Inc.*,
    303 F.Supp.2d 724 (E.D.Va. 2003) ............................................................................................ 21

*Griggs v. State Farm Lloyds*,
    181 F.3d 694 (5th Cir. 1999) ........................................................................................................ 24

*Grocers Supply Co. v. Intercity Inv. Props., Inc.*,
    795 S.W.2d 225 (Tex. App.—Houston [14th Dist.] 1990, no writ ..................................... 17

*Gurganus v. Furniss*,
    3:15-CV-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016) ..................................... 24

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ..................................................................................................... 7

*In re ATP Oil & Gas Corp.*,
    711 F. App'x 216 (5th Cir. 2017) ..................................................................................... 29, 44, 45

*In re Brown Med. Ctr., Inc.*,
   552 B.R. 165 (S.D. Tex. 2016) ......................................................................................23

*In re Consol. Indus. Corp.*,
   397 F.3d 524 (7th Cir. 2005) ..................................................................................30, 31

*In re CoServ, LLC*,
   273 B.R. 487 (Bankr. N.D. Tex. 2002) ........................................................................19

*In re Elrod Holdings Corp.*,
   394 B.R. 751 (Bankr. D. Del. 2008) ......................................................................12, 15

*In re Expert S. Tulsa, LLC*,
   534 B.R. 400 (B.A.P. 10th Cir. 2015) ..........................................................................26

*In re Flashcom, Inc.*,
   647 F. App'x 689 (9th Cir. 2016) ..................................................................................15

*In re Hechinger Inv. Co. of Del.*,
   327 B.R. 537 (D. Del. 2005) .........................................................................................23

*In re Int'l Mgmt. Assoc.*,
   399 F.3d 1288 (11th Cir. 2005) ....................................................................................12

*In re KKR Fin. Holdings LLC S'holder Litig.*,
   101 A.3d 980 (Del. Ch. 2014) ......................................................................................10

*In re Life Partners Holdings, Inc.*,
   No. 15-40289-RFN11, 2017 WL 5599485 (N.D. Tex. Nov. 17, 2017) ...................passim

*In re Lockspur, Inc.*,
   82 B.R. 37 (Bankr. E.D La. 1987) ................................................................................19

*In re Maple Mortg., Inc.*,
   81 F.3d 592 (5th Cir. 1996) ..........................................................................................19

*In re Moore*,
   608 F.3d 253 (5th Cir. 2010) ..................................................................................25, 30

*In re Morton's Rest. Grp., Inc. S'holders Litig.*,
   74 A.3d 656 (Del. Ch. 2013) ..................................................................................38, 39

*In re New Town Mall*,
   17 B.R. 326 (Bankr. D.S.D. 1982) ...............................................................................19

*In re Rine & Rine Auctioneers, Inc.*,
   74 F.3d 854 (8th Cir. 1996) ..........................................................................................19

*In re SMTC Mfg. of Tex.*,
   421 B.R. 251 (Bankr. W.D. Tex. 2009) .......................................................................26

*In re Southmark Corp.*,
   95 F.3d 53 (5th Cir. 1996) ............................................................................................20

*In re the Brown Schools*,
   386 B.R. 37 (Bankr. D. Del. 2008) ..............................................................................45

*In re Transamerica Airlines, Inc.*, CIV.A.,
   1039-N, 2006 WL 587846 (Del. Ch. Feb. 28, 2006) ...................................................44

*In re Xtreme Power Inc.*,
   563 B.R. 614 (Bankr. W.D. Tex. 2016) ...................................................................passim

*Ingalls v. Edgewater Private Equity Fund III, L.P.*,
   CIV.A-H-05-1392, 2005 WL 2647962 (S.D. Tex. Oct. 17, 2005) ...............................21

**Motion to Dismiss Plaintiff's Original Complaint– Page v**

*Janvey v. Dillon Gage, Inc. of Dallas*,
856 F.3d 377 (5th Cir. 2017) ........................................................................................................29

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) ........................................................................................................30

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011) ........................................................................................14, 34, 40

*Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ........................................................................................................20

*Lucas v. Ocwen Home Loan Serv.*,
No. 3:13-CV-1057, 2014 WL 7059274 (N.D. Tex. Nov. 21, 2014), *report and recommendation adopted*, 2014
WL 7146033 (N.D. Tex. Dec. 12, 2014) ......................................................................................42

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984) ......................................................................................................15

*Marcus Lee Assocs. v. Wachovia Bank, NA (In re Marcus Lee Assocs.)*,
422 B.R. 21 (Bankr. E.D. Pa. 2009) .............................................................................................19

*Marshall v. FIA Card Servs. (In re Marshall)*,
372 B.R. 511 (Bankr. D. Kan. 2007), rev'd on other grounds 550 F.3d 1251 (10th Cir. 2008) ...........................19

*Matter of Besing*,
981 F.2d 1488 (5th Cir. 1993) ......................................................................................................26

*McPadden v. Sidhu*,
964 A.2d 1262 (Del. Ch. 2008) .....................................................................................................37

*Miramar Firefighters Pension Fund v. AboveNet, Inc.*,
C.A. 7376-VCN, 2013 WL 4033905 (Del. Ch. July 31, 2013)...............................................10, 36

*Mullins v. TestAmerica, Inc.*,
564 F.3d 386 (5th Cir. 2009) ..................................................................................................17, 18

*Norris v. Hearst Tr.*,
500 F.3d 454 (5th Cir. 2007) ..................................................................................................17, 30

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
CIV. A., 20228-NC, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ...............................................36

*Official Committee of Unsecured Creditors v. Meltzer*,
1:17-CV-256-NT, 2018 WL 2123558 (D. Me. May 8, 2018) ..................................................10, 36

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*,
3:12-CV-4641-N, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) .........................................44, 45

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002) ....................................................................................10, 33, 35

*Papasan v. Allain*,
478 U.S. 265 (1986)..........................................................................................................................7

*Peacock v. AARP, Inc.*,
181 F. Supp. 3d 430 (S.D. Tex. 2016) .....................................................................................14, 40

*Pilepro, LLC v. Chang*,
152 F. Supp. 3d 659 (W.D. Tex. 2016)..........................................................................................10

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
102 A.3d 155 (Del. Ch. 2014) ................................................................................................33, 45

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ........................................................................................................45

**Motion to Dismiss Plaintiff's Original Complaint– Page vi**

*Roach Automotive v. Daimler Chrysler Fin. Servs. Americas (In re Roach Automotive)*,
    540 B.R. 146 (Bankr. W.D. Pa. 2007) ............................................................................19

*Robinson v. Watts Detective Agency, Inc.*,
    685 F.2d 729 (1st Cir. 1982) ..........................................................................................15

*Smith v. Van Gorkom*,
    488 A.2d 858 (Del. 1985) ...............................................................................................37

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) .........................................................................................13

*Taggatz v. Bank of Onalaska (In re Taggatz)*,
    106 B.R. 983 (Bankr. W.D. Wis. 1989)..........................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................17, 30

*Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ................................................44

*Thermopylae Capital Partners, L.P. v. Simbol, Inc.*,
    No. 10619-VCG, 2016 WL 368170 (Del Chan. Jan. 29, 2016).......................................38

*Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*,
    529 B.R. 147 (Bankr. W.D. Tex. 2015)....................................................................21, 37

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
    No. 3:03-CV-2490-N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004)..............................21

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005)...........................................................................................44

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) .........................................................................................21

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
    479 B.R. 405 (N.D. Tex. 2012) ......................................................................................25

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ....................................................................................13, 40

*Vision Bank v. Jordan*, 3:11-CV-2065-B,
    2012 WL 716097 (N.D. Tex. Mar. 5, 2012) ...................................................................21

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .........................................................................................21

## Statutes

11 U.S.C. § 101(54)..........................................................................................................15, 18

11 U.S.C. § 365(c)(2) ...............................................................................................................19

11 U.S.C. § 541 ........................................................................................................................15, 19

11 U.S.C. § 544 ........................................................................................................................30, 31

11 U.S.C. § 544(b).............................................................................................................6, 11, 25

11 U.S.C. § 548 ............................................................................................................................passim

11 U.S.C. § 548(a)(1) ................................................................................................................11, 31

11 U.S.C. § 548(a)(1)(A) ..................................................................................................20, 21, 22, 24

11 U.S.C. § 548(a)(1)(B) .......................................................................................................24, 26, 28

11 U.S.C. § 548(a)(2)(A) ......................................................................................................................26

11 U.S.C. § 550(a) .......................................................................................................................11, 15, 16

11 U.S.C. § 550(a)(1)-(2) ....................................................................................................................12

TEX. BUS. & COM CODE § 24.006.................................................................................................16, 24

TEX. BUS. & COM. CODE § 24.005(a)(1)....................................................................................20, 22, 24

TEX. BUS. & COM. CODE § 24.005(a)(1)-(2) ..........................................................................................31

TEX. BUS. & COM. CODE § 24.005(a)(2)..............................................................................................24

TEX. BUS. & COM. CODE § 24.006(a)...................................................................................................31

TEX. BUS. & COM. CODE § 24.006(b)........................................................................................6, 30, 31

TEX. BUS. & COM. CODE ANN. § 24.002(12) .................................................................................15, 16

TEX. BUS. & COM. CODE ANN. § 24.002(13) ........................................................................................17

TEX. BUS. & COM. CODE ANN. § 24.002(2)..........................................................................................15

TEX. BUS. & COM. CODE ANN. § 24.002(2)(A)....................................................................................16

TEX. BUS. & COM. CODE ANN. § 24.002(8)..........................................................................................17

TEX. BUS. & COM. CODE ANN. § 24.004(a)..........................................................................................26

TEX. BUS. & COM. CODE ANN. § 24.005 ..............................................................................................16

TEX. BUS. & COM. CODE ANN. § 24.005(a)..........................................................................................25

TEX. BUS. & COM. CODE ANN. § 24.005(b)..........................................................................................23

TEX. BUS. & COM. CODE ANN. § 24.005(d)..........................................................................................26

TEX. BUS. & COM. CODE ANN. § 24.006 ..............................................................................................28

TEX. BUS. & COM. CODE ANN. § 24.008 .......................................................................................11, 16

TEX. BUS. & COM. CODE ANN. § 24.009 ..............................................................................................11

TEX. BUS. & COM. CODE ANN. § 24.010(a)(1)-(2) ...............................................................................31

TEX. BUS. & COM. CODE ANN. § 24.010(a)(3) ....................................................................................30

TEX. BUS. & COMM. CODE ANN. § 24.003(a)......................................................................................29

TEX. BUS. & COMM. CODE ANN. § 24.003(b)......................................................................................29

## Rules

Fed. R. Civ. P. 7012.................................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................................1

Fed. R. Civ. P. 8 .................................................................................................................................6, 24

Fed. R. Civ. P. 8(a) .......................................................................................................................5, 24, 25

Fed. R. Civ. P. 9(b) .......................................................................................................................5, 20, 21

Fed. R. Bankr. P. 7008.........................................................................................................................24

Fed. R. Bankr. P. 7009.........................................................................................................................20

**Other Authorities**

9 ANDERSON ON THE UNIFORM COMMERCIAL CODE § 9-301:15.................................................................................17

U.C.C. Art. 9.................................................................................................................................................17

Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, Defendants NGP Energy Capital Management, L.L.C., NGP X US Holdings L.P., NGP Natural Resources X, L.P., NGP X Parallel Holdings, L.P., NGP Natural Resources X Parallel Fund, L.P., and NOG Royalty Holdings, L.P. (together, "**Entity Movants**"), and Christopher Ray, Jesse Bomer, Tomas Ackerman, David Albin, and David Hayes (together, "**Individual Movants**") (collectively, "**Movants**") ask that the Court dismiss with prejudice all claims asserted against them by James Katchadurian, Trustee of the Northstar Litigation Trust ("**Plaintiff**") in Plaintiff's Original Complaint [Doc. 1224] (the "**Complaint**").

## I.      Introduction

Plaintiff bases his claims on nothing more than conclusory allegations and mere recitations of the elements of causes of action.  The Complaint is devoid of factual allegations necessary to support the assumption underlying Plaintiff's claims.  A central premise of the Complaint is that, because former individual managers of debtor Northstar Offshore Group, LLC ("**Northstar**") had an unspecified affiliation with one of Northstar's principal investors, that unspecified affiliation gave the principal investor control over Northstar and gave those individual managers motive to bankrupt Northstar.

Plaintiff alleges fraudulent transfers and breaches of fiduciary duty (Counts 1-3) that depend on that premise.  But Plaintiff pleads no facts plausibly suggesting that any Movant could cause Northstar to make a fraudulent transfer.  No facts show that (1) any Movant controlled the Northstar board of managers; or (2) any Individual Movant had authority to act on behalf of any Entity Movant.  Similarly, Plaintiff's claim for breach of fiduciary duty alleges no more than the *possibility* of breaches of the duties of loyalty or care where there are no facts explaining (1) the

relationship between any Individual Movant and any Entity Movant; or (2) how any Individual Movant was dominated by any Entity Movant.

