IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NORTHSTAR OFFSHORE GROUP LLC, | § | Case No. 16-34028 |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| JAMES KATCHADURIAN, Litigation Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 18-03079 |
| | § | |
| NGP ENERGY CAPITAL MANAGEMENT, | § | |
| L.L.C.; NGP X US HOLDINGS, L.P.; NGP | § | |
| NATURAL RESOURCES X, L.P.; NGP X | § | |
| PARALLEL HOLDINGS, L.P.; NGP | § | |
| NATURAL RESOURCES X PARALLEL | § | |
| FUND, L.P.; NOG ROYALTY HOLDINGS, | § | |
| L.P.; CHRISTOPHER RAY; JESSE BOMER; | § | |
| TOMAS ACKERMAN; DAVID ALBIN; | § | |
| DAVID HAYES; S. GLYNN ROBERTS; | § | |
| GAYLON FREEMAN; MARK STEVENS; and | § | |
| JAMES P. ULM, II, | § | |
| | § | |
| Defendants. | § | |

## JOINT RULE 26(f) REPORT

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties held a Rule 26(f)

Discovery Planning Conference via video conferencing on June 11, 2018. Robert K. Ellis of Yetter

Coleman, LLP attended on behalf of Plaintiff. David M. Bennett and Stephen C. Rasch of

Thompson Knight, L.L.P. attended on behalf of Defendants NGP Energy Capital Management,

L.L.C., NGP X US Holdings L.P., NGP Natural Resources X, L.P., NGP X Parallel Holdings,

L.P., NGP Natural Resources X Parallel Fund, L.P., and NOG Royalty Holdings, L.P. , Christopher

Ray, Jesse Bomer, Tomas Ackerman, David Albin, and David Hayes.  Stephen B. Edmundson of

Cozen O'Connor attended on behalf of Defendants S. Glynn Roberts, Gaylon Freeman, Mark

Stevens, and James P. Ulm, II.

Plaintiff and Defendants (together, the "Parties") hereby file their Joint Rule 26(f) Report.

**1.      List the cases related to this one that are pending in any state or federal court with the case number and court.**

*In re: Northstar Offshore Group, LLC*, Case No. 16-34028; in the United States

Bankruptcy Court for the Southern District of Texas.

**2.      Briefly describe what the case is about.**

**Plaintiff:**   Plaintiff incorporates the Original Complaint (Dkt. 001). This lawsuit against

the former owners and directors of Northstar Offshore Group LLC is necessary to avoid fraudulent

transfers and secure compensation for losses based on claims transferred by Northstar, as Chapter

11 debtor in possession, to the Northstar Litigation Trust under the terms of the Chapter 11 plan

confirmed by this Court on December 22, 2017.

Northstar is the third investment that NGP undertook with the Northstar executive team.

At all relevant times, NGP owned the majority of Northstar and controlled the Northstar board of

managers, comprised of five NGP-related directors: Defendants Ackerman, Albin, Bomer, Hayes,

and Ray – and four directors from management: Defendants Roberts, Freeman, Stevens, and Ulm.

From the outset, NGP used its control of Northstar to manufacture inflated profits for NGP

at Northstar's expense. For example, NGP caused Northstar to pay tens of millions of dollars over

market price when buying oil fields from NGP's other investments. The inflated price benefitted

the NGP directors, who had financial interests in NGP.

This type of self-dealing continued throughout the next two years. Even though the

directors acknowledged the company was insolvent, inadequately capitalized, and unable to pay

its debts as they came due, these directors conspired with NGP to: (1) cause Northstar to release NGP and the individual directors from millions of dollars of commitments to Northstar without receiving equivalent value in return; (2) decline to enforce Northstar's contractual right to demand tens of millions of dollars in capital obligations from NGP and the individual directors; and (3) have Northstar overpay for assets owned by other NGP companies to inflate NGP profits at Northstar's expense.

For example, NGP directed Northstar to take out $120 million in short-term bank debt. To justify the loan, the bank required NGP to commit to provide $75 million to Northstar upon Northstar's request. Because of the dire financial straits, Northstar lacked funds to pay its debts as they came due and racked up a debilitating $20 million working capital deficit. The NGP-controlled board refused to call NGP's contractually committed $75 million obligation.  Instead, NGP and the Northstar board agreed to have Northstar forgive and release the contractual obligations of NGP and the board members without receiving reasonably equivalent value.