The Complaint further suffers from another glaring factual insufficiency:  Plaintiff ignores the fact that Movants left Northstar with funding sufficient to pay Northstar's liabilities as of September 22, 2014—the date of the closing of the sale of Northstar to Lafitte Energy Corp.  As Plaintiff acknowledges in the Complaint, a Movant contracted with Northstar to fund at the closing of the sale of Northstar—and did in fact fund at the closing—an amount that the parties agreed was sufficient to cover Northstar's remaining liabilities.  Among other things, Plaintiff acknowledges that, in connection with the September 2014 transaction, Northstar paid off its existing secured bank debt,[1] which totaled more than $120 million.[2]  Furthermore, Plaintiff fails to explain – nor can he explain – how Movants could be liable for having funded an amount that Northstar agreed was sufficient to pay its existing liabilities at that time.  Moreover, Northstar did not file for bankruptcy for nearly two years after the September 2014 transaction.[3]

In an obvious attempt to hide these factual insufficiencies, Plaintiff makes *demonstrably false allegations that are not the basis for any claim*.  In particular, Plaintiff alleges that, "[t]o avoid their capital obligations and risk of reputational harm of a bankruptcy, Defendants agreed to sell Northstar to an obviously risky, non-creditworthy buyer."[4]  The sole basis for this accusation is the allegation that the buyer's parent company, Platinum Partners, was "a Ponzi scheme" and that "[i]ts subsidiaries are now bankrupt."[5]  But public records available to Plaintiff

---

[1] The Complaint ¶¶ 41, 51, 53-54.
[2] The Contract ¶ C.
[3] In re Northstar Offshore Group, LLC, Case No. 16-34028, Doc. 1 (S.D. Tex. Aug. 12, 2016) (Involuntary Petition).
[4] The Complaint ¶ 48.
[5] The Complaint ¶ 50.

reveal that Platinum Partners did not file for bankruptcy until October 18, 2016—over two years *after* the sale of Northstar.[6]  Even more telling, the complaint that the Securities and Exchange Commission filed against the Platinum Partners entities managing the bankrupt Platinum Partners hedge funds and their officers on December 19, 2016—over two years *after* the sale of Northstar—confirms that the fraud was intentionally and systematically hidden from everyone but the perpetuators of the fraud through 2016.[7]

The central feature of Plaintiff's allegations regarding Platinum Partners is that Movants should have known that Platinum Partners was a Ponzi scheme *at the time of the sale of Northstar* to Platinum Partners' subsidiary in September 2014.  But the Securities and Exchange Commission's complaint, which spelled out publicly for the first time the details of Platinum Partners' fraud, acknowledges that *no one*—including Movants—knew or could have known about Platinum Partners' fraud until 2016:

- "To existing and prospective investors, Platinum Management projected stability and confidence, reporting steady, positive returns every year that averaged 17% annually from 2003-15."[8]

- "Meanwhile, in 2014-15, PPVA's liquidity crisis worsened, and Platinum Management resorted to other schemes to keep the fund afloat. For example, faced with relying on heavy short-term borrowing at annual interest rates as high as 19%, Platinum Management and PPVA CFO San Filippo told PPVA's auditor that the loans were done to complete 'investment transactions' —*a false explanation provided to investors in the fund's audited financials, when they were finally released to investors months later than they were supposed to be*. Platinum Management's *internal* documents confirmed that the real purpose for the high- interest borrowing was to ease the fund's liquidity constraints."[9]

---

[6] *See Platinum (In re Platinum Partners Value Arbitrage Fund L.P.*, No. 16-12925-scc, Dkt. No. 1 (Bankr. S.D.N.Y. Oct. 18, 2016); *In re Platinum Partners Value Arbitrage Fund (Int'l) Ltd.*, No. 16-12934-scc, Dkt. No. 1 (Bankr. S.D.N.Y. Oct. 18, 2016).  Plaintiff does not identify a specific Platinum Partners fund in the Complaint, referring only to "Platinum Partners."  The Complaint ¶ 8.

[7] *See* Complaint filed in Cause No. 16-cv-6848; in the United States District Court for the Eastern District of New York, attached as Exhibit A ("SEC Complaint").

[8] SEC Complaint ¶ 2, Exhibit A.

[9] SEC Complaint ¶ 6, Exhibit A (emphasis added).

- "*On the surface, PPVA and PPCO were highly successful funds.* As of March 2016, Platinum Management reported that PPVA had almost $1.1 billion in AUM, and PPCO had almost $600 million in AUM. Also, PPVA reported a virtually unbroken string of strong and steady reported performance, with its NAV going up each year from 2003 to 2015, for an average annual return of 17%, with typically small gains reported for 85% of the months throughout this period."[10]

- "Beneath the surface, however, lurked serious problems, which *defendants kept from investors for years*."[11]

- "Platinum Management's external auditor in early 2015 reported to it that 'a material weakness exists in the Master Fund's investment valuation process related to its Level 3 investments.' *Platinum Management did not disclose to its investors this important information*."[12]

In fact, well after the September 2014 sale of Northstar to Platinum, both Northstar and another Platinum-controlled entity, Black Elk Energy Offshore Operations, LLC ("**Black Elk**"),[13] filed Chapter 11 cases in this Court (without any allegation by any party-in-interest at the time of the filing of the bankruptcy cases that Platinum was operating as a Ponzi scheme), and continued to operate their estates as debtors-in-possession through confirmation of their respective plans.[14]

Any claims that Plaintiff possesses are against Platinum Partners rather than Movants. It is only because Platinum Partners is in bankruptcy that Plaintiff attempted to assert his baseless and factually and legally insufficient claims against Movants. The implicit assumption of Plaintiff's allegations is that, if Movants knew that Platinum Partners was a fraud at the time of the sale of Northstar to Platinum Partners' subsidiary, then Movants would somehow be vicariously liable for actions that Platinum Partners took with respect to Northstar. But there is

---

[10] SEC Complaint ¶ 42, Exhibit A (emphasis added).

[11] SEC Complaint ¶ 43, Exhibit A (emphasis added).

[12] SEC Complaint ¶ 47, Exhibit A (emphasis added).

[13] *See* In re Black Elk Energy Offshore Operations, LLC, Case. No. 15-34287, Doc. 115 (S.D. Tex. Sep. 8, 2015).

[14] *See* In re Black Elk Energy Offshore Operations, LLC, Case. No. 15-34287, Doc. 1204 (S.D. Tex. July 16, 2016). (Order Confirming Black Elk's Plan); In re Northstar Offshore Group, LLC, Case No. 16-34028, Doc. 1078 (S.D. Tex. Dec. 22, 2017) (Order Confirming Northstar's Plan).

no law that would make Movants vicariously liable for acts that Platinum Partners committed *after* it purchased Northstar.  As explained above, Movants left Northstar with funding that Northstar agreed was sufficient to pay all of Northstar's liabilities as of the date of the closing of the sale of Northstar.  And no one—including Movants—knew of Platinum Partners' fraud until over two years *after* Platinum Partners' subsidiary purchased Northstar.  Plaintiff's only reason for including allegations about Platinum Partners being a "Ponzi scheme" was to seek to prejudice the Court against Defendants by unfairly suggesting that there must be some linkage between Defendants and the unrelated misconduct of Platinum Partners subsequently discovered by authorities long after the sale of Northstar.  The Court should strike Plaintiff's gratuitous and false allegations regarding Platinum Partners.

Plaintiff's claims further suffer from the following defects that invalidate them:

- Count 1:  Plaintiff cannot recover from any Movants for the purchase price that Northstar paid to Propel Energy L.L.C. ("**Propel Energy**") for oil and gas assets in the Creole Field (the "**Creole Assets**") because Movants are not transferees of the purchase price and there are no facts demonstrating how the purchase price paid to Propel Energy benefitted any Movant.

- Counts 1 and 2:  The release of any Movant, other than NOG Royalty Holdings, L.P. ("**NGP-NOG**"), from a capital commitment was not a fraudulent transfer because no Movant, other than NGP-NOG, owed a capital commitment at the time of the release.

- Count 1:  The capital commitment owed by NGP-NOG that was released was not an asset that could be transferred under the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") because the capital commitment was fully encumbered by a valid lien held by Wells Fargo Bank, N.A. at the time of the release.

- Count 2:  NGP-NOG's capital commitment that was released was not Northstar's property under 11 U.S.C. § 548 because it would not have been an asset of Northstar's bankruptcy estate.

- Counts 1 and 2:  Plaintiff fails to plead his claims for actual fraudulent transfer with the particularity that Federal Rule of Civil Procedure 9(b) requires.

- Counts 1 and 2:  Plaintiff violates Federal Rule of Civil Procedure 8(a) by failing to specify Movants' alleged individual roles in the transfers.

**Motion to Dismiss Plaintiff's Original Complaint– Page 5**

- Count 1:  Plaintiff fails to identify any "triggering" unsecured creditor required to state a claim under 11 U.S.C. § 544(b).

- Counts 1 and 2:  Plaintiff fails to plead facts supporting his allegations (1) that Northstar received less than reasonably equivalent value for the transfers; and (2) that Northstar was insolvent at the time of the transfers or became insolvent from them.

- Count 1:  The one-year statute of limitations bars Plaintiff's constructive fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).

- Count 3:  Plaintiff fails to plead facts negating the business-judgment rule because no facts raise the reasonable inference that any Individual Movant breached his fiduciary duties of loyalty or care to Northstar.

- Count 3:  Plaintiff fails to plausibly allege that NGP-NOG was a controlling shareholder of Northstar such that it owed fiduciary duties to Northstar.

- Count 4:  Plaintiff misrepresents the term of the contract that he claims NGP-NOG breached and fails to allege a breach of any term that the contract actually contains.

- Count 5:  Plaintiff fails to state a claim for conspiracy to commit breaches of fiduciary duty because (1) Movants cannot, as a matter of law, conspire with each other; and (2) Plaintiff fails to plausibly allege elements of a conspiracy claim.

- Count 6:  Because Plaintiff's claim for breach of fiduciary duty fails, his claim for aiding and abetting breaches of fiduciary duties must fail as well.

- Counts 5 and 6:  There is no cause of action for conspiracy to commit, or aiding and abetting, fraudulent transfers.

## II.    Argument and Authorities

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff's complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face."[15] Accordingly, "a plaintiff's obligation to provide the "grounds" of his "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Motion to Dismiss Plaintiff's Original Complaint– Page 6**
059310.000023 20718273.1

of action will not do."[16]  Furthermore, although courts must accept all factual allegations as true, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."[17]  The burden, therefore, rests on the plaintiff to provide a complaint with "enough factual matter (taken as true) to suggest that [the plaintiff] is entitled to relief."[18]

A complaint's factual allegations must "raise a right to relief above the speculative level"[19] and state a claim that is "plausible on its face."[20]  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."[21]  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[23]

Plaintiff's causes of action fail to cross the line from possibility to plausibility and therefore fail as a matter of law.

## A.    Plaintiff fails to state claims for fraudulent transfer against Movants.

Plaintiff appears to base his fraudulent-transfer claims in Counts 1 and 2 of the Complaint on two alleged transfers: (1) Northstar's payment of the purchase price for the Creole Assets to Propel Energy; and (2) Northstar's release of capital commitments allegedly owed by "Defendants."[24]

---

[16] *Id.*

[17] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[18] *Twombly*, 550 U.S. at 556.

[19] *Id.* at 555.

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] *Id.*

[22] *Id.*

[23] *Id.* at 679.

[24] *See* the Complaint ¶¶ 61, 67-68.

The release of the capital commitments owed to Northstar was part of the transaction under which Northstar was sold to Lafitte Energy Corp.   As fully explained below, the requirement that NGP-NOG and **non-Movant Defendants**[25] make capital commitments was established in the Amendment to the Amended and Restated Limited Liability Company Agreement of Northstar dated November 8, 2013 (the "**Amendment to the Northstar LLC Agreement**").[26]  The Amendment to the Northstar LLC Agreement required Movant NGP X US Holdings, LP ("**NGP X US**") to make a capital commitment of up to $75 million and required non-Movant Defendants to make capital commitments up to $1,450,000.[27]   It also required Northstar to pay a fee to NGP X US and non-Movant Defendants when the capital commitments were funded.[28]   The Assignment of Interests dated July 7, 2014 (the "**Assignment to NGP-NOG**") transferred NGP X US's membership interest in Northstar to NGP-NOG, and NGP-NOG assumed the obligation to make the capital commitment of up to $75 million.[29]   In a Letter Agreement effective September 22, 2014 (the "**Contract**"), Northstar released its members with capital commitments from those capital commitments and obligated NGP-NOG to pay an amount equal to the remaining "Bank Debt" and "Working Capital Deficit" of Northstar—which the Contract estimated to be $40 million—at the closing of the sale of Northstar to Lafitte Energy Corp.[30]

---

[25] Non-Movant Defendants are S. Glynn Roberts, Gaylon Freeman, Mark Stevens, and James P. Ulm.  *See* the Complaint at 1.

[26] Amendment to the Northstar LLC Agreement, Exhibit B.  The Amendment to the Northstar LLC Agreement is being filed under seal pursuant to the Motion to File Certain Exhibits in Support of Motion to Dismiss under Seal, which is being filed simultaneously with this Motion to Dismiss.

[27] Amendment to the Northstar LLC Agreement, Exhibit B.

[28] Amendment to the Northstar LLC Agreement, Exhibit B.