While admitting to each other about Northstar's insolvency and unpayable debts, NGP and its affiliated board members seized control Northstar, requiring NGP's approval before any additional expenditures, and openly worried that a Northstar bankruptcy would bring serious reputational harm to NGP's ability to raise funds in the future. NGP developed an exit strategy. NGP negotiated a sale to Platinum Partners, a dubious company which NGP already knew was struggling to raise money and obtain financing for its obligations. Before closing, NGP signed a contract with Northstar that purported to release NGP and the Northstar directors of their financial commitments to Northstar, and transferred to NGP a profit interest in Northstar's most valuable fields. The contract also promised for NGP to pay off the bank debt and eliminate Northstar's working capital deficit after closing. NGP transferred out the profit interest from Northstar, but

3

failed to eliminate the working capital deficit, leaving Northstar with a crippling $15 million deficit in immediately payable debt. Because of NGP's bad acts, Northstar remained insolvent and in dire financial straits. This required Northstar to take desperate measures to pay its debts and stay afloat. Shortly after the NGP sale, Northstar had to sell a valuable hedge prematurely, losing benefits from the hedge on declining oil prices and suffering a material loss.

As detailed in the complaint, Plaintiff seeks to avoid fraudulent transfers pursuant to 11 U.S.C. § 544(b) and § 548(a). Plaintiff also brings claims against defendants for breaches of fiduciary duty, breach of contract, conspiracy to commit fiduciary breaches and fraudulent transfers, and aiding and abetting the breaches of fiduciary duty and fraudulent transfers.

**Defendants:**  Plaintiff fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For a comprehensive explanation of the deficiencies of Plaintiff's Original Complaint, see Defendants' Motions to Dismiss Plaintiffs' Original Complaint [Docs. 19, 23].  In general, the Complaint is devoid of factual allegations necessary to support the assumptions underlying Plaintiff's claims.  Plaintiff further fails to state valid claims for relief for the following reasons:

- Count 1:  Plaintiff cannot recover from any Defendants for the purchase price that Northstar paid to Propel Energy L.L.C. ("Propel Energy") for oil and gas assets in the Creole Field (the "Creole Assets") because Defendants are not transferees of the purchase price and there are no facts demonstrating how the purchase price paid to Propel Energy benefitted any Defendant.

- Counts 1 and 2:  The release of any Movant,[1] other than NOG Royalty Holdings, L.P. ("NGP-NOG"), from a capital commitment was not a fraudulent transfer because no Movant, other than NGP-NOG, owed a capital commitment at the time of the release.

---

[1] All capitalized terms not herein defined shall have the meanings ascribed to them in the Motion to Dismiss Plaintiff's Original Complaint [Doc. 19] as Defendants NGP Energy Capital Management, L.L.C., NGP X US Holdings L.P., NGP Natural Resources X, L.P., NGP X Parallel Holdings, L.P., NGP Natural Resources X Parallel Fund, L.P., and NOG Royalty Holdings, L.P. (together, "Entity Movants"), and Christopher Ray, Jesse Bomer, Tomas Ackerman, David Albin, and David Hayes (together, "Individual Movants") (collectively, "Movants").

- Count 1:  The capital commitment owed by NGP-NOG that was released was not an asset that could be transferred under the Texas Uniform Fraudulent Transfer Act because the capital commitment was fully encumbered by a valid lien held by Wells Fargo Bank, N.A. at the time of the release.

- Count 2:  NGP-NOG's capital commitment that was released was not Northstar's property under 11 U.S.C. § 548 because it would not have been an asset of Northstar's bankruptcy estate.

- Counts 1 and 2:  Plaintiff fails to plead his claims for actual fraudulent transfer with the particularity that Federal Rule of Civil Procedure 9(b) requires.

- Counts 1 and 2:  Plaintiff violates Federal Rule of Civil Procedure 8(a) by failing to specify Movants' alleged individual roles in the transfers.

- Count 1:  Plaintiff fails to identify any "triggering" unsecured creditor required to state a claim under 11 U.S.C. § 544(b).

- Counts 1 and 2:  Plaintiff fails to plead facts supporting his allegations (1) that Northstar received less than reasonably equivalent value for the transfers; and (2) that Northstar was insolvent at the time of the transfers or became insolvent from them.

- Count 1:  The one-year statute of limitations bars Plaintiff's constructive fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).

- Count 3:  Plaintiff fails to plead facts negating the business-judgment rule because no facts raise the reasonable inference that any individual Defendant breached his fiduciary duties of loyalty or care to Northstar.