[29] Assignment to NGP-NOG, Exhibit C.

[30] Contract, Exhibit D.  The Contract is being filed under seal pursuant to the Motion to File Certain Exhibits in Support of Motion to Dismiss under Seal, which is being filed simultaneously with this Motion to Dismiss.

For the reasons explained below, Plaintiff fails to state claims for fraudulent transfer under TUFTA or under 11 U.S.C. § 548. Therefore, Plaintiff's fraudulent-transfer claims in Counts 1 and 2 of the Complaint should be dismissed.

      **1.**     **Plaintiff fails to plead facts showing that any Movants caused Northstar to make fraudulent transfers.**

Absent pleading facts showing that Movants caused—and indeed even had the *ability to cause*—Northstar to make fraudulent transfers, Plaintiff has failed to state fraudulent-transfer claims in Counts 1 and 2 of the Complaint. In conclusory fashion, Plaintiff alleges that "Defendants," "NGP,"[31] or the "NGP Directors"[32] used their "control" over Northstar to cause Northstar to make fraudulent transfers:

- "In 2012, using its control over Northstar, NGP caused the Board to overpay for NGP assets for NGP's benefit."[33]

- "Through its NGP directors, NGP caused Northstar to increase its bid by 40% to over $113 million."[34]

- "NGP exercised complete control over Northstar."[35]

- "Defendants used their control of Northstar to transfer those funds out of Northstar for the benefit of Defendants."[36]

- "Defendants caused Northstar to sign the release of these valuable capital obligations…."[37]

But Plaintiff pleads no facts that would allow the reasonable inference that any Movant controlled the Northstar board of managers. Because Northstar was formed under the laws of Delaware, Delaware law supplies the governing principles for determining whether any Entity

---

[31] Plaintiff defines "NGP" to collectively refer to all Entity Movants. The Complaint at 1.

[32] Plaintiff defines "NGP Directors" to collectively refer to all Individual Movants. The Complaint ¶ 3.

[33] The Complaint ¶ 38.

[34] The Complaint ¶ 39.

[35] The Complaint ¶ 45.

[36] The Complaint ¶ 61.

[37] The Complaint ¶ 67.

**Motion to Dismiss Plaintiff's Original Complaint– Page 9**

Movant's alleged intent can be imputed to Individual Movants, who served on Northstar's board of managers.[38]  Under Delaware law, a plaintiff asserting the "control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'"[39] Simply alleging that a person or entity "'dominated and controlled directors' is insufficient."[40]

Yet all Plaintiff alleges is that Entity Movants "controlled" Individual Movants.  He pleads no facts showing *how* any Entity Movant controlled any Individual Movant's conduct or decisions.  Rather, Plaintiff pleads only that Individual Movants were "NGP-related directors."[41] But this allegation shows nothing more than an unspecified *affiliation* between Individual Movants and Entity Movants.  "Allegations that a director has a relationship with a third party do not suffice absent some indication of how that affiliation influenced the director's decision-making."[42]  Nor does the fact that some Entity Movants were investors in Northstar plausibly establish control.  "It is well-settled Delaware law that a director's independence is not compromised simply by virtue of being nominated to a board by an interested stockholder."[43]

And even if Plaintiff had pleaded facts demonstrating how Individual Movants were controlled by an Entity Movant (which he failed to do), Plaintiff pleads no facts showing that any

---

[38] *See Pilepro, LLC v. Chang*, 152 F. Supp. 3d 659, 674-75 (W.D. Tex. 2016) (Under Texas choice-of-law rules, the law of the incorporating state governs a corporation's internal affairs); *see also Asarco LLC v. Americas Mining Corp.*, 382 B.R. 49, 61 (S.D. Tex. 2007) (applying Texas choice-of-law rules to decide what law governed fraudulent transfer claims because they involved a property dispute, which does not require the analysis of any federal interest).

[39] *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002).

[40] *Id.  See also Miramar Firefighters Pension Fund v. AboveNet, Inc*., C.A. 7376-VCN, 2013 WL 4033905, at *3 (Del. Ch. July 31, 2013) (allegations that directors "succumbed" to a party's desire or "acquiesced in" that party's plan are "insufficient to raise a reasonable inference that [the directors] were beholden to, or controlled by, [that party]").

[41] The Complaint ¶ 3.

[42] *Official Committee of Unsecured Creditors v. Meltzer*, 1:17-CV-256-NT, 2018 WL 2123558, at *6 (D. Me. May 8, 2018) (applying Delaware law).

[43] *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996 (Del. Ch. 2014), *aff'd sub nom*, *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (citing cases).

**Motion to Dismiss Plaintiff's Original Complaint– Page 10**

Individual Movant had authority to act on behalf of any Entity Movant.  In fact, Plaintiff does not even *allege* that any agency relationship existed between any Individual Movant and any Entity Movant—or any other NGP entity.  Therefore, Plaintiff has failed to plausibly allege that any Individual Movant—even if he were under an Entity Movant's control—acted on behalf of the Entity Movant to cause Northstar to do anything.[44]

As a result, the Complaint is factually insufficient to show that any Movant controlled— or could control—Northstar's actions.  Plaintiff claims that Movants caused Northstar to make the transfers made the basis for Plaintiff's fraudulent-transfer claims.[45]  But absent facts sufficient to plausibly allege such control, Plaintiff fails to state a claim for fraudulent transfer against Movants.  Counts 1 and 2 of the Complaint should be dismissed.

### 2. Plaintiff fails to state a claim against any Movants for the payment of the purchase price to Propel Energy for the Creole Assets.

Plaintiff claims in Count 1 that Northstar's alleged overpayment to Propel Energy for the purchase of the Creole Assets was a fraudulent transfer.[46]  But neither TUFTA nor 11 U.S.C. § 548 permits Plaintiff to recover for that transfer from Movants.

TUFTA allows recovery for a fraudulent transfer only against the debtor, the transferee, or the person for whose benefit the transfer was made.[47]  11 U.S.C. § 550(a) allows recovery for a transfer avoided under 11 U.S.C. § 544(b) only from the initial transferee, any immediate or mediate transferee of such initial transferee, or the entity for whose benefit the transfer was

---

[44] *See In re Xtreme Power Inc.*, 563 B.R. 614, 643 (Bankr. W.D. Tex. 2016) (applying Delaware law) (determining that Amended Complaint failed "to allege sufficient facts to indicate that [the third-party] exercised actual dominion and control over the business affairs of [the company]," in part because, although it alleged that two directors were the third-party's agents, "the Amended Complaint fails to even set forth elements of an agency relationship, much less set forth facts to prove them.").

[45] *See* the Complaint ¶¶ 38, 39, 45, 61, 67.

[46] The Complaint ¶¶ 57-69.  It is not clear whether Plaintiff asserts the payment for the Creole Assets as a basis for his fraudulent-transfer claim under 11 U.S.C. § 548 (Count 2).   To the extent that Plaintiff does bring a claim under 11 U.S.C. § 548 for the payment for the Creole Assets, that claim is barred by the two-year statute of limitations.  11 U.S.C. § 548(a)(1).

[47] TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009 (West 2017).

made.[48]  Plaintiff does not allege that any Movants were a transferee of the purchase price for the Creole Assets.  Instead, Plaintiff alleges that Northstar paid the allegedly inflated price for the Creole Assets to a third party, Propel Energy.[49]   Although Plaintiff claims that Propel Energy was a "NGP company,"[50] Plaintiff does not explain how Propel Energy was affiliated with any Movants.  Nor does Plaintiff allege any veil-piercing theory under which Propel Energy and any Movants were alter egos.  Therefore, Plaintiff fails to plead any facts that would enable the reasonable inference that any Movants were the transferees of the purchase price.[51]

And despite Plaintiff's conclusory allegation that "[t]he NGP Directors [Individual Movants] benefited personally by this self-dealing,"[52] Plaintiff does not explain how a purchase price paid to a separate entity—Propel Energy—benefitted any Individual Movants.  Indeed, there are *no factual allegations whatsoever* explaining how or why the payment of the purchase price to Propel Energy was made for the benefit of—or benefitted in any way—any Movants.[53] Therefore, Plaintiff's fraudulent-transfer claims in Count 1 regarding the purchase price paid for the Creole Assets should be dismissed.

---

[48] 11 U.S.C. § 550(a)(1)-(2).

[49] The Complaint ¶¶ 38-39.

[50] The Complaint ¶ 38.

[51] *See Clapper v. Am Realty Inv'rs, Inc.*, 3:14-CV-2970-D, 2016 WL 302313, at *12-13 (N.D. Tex. Jan. 25, 2016) (dismissing claim under Texas Uniform Fraudulent Transfer Act against defendants who were not transferees of assets fraudulently transferred when there were no facts explaining how the alleged fraudulent transfers resulted in any benefit to any defendant); *In re Elrod Holdings Corp.*, 394 B.R. 751, 757 (Bankr. D. Del. 2008) (dismissing fraudulent transfer claims under bankruptcy code against defendants who were not transferees).

[52] The Complaint ¶ 40.

[53] *See Clapper*, 2016 WL 302313, at *12-13.  *See also In re Int'l Mgmt. Assoc.*, 399 F.3d 1288 (11th Cir. 2005) (Whatever benefit one shareholder obtained when, in order to satisfy condition placed by lender on extension of credit to bankrupt corporation, corporation repurchased its allegedly worthless stock from its other shareholder for sum of $100,000 and thereby enabled this first shareholder to gain sole control over corporation's assets, as reduced by its $100,000 payment to second shareholder, was not the kind of quantifiable benefit needed to support recovery against first shareholder, following avoidance of this stock repurchase transaction as fraudulent transfer, on theory that first shareholder was "entity for whose benefit" the fraudulent transfer was made).

**Motion to Dismiss Plaintiff's Original Complaint– Page 12**

### 3.   Plaintiff fails to state a claim that the release of any Movant from a capital commitment, other than NGP-NOG, was a fraudulent transfer.

In Counts 1 and 2 of the Complaint, Plaintiff claims that Northstar's release of capital commitments owed by "Defendants" in the Contract was a fraudulent transfer.[54]   But documents that are part of the pleadings show that NGP-NOG was the only Movant who owed a capital commitment as of September 22, 2014, the effective date of the Contract.[55]   So NGP-NOG was the only Movant who could be released from a capital commitment in the Contract.   Therefore, the fraudulent-transfer claims in Counts 1 and 2 based on the releases of capital commitments should be dismissed against all Movants except NGP-NOG.

Three documents that are part of the pleadings demonstrate that NGP-NOG was the only Movant who owed a capital commitment to Northstar as of September 22, 2014:

- The Contract;[56]

- The Amendment to the Northstar LLC Agreement;[57] and

- The Assignment to NGP-NOG.[58]

Generally, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.[59]   But documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim."[60]   Documents are central to a claim when they are necessary to establish an element of one of the

---

[54] The Complaint ¶¶ 53-54, 57-69.

[55] The Contract provides that it is conditioned upon the closing of the sale of Northstar to Lafitte Energy Corp.  The Contract ¶ 8, Exhibit D.  Plaintiff pleads that the closing occurred on September 22, 2014 and further pleads that the Contract "became effective upon the sale closing in September 2014."  The Complaint ¶¶ 51, 67.

[56] *See* the Contract, Exhibit D.

[57] *See* the Amendment to the Northstar LLC Agreement, Exhibit B.

[58] *See* the Assignment to NGP-NOG, attached as Exhibit C.

[59] *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999).

[60] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

plaintiff's claims.[61]   Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim."[62]

Plaintiff references the Contract in the Complaint, and no dispute can exist that it is central to Plaintiff's fraudulent-transfer claim based on the release that is a term of the Contract.[63]   The Contract expressly "releases each of the Members [defined to include NGP-NOG] with a Supplemental Commitment (other than [NGP-NOG]) to the extent of the NOG Contribution) from any obligation to fund any Supplemental Capital Contributions."[64]   The Amendment to the Northstar LLC Agreement defines "**Supplemental Commitment**" as each member's "commitment to make Supplemental Capital Contributions to [Northstar] in the amount set forth on Exhibit A" to the Amendment to the Northstar LLC Agreement.[65]   Exhibit A identifies only one Movant owing a Supplemental Commitment—NGP X US.[66]   The Assignment to NGP-NOG assigned all of NGP X US's membership interest in Northstar to NGP-NOG and further expressly provided that NGP-NOG "does hereby assume and agree to pay when due, satisfy, perform and discharge the Supplemental Commitment."[67]

Because NGP-NOG was the only Movant owing a Supplemental Commitment on the date the Contract became effective, September 22, 2014, the Supplemental Commitment was not

---

[61] *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 434 (S.D. Tex. 2016).

[62] *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

[63] *See* the Complaint ¶¶ 53-54, 61, 67-68.

[64] The Contract ¶ 2, attached as Exhibit D.

[65] The Amendment to the Northstar LLC Agreement at 3, attached as Exhibit B.  The Amendment is referenced in the Complaint and is central to Plaintiff's fraudulent-transfer claim based on the releases because it created the Supplemental Commitments—the obligations to fund the capital commitments that Plaintiff alleges were released in the Contract.  *See* the Complaint ¶¶ 53-54.