- Count 3:  Plaintiff fails to plausibly allege that NGP-NOG was a controlling shareholder of Northstar such that it owed fiduciary duties to Northstar.

- Count 4:  Plaintiff misrepresents the term of the contract that he claims NGP-NOG breached and fails to allege a breach of any term that the contract actually contains.

- Count 5:  Plaintiff fails to state a claim for conspiracy to commit breaches of fiduciary duty because (1) Defendants cannot, as a matter of law, conspire with each other; and (2) Plaintiff fails to plausibly allege elements of a conspiracy claim.

- Count 6:  Because Plaintiff's claim for breach of fiduciary duty fails, his claim for aiding and abetting breaches of fiduciary duties must fail as well.

- Counts 5 and 6:  There is no cause of action for conspiracy to commit, or aiding and abetting, fraudulent transfers.

Further, Plaintiff's claims have been released in whole or in part pursuant to the terms of (a) the Buyer Release and Termination Agreement; and (b) the Settlement Agreement and Mutual Release.

Further, Defendants may avoid the rescission of any alleged transfer because Defendants took for value and in good faith under 11 U.S.C. § 548(c).

Further, under Tex. Bus. & Com. Code § 24.009(a), any alleged transfer is not voidable under Tex. Bus. & Com. Code § 24.005(a)(1) against Defendants because Defendants took in good faith and for a reasonably equivalent value.

Further, under Tex. Bus. & Com. Code § 24.009(f)(2), any alleged transfer is not voidable under Tex. Bus. & Com. Code § 24.006(b) against Defendants because it was made in the ordinary course of business or financial affairs of Northstar.

Further, under the terms of the Amended and Restated Limited Liability Company Agreement of Northstar, Defendants are not liable to Northstar for any acts or omissions that do not constitute gross negligence, willful misconduct, a breach of fiduciary duty, or a breach of the express terms of the Amended and Restated Limited Liability Company Agreement of Northstar.

Further, Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

Further, the alleged injuries and damages, if any, were proximately caused by the actions or omissions of third parties over whom Defendants have no control.

Further, this Court's Order Authorizing the Debtor to Enter into NPI Conversion Agreement Outside the Ordinary Course of Business [Dkt. No. 646] precludes any claim in connection with the NPI or the ORRI.[2]

**3.      Specify the allegation of federal jurisdiction.**

Plaintiff takes the following positions regarding jurisdiction and venue:

This Court has jurisdiction under 28 U.S.C. § 157 and § 1334.  The Complaint ¶ 11 [Doc. 1224].

Venue is proper pursuant to 28 U.S.C. § 1408 and § 1409.  The Complaint ¶ 12 [Doc. 1224].

**4.      Name the parties who disagree and the reasons.**

Movants intend to file a jury demand and simultaneously move to withdraw the reference.

**5.      List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

None at this time.

**6.      List anticipated interventions.**

None at this time.

**7.      Describe class-action issues.**

None.

**8.      State whether each party represents that it has made the initial disclosures required by Rule 26(a).  If not, describe the arrangements that have been made to complete the disclosures.**

The Parties agreed to exchange Rule 26(a) Initial Disclosures no later than June 29, 2018, which is 7 days after the June 22, 2018 scheduling conference.

---

[2] Defendants expressly reserve all rights, claims and defenses in connection with this Adversary Proceeding.  Defendants' position is that the failure of Defendants to include a right, claim or defense herein shall not be construed as, and is not, a waiver of any such right, claim or defense.

**9.      Describe the proposed discovery plan and other deadlines.**

**Plaintiff:**  Plaintiff believes that discovery should move forward while the Court considers Defendants' Motions to Dismiss Plaintiff's Original Complaint [Docs. 19 and 23].

**Defendants:**  Defendants request that the Court stay discovery pending the Court's ruling on Defendants' Motions to Dismiss Plaintiff's Original Complaint [Docs. 19 and 23] and intend to file a Motion to Stay Discovery.  If all or any part of Plaintiff's claims survive, Defendants request that scheduling deadlines be calculated from the Court's order denying all or part of any Rule 12(b)(6) motion to dismiss that is filed in this adversary proceeding.