[66] The Amendment to the Northstar LLC Agreement, Exhibit A, attached as Exhibit B.

[67] The Assignment to NGP-NOG ¶¶ 1-2, attached as Exhibit C.  The Assignment to NGP-NOG is referenced in the Complaint by virtue of Plaintiff's pleading that (1) NGP X US had the obligation to make the $75 million Supplemental Commitment; but (2) NGP-NOG was the entity released from the Supplemental Commitment.  The Complaint ¶¶ 41-42, 54.  The Assignment of Interests to NGP-NOG is central to Plaintiff's fraudulent-transfer claim based on the releases because an element of Plaintiff's fraudulent-transfer claim against Movants is that a transfer of Northstar's property—the Supplemental Commitment—was made to Movants, and the Assignment of Interests to NGP-NOG demonstrates that NGP-NOG is the only Movant that owed a Supplemental Commitment.

**Motion to Dismiss Plaintiff's Original Complaint– Page 14**

property that could be transferred to any Movants except NGP-NOG. Under TUFTA, a "transfer" means disposing of or parting with an "asset."[68] An "asset" means property of the debtor.[69] Therefore, under TUFTA, there were no "assets" that could be transferred to any Movant other than NGP-NOG because there was no Supplemental Commitment owed to Northstar by any Movant (except NGP-NOG) that Northstar could release. Under the Bankruptcy Code, a "transfer" is defined as "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property."[70] Although the Bankruptcy Code does not define "an interest of the debtor in property," the United States Supreme Court has explained that the phrase "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[71] Therefore, under 11 U.S.C. § 548, there was no transfer to any Movants of an "interest of the debtor in property" except NGP-NOG because the other Movants had no obligation from which Northstar could release them.[72]

Further, because no Movants except NGP-NOG were transferees of the releases of the Supplemental Commitments, Plaintiff cannot recover against any Movant other than NGP-NOG.

---

[68] TEX. BUS. & COM. CODE ANN. § 24.002(12) (West 2017).

[69] TEX. BUS. & COM. CODE ANN. § 24.002(2) (West 2017).

[70] 11 U.S.C. § 101(54).

[71] *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990); *see also Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1138–39 (9th Cir. 2016). The interest must be analyzed under § 541. *See* Part II, Chapter 69: Bankruptcy Code § 541.

[72] *See Mack v. Newton*, 737 F.2d 1343, 1358 (5th Cir. 1984) (stating that holding a non-transferee liable for fraudulent transfer is inconsistent with purpose of under Bankruptcy Act's fraudulent transfer statute); *In re Flashcom, Inc.*, 647 F. App'x 689, 693 (9th Cir. 2016) ("[T]he the Trustee cannot recover under § 548 unless she shows Defendants met § 550(a)."); *In re Elrod Holdings Corp.*, 394 B.R. 751, 757 n.4 (Bankr. D. De. 2008) (stating that there is no fraudulent transfer liability on non-transferees); *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 737 n.10 (1st Cir. 1982) (finding no liability because neither defendant received any of the fraudulently transferred property).

**Motion to Dismiss Plaintiff's Original Complaint– Page 15**

TUFTA and 11 U.S.C. § 550(a) allow recovery for fraudulent transfers against only transferees and the persons or entities for whose benefit the transfers are made.[73]  Plaintiff does not even *allege*—much less plead facts supporting—that the release of NGP-NOG's Supplemental Commitment was made for the benefit of, or benefitted, any other Movants.  Nor does Plaintiff plead facts explaining how that release could benefit any other Movant besides NGP-NOG.

For those reasons, Counts 1 and 2 alleging that the release of the Supplemental Commitments in the Contract was a fraudulent transfer should be dismissed against all Movants except NGP-NOG.

> **4.  Plaintiff fails to state a claim under TUFTA that the release of NGP-NOG's Supplemental Commitment was a fraudulent transfer.**

The release of NGP-NOG's Supplemental Commitment in the Contract was not a transfer under TUFTA because the Supplemental Commitment was fully encumbered by a valid lien.  As explained above, no other Movant besides NGP-NOG owed a Supplemental Commitment to Northstar at the time of the release.  Therefore, Count 1 of the Complaint alleging a fraudulent-transfer claim under TUFTA based on the release of the Supplemental Commitment should be dismissed.

In order to state a claim for fraudulent transfer under TUFTA, Plaintiff must allege, among other elements, that a "transfer" occurred.[74]  A "transfer" "means every mode,…of disposing of or parting with an *asset or an interest in an asset*…."[75]  TUFTA defines an "asset" as "property of a debtor," but expressly excludes "property to the extent it is encumbered by a valid lien."[76]  A "valid lien" is "a lien that is effective against the holder of a judicial lien

---

[73] TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009 (West 2017); 11 U.S.C. § 550(a).

[74] *See* TEX. BUS. & COM. CODE ANN. §§ 24.005, 24.006 (West 2017).

[75] TEX. BUS. & COM. CODE ANN. § 24.002(12) (West 2017) (emphasis added).

[76] TEX. BUS. & COM. CODE ANN. § 24.002(2)(A) (West 2017).

subsequently obtained by legal or equitable process or proceedings."[77]   A "lien" includes "a security interest created by agreement…."[78]

Publicly filed documents show that Wells Fargo Bank, N.A. ("**Wells Fargo**") held a security interest on NGP-NOG's Supplemental Commitment as of the effective date of the Contract—September 22, 2014.  "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[79]   The UCC financing statement filed with the Delaware Secretary of State on November 8, 2013 provides that Wells Fargo held a security interest in "all assets of the Debtor [Northstar], whether now existing or hereafter arising."[80]   The Termination of Wells Fargo's security interest was not filed with the Delaware Secretary of State until April 1, 2015.[81]

Wells Fargo's security interest in NGP-NOG's Supplemental Commitment was a valid lien under TUFTA because it would have had priority over a subsequent judicial lien.  A security interest in collateral has priority over subsequent judicial liens if the security interest was perfected by filing an appropriate financing statement.[82]   The UCC Financial Statement evidencing Wells Fargo's lien on the Supplemental Commitment was filed with the Delaware Secretary of State on November 8, 2013, therefore giving priority to Wells Fargo's lien over any

---

[77] TEX. BUS. & COM. CODE ANN. § 24.002(13) (West 2017).

[78] TEX. BUS. & COM. CODE ANN. § 24.002(8) (West 2017).

[79] *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

[80] Financing Statement, attached as Exhibit E.

[81] Termination, attached as Exhibit F.

[82] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 414 n.20 (5th Cir. 2009) (quoting *Grocers Supply Co. v. Intercity Inv. Props., Inc.*, 795 S.W.2d 225, 226-27 (Tex. App.—Houston [14th Dist.] 1990, no writ) (collecting cases from other Uniform Commercial Code Article 9 jurisdictions and following this super-majority rule that confers priority on the holder of a prior-perfected security interest over a judgment creditor); 9 ANDERSON ON THE UNIFORM COMMERCIAL CODE § 9-301:15 ("A security interest perfected  by filing prevails over a subsequent judgment lien….").

**Motion to Dismiss Plaintiff's Original Complaint– Page 17**

subsequent judicial lien created after the filing of Wells Fargo's financing statement on November 8, 2013.[83]

Because NGP-NOG's Supplemental Commitment was not an "asset" under TUFTA, the release of the Supplemental Commitment cannot be a "transfer" under TUFTA.[84]   Plaintiff therefore fails to state a claim in Count 1 of the Complaint that the release of the Supplemental Commitment was a fraudulent transfer.

### 5.   NGP-NOG's Supplemental Commitment was not Northstar's property under 11 U.S.C. § 548 because the Supplemental Commitment would not have been an asset of Northstar's bankruptcy estate.

Count 2 of the Complaint alleging a fraudulent-transfer claim under 11 U.S.C. § 548 based on the release of NGP-NOG's Supplemental Commitment should be dismissed because the Supplemental Commitment was not Northstar's property.   Therefore, the release of the Supplemental Commitment was not a "transfer" under the Bankruptcy Code.   Under the Bankruptcy Code, a "transfer" is "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— *(i) property; or (ii) an interest in property*."[85] Although the Bankruptcy Code does not define "an interest of the debtor in property," the United States Supreme Court has explained that the phrase "is best understood as that property that would have been part of the estate had it not been

---

[83] *See* Financing Statement, attached as Exhibit E.

[84] *See Mullins*, 564 F.3d at 414-16 (holding that, because sale proceeds were encumbered by a valid lien, the payment of the sale proceeds was not a transfer under TUFTA and vacating the district court's judgment on the plaintiff's fraudulent transfer claim).

[85] 11 U.S.C. § 101(54) (emphasis added).

transferred before the commencement of bankruptcy proceedings."[86]   If the estate is not diminished, the transfer is not avoidable.[87]

As an initial matter, 11 U.S.C. § 365(c)(2) prohibits a trustee from assuming a contract for financing, such as a loan commitment, letter of credit or capital contribution.[88]   Therefore, obligations to provide financing, like the Supplemental Commitment, do not constitute property of a debtor's bankruptcy estate.[89]

In addition, even if the Supplemental Commitment would have been property of Northstar's estate despite Section 365(c)(2)'s explicit prohibition – which the Movants deny – NGP-NOG's Supplemental Commitment was not Northstar's property in any event because Northstar's right to the Supplemental Commitment was highly conditional and restricted for at least three reasons.  First, as explained above, Wells Fargo held a valid lien on the Supplemental Commitment at the time of the release.[90]   Second, Northstar's right to the Supplemental Commitment was conditioned upon the requirement of a call by the Northstar board of

---

[86] *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990); *see also Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1138–39 (9th Cir. 2016). The interest must be analyzed under § 541.

[87] *In re Maple Mortg., Inc.*, 81 F.3d 592 (5th Cir. 1996). *See also In re Rine & Rine Auctioneers, Inc.*, 74 F.3d 854 (8th Cir. 1996) (to be avoidable, a transfer must have placed something beyond the reach of creditors that could have been used to satisfy their claims).

[88] *See e.g., In re Lockspur, Inc.*, 82 B.R. 37, 39 (Bankr. E.D La. 1987) (holding that debtor could not assume agreement requiring third party to provide financial accommodations under section 365(c)(2)); *In re New Town Mall*, 17 B.R. 326, 328 (Bankr. D.S.D. 1982) ("Under [11 USC 365(c)(2)] contracts such as loan commitments and letters of credit are nonassignable, and may not be assumed by the parties" and "are not assignable or assumable by a debtor-in-possession"); *Taggatz v. Bank of Onalaska (In re Taggatz)*, 106 B.R. 983, 993 (Bankr. W.D. Wis. 1989) (finding that a loan commitment or "other debt financing or financial accommodation [agreement] . . . may not be assume[d]" by the debtor under 11 USC 365(c)(2)); *Marcus Lee Assocs. v. Wachovia Bank, NA (In re Marcus Lee Assocs.)*, 422 B.R. 21, 35 (Bankr. E.D. Pa. 2009) (finding that capital contribution or loan agreement could not be assumed under 11 USC 365(c)(2) "even if the lender had a pre-bankruptcy contractual obligation to do so").  *See also In re CoServ, LLC*, 273 B.R. 487, 494 n.12 (Bankr. N.D. Tex. 2002) (dicta stating that debtor cannot assume pre-petition agreement requiring third party to advance additional funds under section 365(c)(2)).

[89] *See Marshall v. FIA Card Servs. (In re Marshall)*, 372 B.R. 511, 516 n.18 (Bankr. D. Kan. 2007), rev'd on other grounds 550 F.3d 1251 (10th Cir. 2008) (finding that pre-petition credit commitment was not assumable under section 365(c)(2) and not a part of the debtor's bankruptcy estate); *Roach Automotive v. Daimler Chrysler Fin. Servs. Americas (In re Roach Automotive)*, 540 B.R. 146, 148 (Bankr. W.D. Pa. 2007) (finding that section 365(c)(2) prohibits the assumption of a contract to extend credit and that "[f]unds that a lender owns is therefore not 'property of the estate'").

[90] *See* Financing Statement, Exhibit E.

**Motion to Dismiss Plaintiff's Original Complaint– Page 19**

managers.[91]  Third, the Northstar board of managers could make the call for the Supplemental Commitment only "when needed by [Northstar] or its subsidiaries for their operations."[92] Moreover, apparently recognizing that NGP-NOG's Supplemental Commitment was not Northstar's property, Northstar did not consider NGP-NOG's Supplemental Commitment an asset of Northstar.[93]  Because Northstar did not possess the unrestricted control over the Supplemental Commitment necessary to establish that it owned the Supplemental Commitment, the Supplemental Commitment was not Northstar's property subject to a "transfer" under 11 U.S.C. § 548.[94]

### 6. Plaintiff fails to plead actual fraudulent-transfer claims with the particularity that Federal Rule of Civil Procedure 9(b) requires.

Plaintiff's actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) (Count 1) and 11 U.S.C. § 548(a)(1)(A) (Count 2) should be dismissed because Plaintiff fails to plead them with particularity, as Rule 9(b) requires.