**Discovery matters to which the Parties agree:**  The Parties make the following proposals with respect to the conduct of discovery:

a.   As noted above, the Parties disagree on when discovery should begin but jointly propose a twelve-month discovery period—allotting eight months to conclude document discovery, two months for Plaintiff's expert reports and depositions, and two months for Defendants' expert reports and depositions.

b.   The Parties agree that discovery does not need to be conducted in phases.

c.   The Parties will confer with each other, and if necessary the Court, about taking more than the usual 10 depositions per side if needed.

d.   The Parties agree that in the event that privileged materials are inadvertently produced during discovery, the Parties agree to, in good faith, negotiate a reasonable "clawback" agreement that provides for the return of these inadvertently produced privileged materials.

e.   The Parties agree to produce any discoverable electronic data pursuant to the Federal Rules of Civil Procedure.   Where feasible, the Parties will produce

electronic data in a searchable, though not necessarily native, format (e.g. searchable Adobe .pdf format).

    f.   All discovery, including but not limited to depositions, interrogatories, requests for production, and requests for admission, shall be conducted according to the Federal Rules of Civil Procedure, the Federal Bankruptcy Rules, and the Court's local rules.

**10.    State the Parties' agreement regarding resolving future discovery disputes.**

The Parties agree that they will resolve any discovery disputes in accordance with the Court's Order Establishing Procedures for Discovery Disputes [Doc. 5].

**11.    Specify the discovery beyond initial disclosures that has been undertaken to date.**

None.

**12.    Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

The Parties discussed the possibilities for prompt settlement or resolution of the case and agree that settlement discussions are premature at this stage.

**13.    State whether a jury demand has been made and if it was made on time.**

No jury demand has been made as of the date of the filing of this Rule 26(f) Report.  But Defendants intend to timely file a jury demand.

**14.    List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

    a.   Defendants' Motions to Seal [Docs. 15, 22]

    b.   Motion to Extend Time to Respond [Doc. 26]

**15.    List other motions pending.**

    a.   Movants' Motion to Dismiss Plaintiffs' Original Complaint [Doc. 19]

    b.   Northstar Directors' Motion to Dismiss Plaintiffs' Original Complaint [Doc. 23]

**16.     Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

Defendants intend to file a Motion to Stay Discovery before the Rule 16 conference on

June 22, 2018.

**17.     List the names, bar numbers, addresses and telephone numbers of all counsel.**

See signature blocks of counsel for the Parties below.

Date: June 15, 2018

Respectfully submitted,

THOMPSON & KNIGHT LLP

YETTER COLEMAN LLP

By:  _/s/ David M. Bennett_____
       David M. Bennett
       State Bar No. 02139600
By:  _/s/ R. Paul Yetter_____
       R. Paul Yetter
       State Bar No. 22154200
       pyetter@yettercoleman.com
       Robert K. Ellis
       State Bar No. 24076367
       rellis@yettercoleman.com
       Wyatt J. Dowling
       State Bar No. 24074152
       wdowling@yettercoleman.com
       811 Main Street, Suite 4100
       Houston, Texas 77002
       (713) 632-8000
       (713) 632-8002 (fax)

       David.Bennett@tklaw.com
       Stephen C. Rasch
       State Bar No. 16551420
       Stephen.Rasch@tklaw.com
       Cassandra Sepanik Shoemaker
       State Bar No. 24070592
       Cassandra.Shoemaker@tklaw.com
       Julie C. Abernethy
       State Bar No. 24056947
       Julie.Abernethy@tklaw.com
       1722 Routh Street, Suite 1500
       Dallas, Texas 75201
       (214) 969-1700
       (214) 969-1751 (fax)

ATTORNEYS FOR PLAINTIFF
JAMES KATCHADURIAN, LITIGATION TRUSTEE
NORTHSTAR LITIGATION TRUST

ATTORNEYS FOR DEFENDANTS
NGP ENERGY CAPITAL MANAGEMENT, LLC;
NGP X US HOLDINGS, LP; NGP NATURAL
RESOURCES X PARALLEL FUND, LP; NOG
ROYALTY HOLDINGS, LP; CHRISTOPHER RAY;
JESSE BOMER; TOMAS ACKERMAN; DAVID
ALBIN; AND DAVID HAYES

11

COZEN O'CONNOR


By:   /s/ Stephen B. Edmundson
    Stephen B. Edmundson
    State Bar No. 00796507
    sedmundson@cozen.com
    1221 McKinney Street, Suite 2900
    Houston, Texas 77010
    (832) 214-3930
    (713) 512-5334 (fax)

ATTORNEYS FOR DEFENDANTS
S. GLYNN ROBERTS; GAYLON FREEMAN;
MARK STEVENS; AND JAMES P. ULM, II

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system on June 15, 2018.

/s/ *David Bennett*
David Bennett