The same pleading standard under Rule 9(b) applies to Plaintiff's actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A).[95] Rule 7009 of the Federal Rules of Bankruptcy Procedure makes Rule 9(b) applicable to adversary proceedings.  Rule 9(b) applies to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud.[96]  For that reason, courts in the Fifth Circuit generally apply Rule 9(b) to actual fraudulent transfer claims under Tex. Bus. &

---

[91] Amendment to the Northstar LLC Agreement § 1(c), Exhibit B.

[92] Amendment to the Northstar LLC Agreement § 1(c), Exhibit B.

[93] *See* Final Settlement Statement, Exhibit G.

[94] *See e.g., In re Southmark Corp.*, 95 F.3d 53 (5th Cir. 1996) ("CHC's necessary participation in the disposition of the note demonstrates that Southmark did not possess the unrestricted control that we have required to establish an interest in property in avoidance actions.").

[95] *In re Life Partners Holdings, Inc.*, No. 15-40289-RFN11, 2017 WL 5599485, at *6 (N.D. Tex. Nov. 17, 2017).

[96] *Id.* at *4; *see also Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010).

**Motion to Dismiss Plaintiff's Original Complaint– Page 20**

Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A).[97]  "General allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)."[98]  So when the plaintiff alleges that a defendant made a transfer with "actual intent to hinder, delay or defraud entities," the details of each fraudulent act must be alleged with specificity as to each defendant.[99]

Plaintiff violates Rule 9(b) by impermissibly grouping together Defendants for purposes of alleging the intent element of his actual fraudulent transfer claims:

- "In 2012, using its control over Northstar, *NGP* caused the Board to overpay for NGP assets for *NGP's* benefit."[100]  "Padding its profits from the sale of this field would give *NGP* both immediate accounting benefits and a reputational boost in raising funds."[101]

- "The *NGP Directors* benefitted personally by this self-dealing…."[102]

- "*Defendants* used their control of Northstar to transfer those funds out of Northstar for the benefit of *Defendants*."[103]

- "*Defendants* also hindered Northstar's creditors by securing releases of capital contributions committed to Northstar…."[104]

---

[97] *In re Life Partners Holdings, Inc.*, 2017 WL 5599485, at *7.  *See also Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015); *e.g.*, *Vision Bank v. Jordan*, 3:11-CV-2065-B, 2012 WL 716097, at *3 (N.D. Tex. Mar. 5, 2012) (citing cases) ("Although the Fifth Circuit has not definitively held that fraudulent transfer claims fall within the purview of Rule 9(b), this Court has noted that where plaintiffs seek to establish the actual intent of the debtor, the enhanced pleading requirements of Rule 9(b) should apply.").

[98] *In re Life Partners Holdings, Inc.*, 2017 WL 5599485, at *5  (quoting *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. 3:03-CV-2490-N, 2004 WL 3170789, at *1 (N.D. Tex. Nov. 15, 2004)).

[99] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  *See also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (To successfully plead fraud under Rule 9(b), a plaintiff must allege the "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, CIV.A. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) ("Group pleading fails to satisfy the requirement that the who, what, where, why, and when of the fraud be specified." (quoting *Glaser v. Enzo Biochem, Inc.*, 303 F.Supp.2d 724, 734 (E.D.Va. 2003)).

[100] The Complaint ¶ 38 (emphasis added).

[101] The Complaint ¶ 38 (emphasis added).

[102] The Complaint ¶ 40 (emphasis added).

[103] The Complaint ¶ 61 (emphasis added).

[104] The Complaint ¶ 61 (emphasis added).

**Motion to Dismiss Plaintiff's Original Complaint– Page 21**

- "Northstar's release of the funding obligations of *NGP* and individual directors was intended to hinder, delay, or defraud Northstar's creditors and avoid *NGP* being tainted with a Northstar bankruptcy."[105]

Further, Plaintiff also fails to adequately plead the intent element of an actual fraudulent-transfer claim. Plaintiff's actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A) require that Plaintiff plead facts showing that a defendant transferred assets "with actual intent to hinder, delay, or defraud any of the debtor's creditors."[106] But Plaintiff's allegations do not contain any specificity as to the "who, what, when, where, and how" of the actual fraudulent transfers he alleges. Instead, Plaintiff makes only conclusory allegations of intent:

- In 2012, using its control over Northstar, NGP caused the Board to overpay for NGP assets for NGP's benefit....Padding its profits from the sale of this field would give NGP both immediate accounting benefits and a reputational boost in raising funds."[107]

- "The NGP Directors benefitted personally by this self-dealing...."[108]

- "Defendants used their control of Northstar to transfer those funds out of Northstar for the benefit of Defendants."[109]

- "Defendants also hindered Northstar's creditors by securing releases of capital contributions committed to Northstar...."[110]

- "Northstar's release of the funding obligations of NGP and individual directors was intended to hinder, delay, or defraud Northstar's creditors and avoid NGP being tainted with a Northstar bankruptcy."[111]

Nor does Plaintiff even allege the "badges of fraud" listed in TUFTA or the Bankruptcy Code that could provide circumstantial evidence of actual intent to defraud creditors.[112] The

---

[105] The Complaint ¶ 68 (emphasis added).

[106] *In re Life Partners Holdings, Inc.*, No. 15-40289-RFN11, 2017 WL 5599485, at *5 (N.D. Tex. Nov. 17, 2017).

[107] The Complaint ¶ 38.

[108] The Complaint ¶ 40.

[109] The Complaint ¶ 61.

[110] The Complaint ¶ 61.

[111] The Complaint ¶ 68.

**Motion to Dismiss Plaintiff's Original Complaint– Page 22**

only "badges of fraud" that Plaintiff pleaded—that the consideration was not reasonably equivalent to the value of the asset transferred and that Northstar was insolvent—are not sufficient to allege actual intent to hinder, delay, or defraud creditors because those are elements of a constructive fraud claim.[113]

And interestingly, facts that Plaintiff does plead demonstrate that Movants did *not* have an intent to defraud any creditors.  Plaintiff claims that, with respect to determining the price that Northstar would pay for the Creole Assets, "NGP director Ackerman told Northstar Director Glynn Roberts to 'think about where you love the deal and let me know and I can back channel.'"[114]  This alleged quote indicates that Movants were trying *not* to overpay for the Creole Assets by consulting a Northstar manager who was not affiliated with any Entity Movant about the price.   Plaintiff further alleges that Movants wrote in various emails that they had every motive to *avoid* bankrupting Northstar:

- "Northstar is in survival mode.  The goal is to salvage as much equity value as we can without going bankrupt."[115]

---

[112] *See* TEX. BUS. & COM. CODE ANN. § 24.005(b) (West 2017) (providing that, "[i]n determining actual intent…, consideration may be given, among other factors, to whether: (1) transfer or obligation was to an insider; (2) debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation incurred, the debtor had been sued or threatened with a suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor"); *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005) (badges of fraud under 11 U.S.C. § 548 are (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control, or dominion by the debtor; and (6) secrecy or concealment of the transaction).

[113] *See In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 171 (S.D. Tex. 2016) (dismissing claim for actual fraudulent transfer under Texas Uniform Fraudulent Transfer Act and 11 U.S.C. § 548 because the only badges of fraud that the plaintiff pleaded with particularity were insolvency and lack of reasonably equivalent value, and the plaintiff therefore failed to state a claim for actual fraudulent transfer rather than constructive fraudulent transfer).

[114] The Complaint ¶ 39.

[115] The Complaint ¶ 44.

**Motion to Dismiss Plaintiff's Original Complaint– Page 23**

- "We have no more time, we don't want to bankrupt this company for the sake of all of our reputations."[116]

Because Plaintiff's actual fraudulent-transfer claims in Counts 1 and 2 of the Complaint violate Rule 9(b), they should be dismissed.

### 7. Plaintiff violates Federal Rule of Civil Procedure Rule 8(a) by impermissibly grouping together Defendants.

Even if Rule 9(b) did not apply to Plaintiff's actual fraudulent-transfer claims (which it does), Plaintiff's actual and constructive fraudulent-transfer claims violate Rule 8(a). The same pleading standard under Rule 8(a) applies to Plaintiff's actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A) and constructive fraudulent-transfer claims under Tex. Bus. & Com. Code §§ 24.005(a)(2), 24.006, and 11 U.S.C. § 548(a)(1)(B).[117]   Rule 7008 of the Federal Rules of Bankruptcy Procedure makes Rule 8 applicable to adversary proceedings.  "[A]ny reference by a plaintiff to defendants collectively in a complaint fails to satisfy the pleading standards of Rule 8(a)."[118]

Throughout the Complaint, Plaintiff violates Rule 8(a)'s proscription against group pleading by failing to distinguish Defendants' individual roles in the alleged fraudulent transfers:

- "Through its *NGP Directors*, *NGP* caused Northstar to increase its bid by 40% to over $113 million."[119]

---

[116] The Complaint ¶ 47.

[117] [117] *In re Life Partners Holdings, Inc.,* No. 15-40289-RFN11, 2017 WL 5599485, at *7 (N.D. Tex. Nov. 17, 2017).

[118] *Id.* at *3 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).  *See also Gurganus v. Furniss*, 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) ("In addition to being conclusory and formulaic, this type of group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8."); *Del Castillo v. PMI Holdings N. Am. Inc*., 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct."); *Freuler v. Parker*, CIV.A. H-10-3148, 2012 WL 896414, at *2 (S.D. Tex. Mar. 14, 2012) ("Moreover Plaintiff continues to fail to distinguish Defendants' individual roles with respect to all the claims and continues to indulge in prohibited group pleading, alleging identical facts against each."), *aff'd*, 517 F. App'x 227 (5th Cir. 2013).

[119] The Complaint ¶ 39 (emphasis added).  Plaintiff defines "NGP" to collectively refer to all Entity Movants.  The Complaint at 1.  Plaintiff defines "NGP Directors" to collectively refer to all Individual Movants.  The Complaint ¶ 3.

- *Defendants* used their control of Northstar to transfer those funds out of Northstar for the benefit of *Defendants*."[120]

- "*Defendants* also hindered Northstar's creditors by securing releases of capital contributions committed to Northstar…."[121]

- "*Defendants* signed an agreement for Northstar to release Defendants from their obligations to provide more than $75 million in capital to the desperate company. *Defendants* caused Northstar to sign the release of these valuable capital obligations…."[122]

Because Plaintiff's fraudulent-transfer claims in Counts 1 and 2 of the Complaint violate Rule 8(a)'s prohibition against group pleading, they should be dismissed.

### 8.   Plaintiff fails to identify any "triggering" unsecured creditor required to state a claim under 11 U.S.C. § 544(b).

Plaintiff fails to state a claim in Count 1 of the Complaint under TUFTA, which 11 U.S.C. § 544(b) allows him to assert, because he fails to identify any unsecured creditor that had standing to bring the claim on the date that Northstar's bankruptcy petition was filed.  A trustee can bring an action under § 544(b) only if there is a "triggering" unsecured creditor that could have brought an action when the bankruptcy petition was filed.[123]  This means that a bankruptcy trustee's rights to avoid a fraudulent transfer "are derivative of an actual unsecured creditor's rights."[124]  Therefore, the actual unsecured creditor must have had standing to assert the fraudulent-transfer claim on the date of the filing of bankruptcy petition.[125]

---

[120] The Complaint ¶ 61 (emphasis added).

[121] The Complaint ¶ 61 (emphasis added).

[122] The Complaint ¶ 67 (emphasis added).

[123] *In re Life Partners Holdings, Inc.*, No. 15-40289-RFN11, 2017 WL 5599485, at *6 (N.D. Tex. Nov. 17, 2017); *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 326 (S.D. Tex. 2008).

[124] *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns*, 479 B.R. 405, 410 (N.D. Tex. 2012).

[125] *See In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010) ("The trustee's successor rights arise under federal law, but the extent of those rights depends entirely on applicable state law.").  Under Texas law, a claim for a transfer that is fraudulent as to present and future creditors may be brought only by a creditor whose claim arose shortly before or after the debtor transferred the assets.  *See* TEX. BUS. & COM. CODE ANN. § 24.005(a) (West 2017); *In re Life Partners Holdings, Inc.*, 2017 WL 5599485, at *5.

Plaintiff failed to identify even a class or category of creditors that had standing to assert a fraudulent transfer claim.  All Plaintiff pleads is that the causes of action were "transferred to the Northstar Litigation Trust under the terms of the Chapter 11 plan...."[126]  For that reason, Count 1 of the Complaint should be dismissed.

### 9. Plaintiff fails to plausibly establish that Northstar received less than reasonably equivalent value for its release of Supplemental Commitments.

Under TUFTA, "reasonably equivalent value" includes "a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction."[127]  "Value" is given for a transfer or an obligation "if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied...."[128]  Although "reasonably equivalent value" under § 548(a)(1)(B) is not defined in the Bankruptcy Code, the United States Supreme Court noted that "reasonably equivalent" value in this context should be read as "approximately equivalent" or "roughly equivalent."[129]  "The inquiry under § 548(a)(2)(A) [is] whether the debtor has received value that is substantially comparable to the worth of the transferred property."[130]  "There need not be a dollar-for-dollar exchange to satisfy the reasonable equivalence test, the Court should simply compare 'the value of what went out [of the debtor's estate] with the value of what came in."[131]

Ultimately, the determination "requires consideration of whether or not the debtor's unsecured creditors were better off before or after the transfer."[132]  Along these lines, some courts find reasonably equivalent value if the transfer at issue created no negative net effect on

---

[126] The Complaint ¶ 11.
[127] TEX. BUS. & COM. CODE ANN. § 24.005(d) (West 2017).
[128] TEX. BUS. & COM. CODE ANN. § 24.004(a) (West 2017).
[129] *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 n.4 (1994).
[130] *Id.* at 548.
[131] *In re SMTC Mfg. of Tex.*, 421 B.R. 251, 300 (Bankr. W.D. Tex. 2009). *See also Matter of Besing,* 981 F.2d 1488, 1494 (5th Cir. 1993) (courts must determine "reasonably equivalent value" by looking at the value of the property transferred and the value received in exchange).
[132] *See In re Expert S. Tulsa, LLC*, 534 B.R. 400, 413 (B.A.P. 10th Cir. 2015), *aff'd*, 842 F.3d 1293 (10th Cir. 2016).

the bankruptcy estate.[133]   In undertaking such an inquiry when an integrated transaction is involved, courts must examine the net effect of the transaction in its entirety; analyzing merely one part of the overall transaction would be inappropriate.[134]

Here, Plaintiff claims that Northstar released the Supplemental Commitments of NGP-NOG and other non-Movant Defendants and granted NGP-NOG a net profits interest in an oil and gas prospect in exchange for NGP-NOG's promise to "eliminate the bank debt and working capital deficit" of Northstar.[135]  But documents that are part of the pleadings show that the actual value of the Supplemental Commitments that Northstar released and the net profits interest were, at most, roughly equivalent to—if not *less than*—the value of NGP-NOG's conditional promise to pay the amount of money equivalent to Northstar's bank debt and working capital deficit.

Northstar and Lafitte Energy Corp. entered into the Purchase and Sale Agreement to facilitate Lafitte Energy Corp.'s acquisition of the equity of Northstar.   Prior to the sale, Northstar (1) held highly conditional and fully encumbered Supplemental Commitments of NGP-NOG to fund an amount "not to exceed" $75 million and other non-Movants Defendants to fund an amount "not to exceed" $1,450,000 "upon call by the Board when needed by the Company or its subsidiaries for their operations;"[136] (2) was required to pay NGP-NOG and other non-Movant Defendants the Supplemental Capital Contribution Fee;[137] and (3) had Bank Debt of $120,000,000 and a Working Capital Deficit of $20,022,920.[138]   In exchange for the release of the Supplemental Commitments and a 22.5% net profits interest in two of Northstar's

---

[133] *See, e.g.*, *Dye v. Commc'ns Ventures III., LP (In re Flashcom, Inc.)*, No. 13-57161, 2016 BL 98588, at *2 (9th Cir. Mar. 30, 2016) (*citing Frontier Bank v. Brown (In re Northern Merchandise, Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004)).
[134] *See Frontier Bank*, 371 F.3d at 1059.
[135] The Complaint ¶¶ 52-54.
[136] *See* the Amendment to the Northstar LLC Agreement § 1(c) & Exhibit A to the Amendment to the Northstar LLC Agreement, Exhibit B.
[137] *See* the Amendment to the Northstar LLC Agreement § 1(e), Exhibit B.
[138] *See* the Contract ¶ C, Exhibit D.  *See infra*, § C(1).

**Motion to Dismiss Plaintiff's Original Complaint– Page 27**

prospects (the "**NPI**"), Northstar received (1) $40 million, an amount that the parties determined was sufficient, along with the Purchase Proceeds, to pay the Bank Debt in full and eliminate the Working Capital Deficit, from NGP-NOG; and (2) a release of the obligation to pay NGP-NOG and other non-Movant Defendants the Supplemental Capital Contribution Fee.[139]

As a result, the true "net effect" of the transaction was that: (1) instead of holding highly conditional and fully encumbered Supplemental Commitments in the maximum amount of $76,450,000, Northstar was recapitalized with amounts to pay the $120,000,000 Bank Debt in full and to eliminate the $20,022,920 Working Capital Deficit; and (2) Northstar was released from the obligation to pay the Supplemental Capital Contribution Fee.

Accordingly, Northstar has failed to adequately plead that it did not receive reasonably equivalent value in exchange for the release of the Supplemental Commitments because it cannot.  Documents that are part of the pleadings show that, when the value that Northstar gave in connection with the release is compared to the value Northstar received, it is unquestionable that Northstar received, at the very least, reasonably equivalent value.

> **10.** **Plaintiff fails to plead facts supporting Northstar's insolvency at the time of each alleged transfer.**

Plaintiff's constructive fraudulent-transfer claims in Counts 1 and 2 require that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.[140] But Plaintiff fails to allege facts demonstrating insolvency at the time of the two transfers alleged—(1) the payment of the purchase price for the Creole Assets in September 2012; and (2) the release of the Supplemental Commitments in the Contract effective September 22,

---

[139] *See* the Contract ¶¶ 1-3, Exhibit D.  *See* the Complaint ¶ 51 (alleging that "Platinum paid $80 million directly to the bank….").
[140] *See* Tex. Bus. & Com. Code Ann. § 24.006 (West 2017); 11 U.S.C. § 548(a)(1)(B).

2014.[141]

Plaintiff does not even *allege* that Northstar was insolvent when it purchased the Creole Assets or became insolvent as a result of that purchase. Rather, Plaintiff claims only that Northstar's "*dire financial condition* began with Defendants causing Northstar to pay an NGP affiliate tens of millions of dollars more than the next highest bidder for the Creole Assets."[142] Plaintiff makes only a blanket conclusory allegation that transfers "were made while Northstar was insolvent or became insolvent as a result of those transfers…."[143] But without a specific reference to Northstar's insolvency at the time of the purchase of the Creole Assets, Plaintiff cannot plausibly show that Northstar was insolvent at the time of that alleged transfer.[144]

Similarly, Plaintiff fails to allege facts showing that Northstar was insolvent at the time of the releases of the Supplemental Commitments. Insolvency can be proven in two ways: (1) by showing that "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation," or (2) by showing that the debtor "is generally not paying the debtor's debts as they become due."[145] Plaintiff alleges no *facts* that establish either of these two tests at the time of the release of the Supplemental Commitments. Although Plaintiff claims that Movants "acknowledged that Northstar was in dire financial straits" and that Northstar "was incurring debts beyond its ability to repay as the debts matured," Plaintiff fails to present any financial data showing that Northstar was actually insolvent at the time of the release.[146]

Absent factual allegations demonstrating Northstar's insolvency at the time of the

---

[141] *See* the Complaint ¶¶ 38-39, 53-54, 61, 67.

[142] The Complaint ¶ 61 (emphasis added).

[143] The Complaint ¶ 63.

[144] *In re ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017).

[145] TEX. BUS. & COMM. CODE ANN. § 24.003(a), (b) (West 2017); *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 387 (5th Cir. 2017).

[146] *See In re ATP Oil & Gas Corp.*, 711 F. App'x at 223 (finding that "Plaintiff cannot plausibly show that ATP was insolvent at the time of the transfers" when "Plaintiff failed to present any financial data showing that ATP was actually insolvent or had little capital when making the [transfers]").

transfers, Plaintiff has failed to state claims for constructive fraudulent transfer in Counts 1 and 2 of the Complaint.

### 11. The one-year statute of limitations bars Plaintiff's constructive fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).

A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time barred and the pleadings fail to set forth or raise some basis for tolling the statute.[147]  A suit under Tex. Bus. & Com. Code § 24.006(b) must be filed within one year after the transfer was made.[148]  Under 11 U.S.C. § 544, a bankruptcy trustee "has standing to pursue any causes of action a creditor could have pursued, provided that a creditor existing at the time the transfers were made still has a viable claim against the debtor at the time the bankruptcy petition was filed."[149]  Thus, the statute of limitations must not have run when the bankruptcy petition was filed.[150]

Plaintiff alleges the transfers occurred in (1) September 2012; and (2) September 2014.[151]  Northstar filed its bankruptcy petition on August 12, 2016.[152]  Therefore, as of the petition date, the statute of limitations had already run on claims under § 24.006(b) for the transfers Plaintiff alleges.  Plaintiff does not allege—nor can it allege—that any tolling doctrine tolled the one-year statute of limitations.  Therefore, considering the filing date of Northstar's bankruptcy petition—a matter of which the Court can take judicial notice—it is evident from the Complaint that the

---

[147] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

[148] TEX. BUS. & COM. CODE ANN. § 24.010(a)(3) (West 2017).

[149] *In re Consol. Indus. Corp.*, 397 F.3d 524, 526 (7th Cir. 2005).

[150] *See Cadle Co. v. Mims*, 608 F.3d 253, 260 (5th Cir. 2010).

[151] The Complaint ¶¶ 39, 53-54, 67.

[152] "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

one-year statute of limitations bars Plaintiff's claim under § 24.006(b) in Count 1 of the Complaint.

### 12.   Plaintiff's other fraudulent-transfer claims are barred to the extent they seek to avoid transfers beyond the relevant statutes of limitations.

It is unclear from the Complaint exactly what specific alleged transfers Plaintiff seeks to avoid in Counts 1 and 2 of the Complaint.  Plaintiff's claims in Count 1 under Tex. Bus. & Com. Code § 24.005(a)(1)-(2) and § 24.006(a) carry a four-year statute of limitations that begins to run when the transfer is made.[153]  For Plaintiff to have standing to pursue fraudulent-transfer claims under 11 U.S.C. § 544, the statute of limitations must not have expired before the bankruptcy petition was filed.[154]  Northstar filed its bankruptcy petition on August 12, 2016.  Therefore, any claims asserted under Tex. Bus. & Com. Code § 24.005(a)(1)-(2) and § 24.006(a) for any alleged transfers occurring prior to August 12, 2012 are barred by the statute of limitations.

The Bankruptcy Code allows a two-year look-back period from the date of the bankruptcy petition.[155]  Therefore, any claims asserted under 11 U.S.C. § 548 for any alleged transfers occurring prior to August 12, 2014 are barred by the statute of limitations.

### B.   Plaintiff fails to state a claim for breach of fiduciary duty against Movants.

Plaintiff claims in Count 3 of the Complaint that Individual Movants and NGP-NOG breached fiduciary duties to Northstar.[156]  But Plaintiff fails to plead facts sufficient to rebut the presumption of the business-judgment rule because the facts alleged do not raise the reasonable inference that Individual Movants breached their duties of loyalty or care to Northstar.  And Plaintiff fails to show that NGP-NOG owed any fiduciary duties to Northstar because Plaintiff

---

[153] TEX. BUS. & COM. CODE ANN. § 24.010(a)(1)-(2) (West 2017).  Plaintiff does not plead that any tolling doctrine applies.
[154] *In re Consol. Indus. Corp.*, 397 F.3d 524, 526 (7th Cir. 2005).
[155] 11 U.S.C. § 548(a)(1).
[156] The Complaint ¶¶ 71-72.

**Motion to Dismiss Plaintiff's Original Complaint– Page 31**

does not plausibly allege that NGP-NOG was a controlling shareholder of Northstar.  For those reasons, Plaintiff fails to state a valid claim for breach of fiduciary duty against Movants.

### 1. Plaintiff fails to plead facts rebutting the business-judgment-rule presumption protecting Individual Movants.

The business-judgment rule places on plaintiffs the burden of pleading facts sufficient to rebut the presumption that a director acted in the best interest of a corporation.[157]  To rebut the business-judgment rule on a 12(b)(6) motion to dismiss, the alleged facts must raise the reasonable inference that the board of directors breached either its duty of loyalty or duty of care.[158]  If a plaintiff fails to satisfy this burden, the court should decline to substitute its judgment for the decision of the board, provided the board's decision can be attributed to any rational business purpose.[159]  Because Plaintiff fails to plead facts demonstrating that Individual Movants breached their duty of loyalty or duty of care to Northstar, Plaintiff fails to rebut the business-judgment rule and therefore fails to state a claim for breach of fiduciary duty in Count 3 of the Complaint against Individual Movants.

### a. Plaintiff fails to state a claim that any Individual Movant breached his duty of loyalty.

The duty of loyalty requires directors to place the best interests of a company above any self-interest held by a director and not shared by all stockholders generally.[160]  Delaware law presumes that directors always act in a loyal manner.[161]  To rebut this presumption, a plaintiff must allege facts indicating that the individual directors were either (1) interested in the

---

[157] *In re Xtreme Power Inc.*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016) (applying Delaware law).  Delaware law applies to the scope of a member or manager's obligations to Northstar because Northstar was formed under the laws for Delaware. *Asarco LLC v. Americas Mining Corp.*, 382 B.R. 49, 61 (S.D. Tex. 2007) (Applying Texas choice-of-law rules, Delaware law—the state under which limited liability company was formed—applied to whether defendant owed limited liability company a fiduciary duty and whether he breached that duty).

[158] *In re Xtreme Power Inc.*, 563 B.R. at 642.

[159] *Id.*

[160] *Id.* at 632.

[161] *Id.*

transaction at issue; or (2) lacked independence to oppose its consummation.[162]  Absent rebutting

this presumption, there can be no breach of the duty of loyalty.[163]

> i.    **Plaintiff fails to show that Individual Movants were interested in any transaction at issue.**

Plaintiff has failed to allege facts that allow the reasonable inference that any Individual

Movant was interested in any of the transactions that are the basis for the breach-of-fiduciary-

duty claim.  Under Delaware law, "interest" means "that directors can neither appear on both

sides of the transaction nor expect to derive any personal financial benefit from it in the sense of

self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders

generally."[164]  Delaware law "reject[s] the proposition that a plaintiff can rebut the business

judgment rule…by alleging that the directors own material amounts of common stock, or are

dual-fiduciaries who owe competing duties to a large equity holder or even a sole or controlling

stockholder."[165]

Yet that is, at most, all Plaintiff has alleged.  Plaintiff alleges no facts explaining *how*

Individual Movants appeared on both sides of any transaction made the basis for his breach-of-

fiduciary-duty claim.  For example, Plaintiff alleges that Movants breached their fiduciary duties

by "having Northstar overpay NGP affiliates for the Creole Field assets."[166]  But there is no

allegation that any Individual Movant held any position with or ownership interest in the buyer

of the Creole Assets, Propel Energy.  Plaintiff claims that Propel Energy is a "NGP Company"[167]

but does not explain how Propel Energy is affiliated with any Entity Movant.  Plaintiff further

claims that Movants breached their fiduciary duties by refusing to cause Northstar to make a

---

[162] *Id.*

[163] *Id.*

[164] *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002).

[165] *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 190 (Del. Ch. 2014).

[166] The Complaint ¶ 72.

[167] The Complaint ¶ 38.

capital call for the Supplemental Commitment and causing Northstar to release the Supplemental Commitment.[168]  But there is no allegation that any Individual Movant held any specific position with or ownership interest in any Entity Movant alleged to have owed the Supplemental Commitment or alleged to have been released from the Supplemental Commitment.  Rather, Plaintiff alleges only that Individual Movants were "NGP-related directors" and "had financial interests in NGP."[169]  Without particularized facts to show *what positions or ownership interest* Individual Movants held with *which NGP entity*, Plaintiff has failed to sufficiently allege that any Individual Movant appeared on both sides of any transaction at issue.[170]

Nor does Plaintiff explain how any Individual Movant received a personal financial benefit from (1) Propel Energy's purchase of the Creole Assets; (2) allegedly refusing to cause Northstar to make a capital call for the Supplemental Commitment; or (3) allegedly causing Northstar to release the Supplemental Commitment.  Plaintiff concludes that Individual Movants "benefitted personally" from the purchase of the Creole Assets.[171]  But he does not explain how Individual Movants *could* personally benefit from a price paid to an entity that Plaintiff does not claim Individual Movants owned any financial interest in, either directly or indirectly through any Entity Movant.  Similarly, as explained above, no Individual Movants owed Supplemental Commitments to Northstar at the time of the release of the Supplemental Commitments.[172]  NGP-NOG was the only Movant owing a Supplemental Commitment and therefore the only Movant that received a financial benefit from the release.  Plaintiff does not even allege how any Individual Movant was *affiliated* with NGP-NOG, much less what personal financial benefit any

---

[168] The Complaint ¶ 72.

[169] The Complaint ¶¶ 3-4.

[170] *See, e.g.*, *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 681–82 (N.D. Tex. 2011) (applying Delaware law) (determining that complaint sufficiently plead around the business judgment rule where it alleged the directors' position at each entity on different sides of the transaction).

[171] The Complaint ¶ 40.

[172] *See supra*, § II(A)(3).

Individual Movant received.

Therefore, Plaintiff alleges no facts demonstrating that any Individual Movants were interested in any transaction made the basis for his claim for breach of fiduciary duty.

> **ii.** **Plaintiff fails to show that Individual Movants lacked independence.**

Independence requires that a director consider only the corporate merits of the transaction, ignoring any personal or extraneous considerations or influences.[173] "This inquiry asks not whether the director has derived some benefit from the transaction, but rather whether the director's decision resulted from the director being controlled by another."[174] Control exists (1) where another entity or individual dominates the director, either through a close personal or familial relationship or by force of will; or (2) when circumstances show that the director is beholden to another entity or individual.[175] To raise a question concerning the independence of a particular board member, a plaintiff asserting the "control of one or more directors must allege *particularized facts* manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'"[176]

Plaintiff asserts nothing more than *bare conclusions* that Entity Movants controlled Individual Movants:

- "NGP controlled the Northstar board of managers, comprised of five NGP-related directors…."[177]

- "The NGP directors caused Northstar to overpay for the asset….This inflated price benefitted the NGP Directors, who had financial interests in NGP."[178]

---

[173] *In re Xtreme Power Inc.*, 563 B.R. 614, 632 (Bankr. W.D. Tex. 2016) (applying Delaware law).
[174] *Id.*
[175] *Id.* at 632-33.
[176] *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002) (emphasis added).
[177] The Complaint ¶ 3.
[178] The Complaint ¶ 4.

- "NGP directed Northstar to take out $120 million in shot-term bank debt….Yet the NGP-controlled board refused to call NGP's contractually committed $75 million obligation."[179]

- "In 2012, using its control over Northstar, NGP caused the Board to overpay for NGP assets for NGP's benefit."[180]

- "Through its NGP directors, NGP caused Northstar to increase its bid by 40% to over $113 million."[181]

- "NGP exercised complete control over Northstar."[182]

- "Defendants used their control of Northstar to transfer those funds out of Northstar for the benefit of Defendants."[183]

- "Defendants caused Northstar to sign the release of these valuable capital obligations…."[184]

There are no facts supporting these conclusions. No facts pleaded explain *how* any Individual Movant was dominated by any Entity Movant or beholden to any Entity Movant. Such "[g]eneral allegations of domination over a Board are simply not sufficient under Delaware law to state a traditional duty of loyalty claim."[185]

> ### b. Plaintiff fails to state a claim that any Individual Movant breached his duty of care to Northstar.

The duty of care requires directors to make an "informed business judgment" when

---

[179] The Complaint ¶ 6.

[180] The Complaint ¶ 38.

[181] The Complaint ¶ 39.

[182] The Complaint ¶ 45.

[183] The Complaint ¶ 61.

[184] The Complaint ¶ 67.

[185] *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, CIV.A. 20228-NC, 2004 WL 1949290, at *10 (Del. Ch. Aug. 24, 2004). *See also Miramar Firefighters Pension Fund v. AboveNet, Inc.*, C.A. 7376-VCN, 2013 WL 4033905, at *3 (Del. Ch. July 31, 2013) (allegations that directors "succumbed" to a party's desire or "acquiesced in" that party's plan are "insufficient to raise a reasonable inference that [the directors] were beholden to, or controlled by, [that party]"); *Official Committee of Unsecured Creditors v. Meltzer*, 1:17-CV-256-NT, 2018 WL 2123558, at *6 (D. Me. May 8, 2018) ("Allegations that a director has a relationship with a third party do not suffice absent some indication of how that affiliation influenced the director's decision-making." (applying Delaware law)).

**Motion to Dismiss Plaintiff's Original Complaint– Page 36**

acting in the interests of the company.[186]   Under Delaware law, breach of the duty of care is "predicated upon concepts of gross negligence."[187]   A failure to make an informed business decision will only result in liability if the directors' conduct was committed with gross negligence or beyond the "bounds of reason."[188]   For this reason, Delaware courts have been "extremely stringent" in finding directors liable for breaching their duty of care.[189]   This reluctance to find liability applies equally to both solvent and insolvent corporations.[190]

It is unclear from the Complaint whether Plaintiff is alleging that any Individual Movant breached his duty of care.[191]   To the extent that Plaintiff claims that any Individual Movant breached his duty of care, Plaintiff has failed to state a claim.   Plaintiff does not even *allege*— much less plead facts plausibly suggesting—that any Individual Movant committed any act with gross negligence.

### 2.   Plaintiff fails to plausibly allege that NGP-NOG owed fiduciary duties to Northstar.

Plaintiff claims that NGP-NOG owed fiduciary duties to Northstar "as the controlling shareholder of the closely held company."[192]   Delaware law provides that only controlling shareholders owe fiduciary duties to the corporations they have invested in.[193]   To qualify as a

---

[186] *Smith v. Van Gorkom*, 488 A.2d 858, 872–73 (Del. 1985), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695, 713 n.54 (Del. 2009).

[187] *In re Think3, Inc.*, 529 B.R. 147, 172 (Bankr. W.D. Tex. 2015).

[188] *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008); *see also In re Xtreme Power Inc.*, 563 B.R. 614, 640 (Bankr. W.D. Tex. 2016) (applying Delaware law).

[189] *McPadden*, 964 A.2d at 1274.

[190] *Id.*

[191] Plaintiff alleges that Movants "violated their fiduciary duties through acts of self-dealing and conflicting interests…." The Complaint ¶ 72. These are allegations of breaches of the duty of loyalty only. *See In re Xtreme Power Inc.*, 563 B.R. 614, 632 (Bankr. W.D. Tex. 2016) (applying Delaware law).

[192] The Complaint ¶ 71.

[193] *In re Xtreme Power Inc.*, 563 B.R. at 643 (applying Delaware law).

controlling shareholder, an entity must either (1) own more than 50% of the voting power of the corporation; or (2) exercise actual control over the business affairs of the corporation.[194]

Plaintiff fails to allege that NGP-NOG was a controlling shareholder of Northstar under either test. Nowhere does Plaintiff allege that NGP-NOG owned more than 50% of the voting power. Rather, the *sole allegation* regarding NGP-NOG's ownership interest states that "NGP owned the vast majority of the company, through affiliates NGP-NOG and NGP X US."[195] This allegation demonstrates nothing regarding whether NGP-NOG specifically held more than a 50% ownership interest.[196]

Nor does Plaintiff allege facts plausibly suggesting that NGP-NOG exercised actual control over Northstar. When the shareholder owns less than 50% of the voting power, actual control must be pled.[197] For a complaint to survive a motion to dismiss, a plaintiff must plead specific facts to support the allegation that the minority shareholder's power is "so potent that independent directors ... cannot freely exercise their judgment" without fear of retribution.[198] Mere allegations of the potential to exercise control will not suffice.[199] The bare conclusory allegation that a minority stockholder possessed control is also insufficient.[200] Rather, the Complaint must contain well-pled facts showing that the minority stockholder "exercised actual domination and control over ... [the] directors."[201] A minority stockholder is not considered to be a controlling stockholder unless it exercises "such formidable voting and managerial power

---

[194] *Id.*

[195] The Complaint ¶ 36.

[196] *See, e.g.*, *Thermopylae Capital Partners, L.P. v. Simbol, Inc.*, No. 10619-VCG, 2016 WL 368170, at *13 (Del Chan. Jan. 29, 2016) (determining complaint did not allege that company held a majority of shares where it only alleged that the company held and controlled a majority of the company's preferred stock and did not explain the relationship of that stock to other classes of stock).

[197] *In re Xtreme Power Inc.*, 563 B.R. 614, 643 (Bankr. W.D. Tex. 2016) (applying Delaware law).

[198] *Id.*

[199] *Id.*

[200] *In re Morton's Rest. Grp., Inc. S'holders Litig.*, 74 A.3d 656, 664–65 (Del. Ch. 2013).

[201] *Id.*

that [it], as a practical matter, [is] no differently situated than if [it] had majority voting control."[202]   There are *no allegations whatsoever* that NGP-NOG, separate from any other Movant, controlled the Northstar board of directors, much less any specific facts supporting any such allegation.

Because no facts in the Complaint support the reasonable inference that NGP-NOG owned more than 50% of the voting power in Northstar or controlled Northstar, Plaintiff fails to establish that NGP-NOG owed any fiduciary duties to Northstar.  Plaintiff therefore fails to state a claim for breach of fiduciary duty against NGP-NOG.

**C.      Plaintiff fails to state a claim for breach of contract against NGP-NOG.**

Plaintiff fails to state a claim in Count 4 of the Complaint for breach of the Contract against NGP-NOG because Plaintiff fails to allege an actual term of the Contract that NGP-NOG allegedly breached.  Plaintiff does not allege—nor can it allege—that NGP-NOG breached any obligation that the Contract actually contains.

**1.      Plaintiff misrepresents the term of the Contract he claims NGP-NOG breached.**

Plaintiff claims that NGP-NOG breached the Contract by "failing to eliminate the working capital deficit" of Northstar.[203]   But the Contract did not require NGP-NOG "to eliminate the working capital deficit."   Instead, the Contract required NGP-NOG to pay the "Working Capital Deficit"—a term defined in the Contract as *a specific amount of money*.

The Contract is part of the pleadings that the Court can consider on a Rule 12(b)(6) motion to dismiss because Plaintiff references it in the Complaint, and it is central to Plaintiff's

---

[202] *Id.*

[203] The Complaint ¶ 76.

claim for breach of the Contract.[204]   The Contract provides that Northstar "hereby releases each of the Members [defined to include NGP-NOG] with a Supplemental Commitment *(other than [NGP-NOG] to the extent of the NOG Contribution)* from any obligation to fund any Supplemental Capital Contribution."[205]   The Contract defines "NOG Contribution" as "an amount equal to the Bank Debt and the Working Capital Deficit (currently estimated to be approximately $40,000,000) (the "NOG Contribution")...."[206]   The Contract defines "Working Capital Deficit" as Northstar's "net negative working capital of approximately $20,000,000 calculated as of July 1, 2014 *(such actual amount required to be paid pursuant to the Purchase Agreement (as defined below)....*"[207]

So as defined in the Contract, Working Capital Deficit refers to a *specific numerical amount* that can be ascertained through the Purchase Agreement.  The "Purchase Agreement" is "that certain Purchase and Sale Agreement by and between NOG, the Management Team Members and the Buyer, dated July 16, 2014, as amended July 23, 2014...a copy of which is attached hereto as Exhibit A."[208]   The Purchase Agreement provides for a **Final Settlement Statement** to be prepared that shows all adjustments to the Purchase Price, including "the actual Effective Time Working Capital...."[209]   The Purchase Agreement defines "Effective Time

---

[204] Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they (1) are referred to in the plaintiff's complaint; and (2) are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  Documents are central to a claim when they are necessary to establish an element of one of the plaintiff's claims.  *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 434 (S.D. Tex. 2016).  Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

[205] The Contract ¶ 2 (emphasis added), attached as Exhibit D.

[206] The Contract ¶ J, Exhibit D.

[207] The Contract ¶ C, Exhibit D (emphasis added).

[208] Contract ¶ F (emphasis in original), Exhibit D.

[209] The Purchase Agreement ¶ 3.6, Exhibit D.  The Purchase Agreement is attached to and incorporated by reference in the Contract and is therefore part of the Contract.

**Motion to Dismiss Plaintiff's Original Complaint– Page 40**

Working Capital" as the "calculation…being detailed in Schedule 3.3."[210]  Schedule 3.3 of the
Purchase Agreement provides a "Sample Effective Time Working Capital Calculation" that
reflects the "Net Working Capital" of Northstar at the closing of the sale of Northstar to Lafitte
Energy Corp., which is shown to be calculated by subtracting Northstar's "Total Current
Liabilities" from its "Total Current Assets."[211]

The Final Settlement Statement shows that the Effective Time Working Capital of
Northstar at closing—the "Net Working Capital"—was a *deficit* of $20,022,920.00.[212]
Therefore, the Contract did not, as Plaintiff claims, obligate NGP-NOG to eliminate Northstar's
working capital deficit.  Instead, it required NGP-NOG to pay a specific amount of money:
$20,022,920.00.

### 2. Plaintiff fails to allege that NGP-NOG breached its obligation to pay the Working Capital Deficit, as that term is defined in the Contract.

To state a claim for breach of contract, a plaintiff must plead (1) the existence of a valid
contract; (2) its performance or tendered performance of the contract; (3) the defendant's breach
of *a term of the contract*; and (4) damages sustained as a result of the breach.[213]

As explained above, the Contract provides that NGP-NOG must pay the Working Capital
Deficit—a term defined in the Contract to be a specific numerical amount, $20,022,920.00.  But
Plaintiff has not alleged that NGP-NOG failed to pay the Working Capital Deficit—as that term
is defined in the Contract—that it was required to pay at the closing.  Plaintiff's failure to

---

[210] The Purchase Agreement ¶ 3.3(a)(i), Exhibit D.

[211] The Purchase Agreement, Schedule 3.3, Exhibit D.

[212] Final Settlement Statement, Exhibit G.  Because the Purchase Agreement expressly required the Final Settlement Statement to be prepared, the Final Settlement Statement is part of the Purchase Agreement, which is part of the Contract. The Final Settlement Statement is being filed under seal pursuant to the Motion to File Certain Exhibits in Support of Motion to Dismiss under Seal, which is being filed simultaneously with this Motion to Dismiss.

[213] *Baker v. Great N. Energy, Inc.*, No. 3:14-CV-0240, 2014 WL 6805483, at *3 (N.D. Tex. Dec. 3, 2014).

identify an actual provision in the Contract that NGP-NOG purportedly violated dooms its claim for breach of the Contract.[214]

### 3. Plaintiff cannot allege that NGP-NOG failed to pay the NOG Contribution.

Plaintiff has not alleged that NGP-NOG failed to pay the NOG Contribution that the Contract required it to pay.  Nor can it make that allegation because NGP-NOG did in fact pay the NOG Contribution.

Interestingly, the estimate of the NOG Contribution identified in the Contract is a number that closely correlates to the amount of money that Plaintiff acknowledges in the Complaint "NGP"—defined to include NGP-NOG[215]—actually paid at the closing.  Plaintiff alleges that, at the closing of the sale of Northstar to Lafitte Energy Corp., "NGP added *just over half of its $75 million capital obligation*, avoiding the rest."[216]  The Contract defines the "NOG Contribution" as "an amount equal to the Bank Debt and the Working Capital Deficit (*currently estimated to be approximately $40,000,000*) (the "NOG Contribution")…."[217]  Therefore, Plaintiff's allegation in fact suggests that NGP-NOG performed the Contract by funding "just over half of its $75 million capital obligation," which the Contract's estimate of the NOG Contribution—the only amount of money that the Contract obligated NGP-NOG to fund—closely approximates.

And contrary to Plaintiff's assertion that NGP-NOG "avoid[ed] the rest" of its alleged "$75 million capital obligation," the Contract did not require NGP-NOG to fund $75 million.

---

[214] *See id.* at *4 (N.D. Tex. Dec. 3, 2014) ("This Court and others throughout this Circuit have consistently indicated that, as a general rule, 'a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant.'"); *Lucas v. Ocwen Home Loan Serv.*, No. 3:13-CV-1057, 2014 WL 7059274, at *3 (N.D. Tex. Nov. 21, 2014), *report and recommendation adopted*, 2014 WL 7146033 (N.D. Tex. Dec. 12, 2014) (dismissing with prejudice breach-of-contract claim alleging that defendant breached requirements of Real Estate Settlement Procedures Act ("RESPA") when the plaintiff "failed to identify…the existence of a valid contract…that incorporate[d] RESPA provisions or require[d] [defendant] to comply with the terms of RESPA" and the plaintiff "fail[ed] to identify any provisions of the deed of trust that incorporate provisions of RESPA….").

[215] Plaintiff defines "NGP" to include all Entity Movants, including NGP-NOG.  The Complaint at 1.

[216] The Complaint ¶ 51 (emphasis added).

[217] The Contract ¶ J (emphasis added).

**Motion to Dismiss Plaintiff's Original Complaint– Page 42**

Rather, the Contract *released* NGP-NOG from the obligation to fund $75 million—excepting only the NOG Contribution.[218]   The parties agreed in the Contract that the NOG Contribution was sufficient "to pay off the Bank Debt and eliminate the Working Capital Deficit."[219]   Because Plaintiff has not alleged that NGP-NOG failed to pay the NOG Contribution—and indeed suggests that NGP-NOG in fact *did pay* the NOG Contribution—his claim for breach of the Contract in Count 4 of the Complaint should be dismissed.

**D.      Plaintiff fails to state a claim for conspiracy against Movants.**

In Count 5 of the Complaint, Plaintiff claims that the Entity Movants "conspired with the Northstar Directors [non-Movant Defendants] and NGP Directors [Individual Movants] to commit the above fiduciary breaches and fraudulent transfers…."[220]   Plaintiff's conspiracy claim should be dismissed because he fails to state a claim either for conspiracy to commit breaches of fiduciary duty or conspiracy to commit fraudulent transfers.

**1.      Plaintiff fails to state a claim for conspiracy to commit breaches of fiduciary duty.**

Plaintiff fails to state a claim for conspiracy to commit breaches of fiduciary duty because (1) Movants cannot conspire with each other; and (2) Plaintiff fails to plausibly allege elements of a conspiracy claim.   Therefore, Plaintiff's claim for conspiracy to commit breaches of fiduciary duty in Count 5 of the Complaint should be dismissed.

**a.      Movants cannot conspire with each other.**

Plaintiff claims that Entity Movants conspired with Individual Movants, who Plaintiff claims Entity Movants "controlled."[221]   But a corporation generally cannot be deemed to have

---

[218] The Contract ¶ 2.

[219] The Contract ¶ J.

[220] The Complaint ¶ 78.

[221] *See* the Complaint ¶¶ 3, 4, 6, 38, 39, 45, 61, 67.

**Motion to Dismiss Plaintiff's Original Complaint– Page 43**

conspired with its wholly owned subsidiary, or its officers and agents.[222]  Therefore, to the extent that Plaintiff claims that Individual Movants were officers or agents of Entity Movants, Individual Movants cannot, as a matter of law, conspire with Entity Movants.

      **b.**      **Plaintiff fails to plead facts supporting elements of a conspiracy claim.**

To state a claim for conspiracy, a plaintiff must plead facts that support the following elements: (1) two or more persons; (2) an object to be accomplished; (3) *a meeting of the minds on the object or course of action*; (4) *one or more unlawful overt acts*; and (5) resulting damages.[223]  A plaintiff must allege "enough factual matter (taken as true) to suggest that an [unlawful] agreement was made."[224]  The factual allegations cannot merely be consistent with the existence of an unlawful agreement; rather, the allegations must plausibly suggest that an unlawful agreement existed.[225]

Plaintiff fails to allege facts that plausibly suggest that Movants made *any* agreement— much less an unlawful one.  Plaintiff also cannot allege the "unlawful act" requirement because, as explained above, its claim for breach of fiduciary duty fails.[226]

      **2.**      **Plaintiff fails to state a claim for conspiracy to commit fraudulent transfers.**

There is no cause of action for conspiracy to commit a fraudulent transfer.[227]  Further, because, as discussed above, Plaintiff's claims for fraudulent transfer fail, Plaintiff's claim for

---

[222] *In re Transamerica Airlines, Inc.*, CIV.A. 1039-N, 2006 WL 587846, at *6 (Del. Ch. Feb. 28, 2006); *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 381 (Tex. App.—Dallas 2009, pet. denied) ("As a general rule, a corporation cannot conspire with itself through its agents.").

[223] *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *In re Transamerica Airlines, Inc.*, CIV.A. 1039-N, 2006 WL 587846, at *6 (Del. Ch. Feb. 28, 2006).

[224] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[225] *Id.* at 556-57.

[226] *See Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 223–24 (5th Cir. 2017) ("Moreover, because, as discussed *supra*, Plaintiff's fiduciary duty breach claims fail, Plaintiff cannot satisfy the 'unlawful act' requirement of civil conspiracy.").

[227] *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 3:12-CV-4641-N, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014) (noting that the "weight of authority" concludes that "TUFTA does not provide for secondary

---

conspiracy to commit fraudulent transfers must fail as well.  Therefore, Plaintiff's claim for conspiracy to commit fraudulent transfers in Count 5 of the Complaint should be dismissed.

**E.      Plaintiff fails to state a claim for aiding and abetting.**

Because Plaintiff's breach-of-fiduciary-duty and fraudulent-transfer claims fail, its claim for aiding and abetting breaches of fiduciary duty and fraudulent transfers also fails.[228]  Further, there is no cause of action for aiding and abetting fraudulent transfers.[229]  Therefore, Plaintiff's claim for aiding and abetting in Count 6 of the Complaint should be dismissed.

**F.      Any amendment to the Complaint would be futile.**

Amendment of a complaint is not warranted where it would be futile—where the complaint would not be able to withstand a motion to dismiss under Rule 12(b)(6).[230]  As discussed above, each of Plaintiff's claims is either legally defective and/or is factually defective. The legal defects cannot be cured.  And Plaintiff cannot—absent filing false pleadings—plead any facts that would cure the factual deficiencies underlying his claims.   Plaintiff should not have another "bite at the apple" in an attempt to create viable claims that he does not possess. Movants ask that the Court dismiss Plaintiff's claims with prejudice to refiling.

### III.      Conclusion

For these reasons, Movants ask that the Court enter an order dismissing with prejudice each of Plaintiff's claims asserted against Movants in Plaintiff's Original Complaint.

---

liability"); *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014) ("Under Delaware law, a conspiracy cannot be predicated on fraudulent transfer.").

[228] *See Matter of ATP Oil & Gas Corp.*, 711 F. App'x at 223–24 ("Instead—as the district court recognized—the aiding and abetting claim fails because Plaintiff has failed to plausibly allege a fiduciary duty breach.").

[229] *Official Stanford Inv'rs Comm.*, 2014 WL 12572881, at *10 (holding that Texas does not recognize a cause of action for aiding and abetting fraudulent transfers); *In re the Brown Schools*, 386 B.R. 37, 58 (Bankr. D. Del. 2008) (dismissing a claim for aiding and abetting fraudulent transfers, because such a claim was not permitted under Delaware law or the Bankruptcy Code).

[230] *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.,* 620 F.3d 465, 468 (5th Cir. 2010).

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: /s/ David M. Bennett

    David M. Bennett
    Bar No. 02139600
    Stephen C. Rasch
    Bar No. 16551420
    Cassandra Sepanik Shoemaker
    Bar No. 24070592
    Julie C. Abernethy
    Bar No. 24056947

    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    Telephone: (214) 969-1700
    Facsimile: (214) 969-1751

**ATTORNEYS FOR NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; AND DAVID HAYES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system on June 4, 2018.


<u>/s/ *David M. Bennett*</u>
David M. Bennett