## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-34028 |
| | § | |
| NORTHSTAR OFFSHORE GROUP, LLC | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| JAMES KATCHADURIAN, Litigation Trustee, on behalf of Northstar Litigation Trust, | § | |
| | § | |
| | § | |
| | § | ADVERSARY NO. 18-03079 |
| Plaintiff, | § | |
| v. | § | |
| | § | Jury |
| NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; DAVID HAYES; S. GLYNN ROBERTS; GAYLON FREEMAN; MARK STEVENS; and JAMES P. ULM, II, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## NORTHSTAR DIRECTORS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

Defendants S. Glynn Roberts, Gaylon Freeman, Mark Stevens and James P. Ulm, II, (collectively, "Northstar Directors") file their Reply in support of their Motion to Dismiss Plaintiff's Original Complaint [Dkt. 23]. Northstar Directors ask that this Court dismiss with prejudice all claims asserted against them by James Katchadurian, Trustee of the Northstar Litigation Trust ("Plaintiff") in Plaintiff's Original Complaint [Dkt. 1] (the "Complaint").

# I.      Introduction

Plaintiff fails to address in his Response[1]—nor can he cure—at least the following fatal

defects that the Complaint contains:

1.    <u>Control</u>:    Plaintiff's legal conclusion that Northstar Directors "controlled" Northstar Offshore Group, L.L.C. ("Northstar") requires the impermissible factual leap that, merely because Northstar Directors held an unspecified *affiliation* with Defendants NGP Energy Capital Management, L.L.C., NGP X US Holdings L.P., NGP Natural Resources X, L.P., NGP X Parallel Holdings, L.P., NGP Natural Resources X Parallel Fund, L.P., and NOG Royalty Holdings, L.P. (collectively, "Entity Defendants"), Northstar Directors could not act independently of the Entity Defendants in decisions that Northstar Directors made as managers of Northstar.   Plaintiff's bald conclusion of control is a factual insufficiency under Rule 8 warranting dismissal of Plaintiff's fraudulent-transfer claims that rely on such an unjustified inference of "control."

2.    <u>Rule 9(b)</u>:  Plaintiff's allegations that Northstar Directors "caused" Northstar to make fraudulent transfers renders *Northstar Directors'* actual intent a necessary element of Plaintiff's actual fraudulent-transfer claims.   Plaintiff claims that Northstar Directors' actual fraudulent intent—via Northstar Directors' alleged "control" over Northstar—was Northstar's actual fraudulent intent.  Because he fails to plead Northstar Directors' actual intent with the particularity Rule 9(b) requires, Plaintiff fails to state claims for actual fraudulent transfer.

3.    <u>Rule 8(a)</u>:  Plaintiff's failure to distinguish Defendants' individual roles in the alleged fraudulent transfers violates Rule 8(a)'s prohibition against group pleading.  Plaintiff *admits* in his Response that he pleads his fraudulent-transfer claims using "groups." His fraudulent-transfer claims should be dismissed.

4.    <u>Standing under 11 U.S.C. § 544(b)</u>:  Plaintiff fails to plead the existence of a single unsecured creditor necessary to give him standing to assert fraudulent-transfer claims under 11 U.S.C. § 544(b).  Not one of the creditors that he improperly alleges for the first time in his Response existed at the time of the transfers that are the basis for his fraudulent-transfer claims.  So no creditor could have been defrauded by any of the alleged transfers.  Plaintiff lacks standing to assert claims under 11 U.S.C. § 544(b).

5.    <u>Benefit from transfers</u>:  Plaintiff admits that no Northstar Director was a transferee of the purchase price that Northstar paid to Propel Energy L.L.C. ("<u>Propel Energy</u>") for oil and gas assets in the Creole Field (the "<u>Creole Assets</u>"). He has no legal basis for recovery from Northstar Directors when he pleads no facts supporting his naked conclusion that Northstar Directors "benefitted" from

---

[1] Trustee's Consolidated Opposition to Defendants' Motion to Dismiss [Dkt. 39] (Plaintiff's "<u>Response</u>").

that purchase.  His fraudulent-transfer claims against Northstar Directors based on Northstar's payment to Propel Energy should be dismissed.

6.  <u>Transfer of NGP-NOG's capital commitment</u>:  Northstar's release of NGP-NOG's capital commitment is not subject to a fraudulent-transfer claim under the Texas Uniform Fraudulent Transfer Act ("<u>TUFTA</u>").  Public records show that Wells Fargo Bank held a valid lien on that capital commitment that fully encumbered it.  Because a debtor's property that is encumbered by a valid lien is not a "transfer" under TUFTA, Northstar's release of NGP-NOG's capital commitment cannot be legally actionable under TUFTA.

7.  <u>Discovery rule</u>:  Plaintiff's improper attempt to allege the discovery rule for the first time in his Response cannot save his fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).  The Complaint contains not a single fact supporting the discovery rule's application.  Nor can the discovery rule ever apply to defer the accrual of a claim under § 24.006(b).  The one-year statute of limitations bars Plaintiff's claim under § 24.006(b).

8.  <u>Insolvency</u>:  Plaintiff merely regurgitates his legal conclusion that Northstar was "insolvent" at the time of the transfers he alleges.  Plaintiff has access to Northstar's financial records, yet he pleads *no facts whatsoever* supporting his conclusion of "insolvency."  And his own allegations in the Complaint render any claim of insolvency facially implausible.  Plaintiff's claims for constructive fraudulent transfer should be dismissed.

9.  <u>Fiduciary duty of loyalty</u>:  Plaintiff's allegation—improperly raised for the first time in his Response—that Northstar Directors "were employed with NGP" is exactly the type of affiliation that Delaware law rejects as insufficient to rebut the business-judgment rule.  Plaintiff alleges no facts explaining how Northstar Directors appeared on both sides of any alleged transactions or received any personal financial benefit from them.  Nor is there a single fact explaining how Northstar Directors' alleged but unspecified "financial interests" in Entity Defendants sterilized Northstar Directors' discretion as Northstar managers.  Plaintiff's claims for breach of the fiduciary duty of loyalty should be dismissed.

10.  <u>Fiduciary duty of care</u>:  Plaintiff fails to plead even elements—much less facts— of a claim for breach of the duty of care.  The Complaint alleges breaches of the duty of loyalty only.  And there is no allegation *anywhere* that Northstar Directors acted with gross negligence—an essential element of a claim for breach of the duty of care—in the process by which they made decisions as Northstar managers.  Plaintiff fails to plead a cause of action for breach of the duty of care.

11.  <u>Breach of contract</u>:  Plaintiff has not alleged claims for breach of contract against Northstar Directors.

12. <u>Conspiracy</u>:  There is no cause of action for conspiracy to commit fraudulent transfers under Texas law.  And Northstar Directors cannot, as a matter of law, conspire with Entity Defendants to the extent that Plaintiff alleges Northstar Directors were officers or agents of those entities.  Plaintiff's bald conclusion of an "agreement" fails to plausibly allege elements of a conspiracy claim.  His conspiracy claim should be dismissed.

13. <u>Aiding and abetting</u>:  There is no cause of action for aiding and abetting fraudulent transfers.  Plaintiff mistakes the ability to recover from transferees under TUFTA with a cause of action under an aiding and abetting theory.  Plaintiff fails to state a claim for aiding and abetting.

Faced with the insurmountable hurdle of salvaging these legally and factually deficient claims, Plaintiff resorts to (1) creating new factual allegations not pleaded anywhere in the Complaint; (2) masquerading legal conclusions as factual allegations; and (3) hoping that discovery will uncover facts to support his unfounded legal conclusions.  Plaintiff cannot rely on new allegations that he did not plead in his Complaint.[2]  Plaintiff also rebrands the Complaint's conclusory allegations as factual allegations, claiming that this Court must accept them as true.[3]  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[4]  Legal conclusions must be accepted as true only when they are supported by factual allegations—which are exactly what the Complaint entirely omits.[5]  Nor can any reasonable inference result from Plaintiff's naked conclusions.  It is only "*factual*

---

[2] *Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2079514, at *1 (N.D. Tex. May 4, 2015) ("[T]hese specific allegations of fraud raised in Plaintiff's response to Defendant BDFTE's motion, and again in his objections, are not a part of his pleadings and therefore not properly before the court.").

[3] *See* Plaintiff's Response at 1, 16, 21.

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that the burden rests on the plaintiff to provide a complaint with "enough factual matter (taken as true) to suggest that [the plaintiff] is entitled to relief.").

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

Plaintiff claims that his pleading deficiencies are "fodder for discovery" and that discovery "will bear on these issues at the appropriate stage."[7]   But there is no "appropriate stage" for discovery on claims that violate Rule 8.[8]   Plaintiff's claims are implausible on their face—and thus violate Rule 8—because (1) the Complaint contains only conclusions absent factual allegations; and (2) the pleadings demonstrate that Plaintiff's claims are legally invalid. "Because [Plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."[9]

The legal and factual deficiencies inherent in Plaintiff's claims reflect their base absurdity.   The transactions in question predate Northstar's bankruptcy case by a number of years, and the latest of those transactions provided tens of millions of additional capital to Northstar.   In fact, Plaintiff has not alleged that a single creditor in existence at the time of the transactions was in existence as of the petition date of Northstar's bankruptcy.   And Plaintiff now apparently has abandoned his allegations in the Complaint that Northstar Directors knew or should have known that Lafitte Energy's parent company, Platinum Partners, was a "Ponzi scheme"[10]—a fraud that was only uncovered in 2016.[11]   Plaintiff acknowledges that, in connection with the September 22, 2014 sale of Northstar to Lafitte Energy, Northstar paid off

---

[6] *Ashcroft*, 556 U.S. at 678 (emphasis added).  *See also R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not accept conclusory allegations, unwarranted deductions, or legal conclusions.").

[7] Plaintiff's Response at 16, 29.

[8] *See Ashcroft*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[9] *Id.* at 686.

[10] *See* the Complaint ¶ 50.

[11] *See* Complaint filed in Cause No. 16-cv-6848; in the United States District Court for the Eastern District of New York, Exhibit A to Northstar Directors' Motion to Dismiss.

its existing bank debt.[12]   Plaintiff further acknowledges that NGP-NOG contracted with Northstar to fund at the closing of the sale—and did in fact fund—a contractually agreed-upon amount sufficient to pay off Northstar's major bank creditor in full and to provide additional working capital for Northstar.[13]   It was Platinum Partners that apparently chose not to use the funds NGP-NOG provided at closing to pay Northstar's debts.   It was Platinum Partners that chose to unwind Northstar's hedge agreement.[14]   If any of Northstar's creditors were later defrauded, it was Platinum Partners that defrauded them.   Thus, the only plausible explanation for Northstar's bankruptcy is that, in the midst of the global crash in commodity prices, unbeknownst to everyone and this Court, Platinum Partners' actions subsequent to the 2014 transaction resulted in the circumstances which precipitated Northstar's filing of a Chapter 11 bankruptcy case.   There is no legal theory that would make Northstar Directors liable for a bankruptcy that happened *two years after* Northstar was provided with tens of millions of dollars in additional working capital, leaving it in a financial position as to which no facts are alleged— nor could they be alleged—to support a claim of insolvency.   Plaintiff's claims against Northstar Directors should be dismissed because Plaintiff fails to state plausible claims against them.

## II.      Argument and Authorities

**A.      Plaintiff fails to state a claim for fraudulent transfer against Northstar Directors.**

**1.      Plaintiff's conclusion that Northstar Directors caused Northstar to make fraudulent transfers is implausible without factual allegations demonstrating that Northstar Directors controlled Northstar.**

Although they are referred to as "Northstar Directors", Defendants S. Glynn Roberts, Gaylon Freeman, Mark Stevens and James P. Ulm, II wish to remind the Court that they

---

[12] The Complaint ¶¶ 41, 51, 53-54.

[13] The Complaint ¶¶ 51, 53.

[14] *See* the Complaint ¶ 56 (alleging that, *after* the sale of Northstar to Lafitte Energy, "Northstar agreed with BP to unwind its hedge agreement prematurely at a significant loss.").

constituted a minority of the board member in question and, ask that the Court not think that by use of the definition that they constituted the entire board of Northstar, or even a majority of the board.

Plaintiff ignores the premise underlying his fraudulent-transfer claims against Northstar Directors when claiming that Northstar Directors' conduct is not an element of a fraudulent-transfer claim.[15]   The underlying premise of Plaintiff's fraudulent-transfer claims is that Northstar Directors used their "control" over Northstar to "cause" Northstar to make fraudulent transfers.[16]   But absent factual allegations showing that Northstar Directors *could cause* Northstar to make fraudulent transfers, such a premise that Northstar Directors "caused" Northstar to make fraudulent transfers is implausible on its face.

Plaintiff mistakes a factual insufficiency for a legal insufficiency when arguing that only Northstar's conduct is an element of a fraudulent-transfer claim under TUFTA and 11 U.S.C. § 548.   Plaintiff's failure to plead *facts* that would allow a reasonable inference of control is a factual insufficiency under Rule 8.[17]   Plaintiff makes plausibly alleging Northstar Directors' control over Northstar relevant—and necessary to pleading plausible fraudulent-transfer claims—by claiming that Northstar Directors "caused" Northstar to make the fraudulent transfers he alleges.[18]

Northstar Directors could only "cause" Northstar to make fraudulent transfers if Northstar Directors "controlled" Northstar.   But Plaintiff pleads nothing more than bald allegations of control.   He pleads that Northstar Directors had an unspecified *affiliation* with

---

[15] Plaintiff's Response at 12.

[16] The Complaint ¶¶ 38-39, 45, 61, 67.

[17] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[18] *See* The Complaint ¶¶ 38-39, 45, 61, 67.

Entity Defendants—that Northstar Directors were "NGP-related directors"[19]—but pleads no facts indicating *how* that affiliation influenced Northstar Directors.[20]  For example, there are no allegations regarding what financial interest, if any, Northstar Directors held in Entity Defendants, whether Entity Defendants had any influence over compensation that Northstar Directors received for serving as managers of Northstar, whether Entity Defendants owned any of Northstar's clients or customers, or whether Northstar Directors received any extraordinary compensation from Entity Defendants for serving as Northstar managers.[21]  There are simply no "particularized facts" necessary to allow any reasonable inference that Northstar Directors "controlled" Northstar.[22]

And despite Plaintiff's incorrect attempt to limit Delaware law, the allegation that some of the Entity Defendants were investors in Northstar does not make Plaintiff's conclusory allegations regarding control plausible.  "It is well-settled Delaware law that a director's independence is not compromised simply by virtue of being nominated to a board by an

---

[19] The Complaint ¶ 3.

[20] *See Official Committee of Unsecured Creditors v. Meltzer*, 1:17-CV-256-NT, 2018 WL 212 3558, at *6 (D. Me. May 8, 2018) ("Allegations that a director has a relationship with a third party do not suffice absent some indication of how that affiliation influenced the director's decision-making.") (applying Delaware law).

[21] *See, e.g., Friedman v. Beningson*, No. 12232, 1995 WL 716762, at *5-*6 (Del. Ch. Dec. 4, 1995) (holding that plaintiff pleaded facts indicating a "reasonable doubt" sufficient to excuse demand in shareholder derivative suit alleging that one director dominated board where the plaintiff pleaded that the director held 36% percent of company's stock; served as company's Chairman, CEO, and President; determined the amount of consulting fees another director received; served as general partner of and owned 25% of the company's principal customer; received "very large interest-free loans" from the company that "approximate[d] 50% of [the company's] total revenues" for that year; and settled a federal class action lawsuit in which he was a named defendant using only company funds and no personal contribution); *In re MAXXAM, Inc.*, 659 A.2d 760, 774 (Del. Ch. 1995) (lack of independence found on five-member special committee where plaintiff pleaded that owner of controlling shareholder of company—who also served as chairman of the board and CEO of company—compensated one director—who had just emerged from a personal bankruptcy—through annual lucrative consulting contract; another director received annual income and multi-million-dollar bonus as chairman of a different company owned by owner of controlling shareholder; and third director received lucrative consulting fees).

[22] *See Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002) (Under Delaware law, a plaintiff asserting the "control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'").

interested stockholder."[23]   Plaintiff stresses that *one* Delaware case applying this "well-settled Delaware law"—*In re KKR Financial Holdings LLC Shareholder Litig.*—involved a nominating stockholder who owned only a small amount of stock.[24]   But *KKR* never held—nor did it imply—that a director's independence was contingent on the amount of stock the nominating stockholder owned.   In fact, *KKR* cited to multiple cases finding that a director does not lack independence merely because a stockholder—even a controlling stockholder—nominated him.[25]

Absent the "particularized facts" necessary to plausibly allege Northstar Directors' "control" over Northstar's board, Plaintiff's fraudulent-transfer claims dependent on that theory fail to state a claim.[26]

**2.    Rule 9(b) applies to Plaintiff's actual fraudulent-transfer claims because Plaintiff seeks to impute Northstar Directors' intent to Northstar.**

Plaintiff's contention that only Northstar's intent is relevant to his actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A) ignores the premise underlying those claims.[27]   Plaintiff alleges that *Northstar Directors' intent is Northstar's intent* by claiming that "NGP," the "NGP Directors," and "Defendants" "caused"

---

[23] *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996 (Del. Ch. 2014), *aff'd sub nom*, *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (citing cases).

[24] Plaintiff's Response at 13.  *See KKR*, 101 A.3d at 983.

[25] *See KKR*, 101 A.3d at 996 (citing *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) (finding that directors who were "personally selected" by a 47% stockholder did not lack independence); *Frank v. Elgamal*, 2014 WL 957550, at *22 (Del. Ch. Mar. 10, 2014) ("Merely because a director is nominated and elected by a large or controlling stockholder does not mean that he is necessarily beholden to his initial sponsor."); *Blaustein v. Lord Baltimore Capital Corp.*, 2013 WL 1810956, at *18 n.114 (Del. Ch. Apr. 30, 2013) (stating that allegations that a director was appointed to the board by and has consistently voted with alleged controller are insufficient to challenge the director's independence), *aff'd*, 84 A.3d 954 (Del. 2014); *Western Nat. Corp. S'holders Litig.*, 2000 WL 710192, at *15 (Del. Ch. May 22, 2000) ("As a preliminary matter, I note that even if American General nominated some of the outside directors ... such nomination, without more, does not mandate a finding that these directors were beholden to American General....")).

[26] *See Orman*, 794 A.2d at 22 (Under Delaware law, a plaintiff asserting the "control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'"); *Miramar Firefighters Pension Fund v. AboveNet, Inc.*, C.A. 7376-VCN, 2013 WL 4033905, at *3 (Del. Ch. July 31, 2013) (allegations that directors "succumbed" to a party's desire or "acquiesced in" that party's plan are "insufficient to raise a reasonable inference that [the directors] were beholden to, or controlled by, [that party]").

[27] *See* Plaintiff's Response at 17-18.

Northstar to make the alleged fraudulent transfers.[28]  Because of that underlying factual premise

seeking to impute Northstar Directors' intent to Northstar, *Northstar Directors'* alleged "actual

intent to hinder, delay, or defraud any creditor"—which Plaintiff claims was Northstar's alleged

intent—is an element of Plaintiff's actual fraudulent-transfer claims.[29]

In each of the cases Plaintiff cites where a court declined to apply Rule 9(b), the intent of

the defendant transferees was irrelevant to the fraudulent-transfer claim at issue because the

plaintiff in those cases alleged that the defendant transferees were merely passive recipients of

fraudulently transferred funds.[30]  There was no allegation that the defendant transferees "caused"

the debtor to make the transfers at issue.   Here, however, Plaintiff *asserts that the actual*

*fraudulent intent of Northstar Directors is the actual fraudulent intent of the debtor, Northstar*.[31]

So, under Plaintiff's actual fraudulent-transfer claims *as he has alleged them*, Plaintiff can only

plausibly allege Northstar's "actual intent to hinder, delay, or defraud any creditor" by plausibly

alleging Northstar Directors "actual intent to hinder, delay, or defraud any creditor" of

---

[28] The Complaint ¶ 38 ("In 2012, using its control over Northstar, *NGP* caused the Board to overpay for NGP assets for *NGP's* benefit…. Padding its profits from the sale of this field would give *NGP* both immediate accounting benefits and a reputational boost in raising funds.") (emphasis added); ¶ 40 ("The *NGP Directors* benefitted personally by this self-dealing….") (emphasis added); ¶ 61 ("*Defendants* used their control of Northstar to transfer those funds out of Northstar for the benefit of *Defendants*.") (emphasis added); ¶ 68 ("Northstar's release of the funding obligations of *NGP* and individual directors was intended to hinder, delay, or defraud Northstar's creditors and avoid *NGP* being tainted with a Northstar bankruptcy.") (emphasis added).

[29] *See In re Life Partners Holdings, Inc.*, No. 15-40289-RFN11, 2017 WL 5599485, at *5 (N.D. Tex. Nov. 17, 2017) (acknowledging that actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A) require that Plaintiff plead facts showing that a debtor transferred assets "with actual intent to hinder, delay, or defraud any of the debtor's creditors.").

[30] *Taylor v. Cmty. Bankers Sec.*, LLC, CIV.A. H-12-02088, 2013 WL 3166336, at *7 (S.D. Tex. June 20, 2013) ("Notably, the receiver has not alleged that any of the defendants in this action committed fraudulent acts, only that they received proceeds gained by fraud."); *Fawaz v. Byers*, CIV.A. H-13-0897, 2014 WL 1671746, at *5 (S.D. Tex. Apr. 28, 2014) (plaintiff alleged fraudulent intent of *debtors* in inducing the transfer of funds received by defendant transferee); *AAB Logistics, Inc. v. Forward Air, Inc.*, 3:15-CV-3840-G, 2016 WL 8672773, at *10 (N.D. Tex. Nov. 18, 2016) ("In a fraud claim, the plaintiff must show that the defendant had both 'knowledge' of the fraud and an 'intention to induce reliance.' In contrast, in a fraudulent transfer claim, the defendant's intent or conduct is irrelevant."); *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *10 (N.D. Tex. 2009) ("Plaintiffs have merely alleged that Moving Defendants were the recipient of funds fraudulently obtained. Nothing in the complaint or record indicates that Moving Defendants committed any fraudulent act that caused the funds to be transferred."); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 676 (N.D. Tex. 2011) (same).

[31] *See* the Complaint ¶¶ 38, 40, 61, 68.

Northstar.[32]  Courts in the Fifth Circuit have held that, when it is necessary to establish the actual intent of the debtor, as is the case with Plaintiff's actual fraudulent-transfer claims, Rule 9(b) should apply.[33]

In an attempt to allege Northstar's fraudulent intent, Plaintiff now claims, in conclusory fashion and improperly for the first time in his Response, that Northstar made fraudulent transfers to "insiders."[34]  But Plaintiff never pleaded this "badge of fraud"[35] in the Complaint. Rather, the only "badges of fraud" that Plaintiff pleaded—that the consideration was not reasonably equivalent to the value of the asset transferred and that Northstar was insolvent—are not sufficient to allege actual intent to hinder, delay, or defraud creditors because those are elements of a constructive fraudulent-transfer claim.[36]  And in any event, Plaintiff fails to state

---

[32] *See In re Life Partners*, 2017 WL 5599485, at *5.

[33] *Id.* at *7 (N.D. Tex. Nov. 17, 2017) ("With regard to the applicability of the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure to Counts 1 and 3, the court disagrees with the bankruptcy judge. Clearly, counts that involve claims of actual fraud, such as Counts 1 and 3, invoke the heightened pleading requirements of Rule 9(b)."); *Vision Bank v. Jordan*, 3:11-CV-2065-B, 2012 WL 716097, at *3 (N.D. Tex. Mar. 5, 2012) (citing cases) ("Although the Fifth Circuit has not definitively held that fraudulent transfer claims fall within the purview of Rule 9(b), this Court has noted that where plaintiffs seek to establish the actual intent of the debtor, the enhanced pleading requirements of Rule 9(b) should apply."); *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015) (following other courts in applying Rule 9(b) to actual fraudulent-transfer claims under 11 U.S.C. § 548(a)(1)(A)).

[34] Plaintiff's Response at 18.

[35] *See* Tex. Bus. & Com. Code Ann. § 24.005(b) (West 2017) (providing that, "[i]n determining actual intent…, consideration may be given, among other factors, to whether: (1) transfer or obligation was to an insider; (2) debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation incurred, the debtor had been sued or threatened with a suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor"); *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005) (badges of fraud under 11 U.S.C. § 548 are (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control, or dominion by the debtor; and (6) secrecy or concealment of the transaction).

[36] *See In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 171 (S.D. Tex. 2016) (dismissing claim for actual fraudulent transfer under Texas Uniform Fraudulent Transfer Act and 11 U.S.C. § 548 because the only badges of fraud that the plaintiff pleaded with particularity were insolvency and lack of reasonably equivalent value, and the plaintiff therefore failed to state a claim for actual fraudulent transfer rather than constructive fraudulent transfer).

actual fraudulent-transfer claims because he fails to plead Northstar Directors' actual intent—which he claims to be Northstar's actual intent—with the particularity that Rule 9(b) requires.[37]

### 3.    Plaintiff violates Rule 8(a)'s prohibition against group pleading.

Even if Rule 9(b) did not apply to Plaintiff's actual fraudulent-transfer claims (which it does), Plaintiff's actual and constructive fraudulent-transfer claims violate Rule 8(a). "[A]ny reference by a plaintiff to defendants collectively in a complaint fails to satisfy the pleading standards of Rule 8(a)."[38]   Plaintiff admits that he "uses three *groups* [of Defendants] for convenience" and that, "[f]or the specific transactions at issue, each *group* is addressed separately as to their roles in the events and benefits derived."[39]   This contention is false.   The Complaint repeatedly alleges that "Defendants"—defined as all Defendants in this action—caused Northstar to make the alleged fraudulent transfers:

- "*Defendants* used their control of Northstar to transfer those funds out of Northstar for the benefit of *Defendants*."[40]

- "*Defendants* also hindered Northstar's creditors by securing releases of capital contributions committed to Northstar…."[41]

- "*Defendants* signed an agreement for Northstar to release Defendants from their obligations to provide more than $75 million in capital to the desperate company. *Defendants* caused Northstar to sign the release of these valuable capital obligations…."[42]

---

[37] *See* Northstar Directors' Motion to Dismiss at 16-19.

[38] *In re Life Partners Holdings, Inc.*, 2017 WL 5599485, at *3 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).  *See also Gurganus v. Furniss*, 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) ("In addition to being conclusory and formulaic, this type of group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8."); *Del Castillo v. PMI Holdings N. Am. Inc.*, 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct.").

[39] Plaintiff's Response at 19 (emphasis added).

[40] The Complaint ¶ 61 (emphasis added).

[41] The Complaint ¶ 61 (emphasis added).

[42] The Complaint ¶ 67 (emphasis added).

Regardless, however, sub-grouping Defendants violates Rule 8(a) because, by definition, sub-grouping fails to distinguish Defendants' *individual* roles in the alleged fraudulent transfers.[43]   Plaintiff claims that, [w]hen the conduct of specific Defendants is relevant, the Complaint names them individually."[44]   But the only citations to these alleged individual references are to causes of action *other than Plaintiff's fraudulent-transfer claims*.[45]   Plaintiff's fraudulent-transfer claims violate Rule 8(a)'s proscription against group pleading.   They should be dismissed.

### 4. Plaintiff lacks standing to assert fraudulent-transfer claims under 11 U.S.C. § 544(b).

Plaintiff claims standing to assert his TUFTA claims in Count 1 of the Complaint under 11 U.S.C. § 544(b).   But Plaintiff's standing to avoid a fraudulent transfer under § 544(b) is "derivative of an actual unsecured creditor's rights."[46]   Thus, to have standing to assert a claim under § 544(b)—a threshold issue—Plaintiff must first establish the existence of an actual creditor holding an allowable unsecured claim who could have avoided the alleged transfer under state law.[47]   "[T]he cases make clear that the facts must be pleaded sufficient to identify at least

---

[43] *See Freuler v. Parker*, CIV.A. H-10-3148, 2012 WL 896414, at *2 (S.D. Tex. Mar. 14, 2012) ("Moreover Plaintiff continues to fail to distinguish Defendants' individual roles with respect to all the claims and continues to indulge in prohibited group pleading, alleging identical facts against each."), *aff'd*, 517 F. App'x 227 (5th Cir. 2013).

[44] Plaintiff's Response at 19.

[45] *See* Plaintiff's Response at 19 (citing to allegations regarding Plaintiff's claims for breach of fiduciary duty and breach of contract).

[46] *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 479 B.R. 405, 410 (N.D. Tex. 2012).

[47] *In re Tryit Enterprises*, 121 B.R. 217, 222 (Bankr. S.D. Tex. 1990) (Chapter 11 debtors, which sought to avoid alleged transfers as fraudulent conveyances under Texas law, failed to allege that they had standing to pursue cause of action under 11 U.S.C. §544 permitting debtor to avoid transfer that is voidable under applicable law by unsecured creditor because they did not allege or present any evidence at trial that there existed a creditor who could have brought action and to whose status debtors could succeed.); *In re Panama Williams, Inc.,* 211 B.R. 868, 872 (Bankr. S.D. Tex. 1997) (Chapter 11 debtor-corporation could not avoid liens placed on its property by lender, under TUFTA, applicable by 11 U.S.C. §544, because debtor failed to prove by preponderance of evidence that any unsecured creditor held unsecured claim against debtor on dates on which transfers occurred.).

the class or categories of creditors that could assert a [§ 544] fraudulent transfer claim."[48] Therefore, where, as here, a plaintiff fails to identify at least one unsecured creditor that could assert a fraudulent transfer claim in its complaint, dismissal is required.[49]

On the face of the Complaint, Plaintiff has not only failed to plead a *single fact* to reflect that a "triggering" unsecured creditor exists to permit an action under § 544, but he also has failed to even *allege* the existence of a triggering unsecured creditor.   Apparently recognizing this pleading defect, Plaintiff now alleges—improperly for the first time in his Response—that "there are numerous creditors holding an allowable unsecured claim who could avoid the transfers in question, as reflected on the Claims Register in this case."[50]   He cites to certain alleged unsecured creditors as apparent "examples" of triggering creditors.[51]   But Plaintiff's attempt to now establish the existence of a triggering creditor only emphasizes the fatality of that omission in the Complaint.

Notably, *Lange v. Regions Bank (In re Westbury Community Hospital LLC)*,[52] the one case Plaintiff cites, did not address the issue here: Plaintiff's failure to allege the existence of a triggering creditor for purposes of establishing standing under 11 U.S.C. § 544(b).   Instead, in *In re Westbury Community Hospital LLC*, this Court held that creditors did not have standing to

---

[48] *Jacobs v. American Safe Retirements, LLC (In re Life Partners Holdings, Inc.)*, Case No. 15-04110, 2017 WL 5591632 at *6 (N.D. Tex. Nov. 17, 2017). *Accord, In re Petters Co*., 550 B.R. 438, 444 (Bankr. D. Minn. 2016) ("[T]o meet the plausibility standard for fact-pleading under current Supreme Court precedent, a trustee must identify in his complaint, by name, one or more such predicate creditors.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[49] *See e.g.*, *Jacobs*, 2017 WL 5591632 at *6 (dismissing § 544 fraudulent transfer counts where complaint failed "sufficient[ly] to identify at least the class or categories of creditors that could assert a fraudulent transfer claim"); *Jacobs v. 72 Vest Level Three LLC (In re Life Partners Holdings, Inc.)*, Case No. 15-40289, 2017 WL 5599485 at *6 (N.D. Tex. Nov. 17, 2017) (dismissing fraudulent transfer counts where "plaintiffs simply [made] the conclusory statement that 'Life Partners' creditors, or the Investors, could have brought the state law fraudulent transfer claims now asserted'"). *Accord, In re Petters Co*., 550 B.R. at 444 (dismissing complaint where Chapter 11 trustee failed to plead existence of predicate unsecured creditor under § 544).

[50] Plaintiff's Response at 23.

[51] Plaintiff's Response at 23 n.8.

[52] Adv. Pro. No. 12-03476, 2013 WL 6054798, at *2 (Bankr. S.D. Tex. Nov. 15, 2013).

pursue fraudulent-transfer actions because the claims were part of the debtor's estate and, therefore, the chapter 11 trustee was the proper party to assert such claims.[53]   While § 544 *permits* a trustee to assert a fraudulent-transfer action under state law, nothing in the Bankruptcy Code negates a trustee's burden to sufficiently plead its cause of action, including the assertion and supporting facts to establish the existence of a triggering unsecured creditor under § 544(b), and thus proper standing to actually assert the claim.[54]   Accordingly, Plaintiff's untimely attempt to now plead the existence of triggering creditors is fatal to his TUFTA claims asserted under § 544(b) and they must be dismissed.[55]

> **5.    Plaintiff cannot recover from Northstar Directors for the purchase price paid to Propel Energy for the Creole Assets absent factual allegations demonstrating that Northstar Directors received a direct and quantifiable benefit.**

Plaintiff concedes that Northstar Directors were not transferees of Northstar's payment of the purchase price for the Creole Assets to Propel Energy.[56]   Therefore, TUFTA and the Bankruptcy Code would allow recovery from Northstar Directors for the purchase price paid to Propel Energy *only* if Northstar paid the purchase price to Propel Energy for the benefit of Northstar Directors.[57]   To plausibly allege—as Rule 8 requires—that the payment of the

---

[53] *Id.*

[54] *See Jacobs,* 2017 WL 5591632 at *6 (dismissing § 544 fraudulent transfer counts where litigation trustee's complaint failed "sufficient[ly] to identify at least the class or categories of creditors that could assert a fraudulent transfer claim"); *72 Vest Level Three LLC,* 2017 WL 5599485 at *6 (same); *In re Petters Co.,* 550 B.R. at 444 (dismissing complaint where Chapter 11 trustee failed to plead existence of predicate unsecured creditor under § 544); *In re Coors of North Mississippi, Inc.,* 66 B.R. 845, 859 (Bankr. N.D. Miss. 1986) ("[T]he proposition that the debtor in possession can resort to § 544(b) without the benefit of the 'triggering unsecured creditor' is simply erroneous.").

[55] Notably, even if this Court were to consider the alleged triggering creditors listed in the Plaintiff's Response – which it should not – Plaintiff still fails to allege that any such creditor's unsecured claim existed as of September 2012 or September 2014, the dates of the alleged fraudulent transfers.  And, in any event, a review of the cited creditors' corresponding proof of claims reflects that *none* of the claims existed as of the dates of the alleged fraudulent transfers.

[56] Plaintiff's Response at 14.

[57] *See* TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009 (West 2017) (allowing recovery for fraudulent transfers against a transferee or the person for whose benefit the transfer was made); 11 U.S.C. § 550(a)(1)-(2) (allowing

purchase price to Propel Energy was made for the benefit of Northstar Directors, Plaintiff must allege *facts* explaining how or why that purchase was made for Northstar Directors' benefit.[58] Plaintiff wholly fails to do so.

In the Complaint, Plaintiff alleges *no facts whatsoever* supporting his conclusory allegations that Northstar Directors "benefitted personally" from the purchase of the Creole Assets or that the purchase was made "for [Entity Defendants'] benefit."[59]    Plaintiff now improperly alleges for the first time in his Response that Propel Energy "is an investment owned and controlled by [Entity Defendants], as documented in SEC filings."[60]    But this new allegation—which is nothing more than a legal conclusion—cannot satisfy Plaintiff's burden under Rule 8 to plead supporting *facts*.[61]

And regardless, at most, Plaintiff's new conclusory allegation implies only that Entity Defendants "benefitted" in some incidental, unquantifiable manner because money was paid to one of their investments.    The connection is even more remote and tenuous between any "benefit" that Plaintiff implies Northstar Directors received from the money paid to Propel Energy.    Plaintiff alleges—again in conclusory fashion and without any supporting facts—that Northstar Directors "had financial interests in [Entity Defendants]."[62]    Thus, at most, Plaintiff implies only that Northstar Directors "benefitted" from money paid to an investment belonging to entities in which Northstar Directors held unspecified "financial interests."

---

recovery for a transfer avoided under 11 U.S.C. § 544(b) only from a transferee or the entity for whose benefit the transfer was made).

[58] *See Clapper v. Am Realty Inv'rs, Inc.*, 3:14-CV-2970-D, 2016 WL 302313, at *12-13 (N.D. Tex. Jan. 25, 2016) (dismissing claim under TUFTA against defendants who were not transferees of assets fraudulently transferred when there were no facts explaining how the alleged fraudulent transfers resulted in any benefit to any defendant).

[59] *See* the Complaint ¶¶ 38, 40.

[60] Plaintiff's Response at 14.

[61] *See Clapper*, 2016 WL 302313, at *12-13.

[62] The Complaint ¶ 4.

Even assuming these conclusory allegations of "benefits" are true—which this Court is not bound to do—these alleged benefits are not the kind of "tangible or quantifiable benefit[s]" needed to support recovery against Northstar Directors.[63]  Nor do they bear "the necessary correspondence to the value of the property" Plaintiff alleges was transferred to Propel Energy.[64] Because Plaintiff concedes that Northstar Directors were not transferees of the purchase price paid to Propel Energy and fails to plead facts alleging any direct or quantifiable resulting "benefit" to Northstar Directors, Plaintiff has failed to plausibly allege any legal basis that would allow him to recover from Northstar Directors.  Plaintiff's fraudulent-transfer claims based on Northstar's payment to Propel Energy should be dismissed.

**6.      NGP-NOG's capital commitment was not an asset subject to transfer under TUFTA because it was fully encumbered by a valid lien.**

Plaintiff's fraudulent-transfer claims in Count 1 of the Complaint based on the release of NGP-NOG's capital commitment are implausible on their face because public records— documents of which this Court may take judicial notice—show that the release of NGP-NOG's capital commitment was not a "transfer" under TUFTA.[65]   So contrary to Plaintiff's recycled

---

[63]  *See In re Int'l Mgmt. Assoc.*, 399 F.3d 1288, 1292-93 (11th Cir. 2005) (Whatever benefit one shareholder obtained when, in order to satisfy condition placed by lender on extension of credit to bankrupt corporation, corporation repurchased its allegedly worthless stock from its other shareholder for sum of $100,000 and thereby enabled this first shareholder to gain sole control over corporation's assets, as reduced by its $100,000 payment to second shareholder, was not the kind of quantifiable benefit needed to support recovery against first shareholder, following avoidance of this stock repurchase transaction as fraudulent transfer, on theory that first shareholder was "entity for whose benefit" the fraudulent transfer was made).  *See also id.* at 1292 ("The paradigm case of a benefit under § 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor."); *In re Finley, Kumble, et al.,* 130 F.3d 52, 57 (2d Cir.1997) (stating that the phrase "entity for whose benefit such transfer was made" usually "references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds").

[64]  *See, e.g., Mack v. Newton,* 737 F.2d 1343, 1359-60 (5th Cir. 1984) (rejecting as too broad the trustee's allegation that the principals in a partnership had received an incidental benefit from auctioning off cattle and using the proceeds to operate their dairy enterprise, deeming this "an incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received.").

[65]  *See* Northstar Directors' Motion to Dismiss at 13-14; Exhibits E-F to Northstar Directors' Motion to Dismiss.  As explained in Northstar Directors' Motion to Dismiss and Northstar Directors' Response to Plaintiff's Motion to Strike, this Court may take judicial notice of Exhibits E-F because they are public records.

objection that this legal defect is not a "pleading deficiency,"[66] the facial implausibility of those fraudulent-transfer claims renders them deficient under Rule 8 and warrants their dismissal.

Plaintiff questions how Northstar could have released capital commitments "[i]f Northstar had no right to the commitments because they were 'fully encumbered by a valid lien.'"[67]  This assertion wrongly assumes that, under TUFTA, property encumbered by a valid lien is not property belonging to the debtor.  But TUFTA simply limits *what property belonging to a debtor* is subject to a fraudulent-transfer claim.  It does not define or determine what property a debtor owns.  TUFTA provides that only "assets" can be transferred.[68]  TUFTA defines an "asset" as "property of a debtor," but explains that "the term does not include…property to the extent it is encumbered by a valid lien."[69]  So the term "asset"—the only property that is subject to a "transfer" under TUFTA—does not include property of the debtor that is encumbered by a valid lien.  Nothing in this definition provides or implies that a debtor such as Northstar does not own property such as a capital commitment that is encumbered by a valid lien.   In fact, such a definition would be nonsensical because a lender such as Wells Fargo could not create a lien on property that Northstar did not own.

Plaintiff further claims that the UCC financing statement that Wells Fargo filed with the Delaware Secretary of State on November 8, 2013 does not show that Northstar's capital commitments were "fully" encumbered by Wells Fargo's lien.[70]  But on its face, the financing statement covers "all assets of the Debtor [identified as Northstar], whether now existing or

---

[66] Plaintiff's Response at 16.

[67] Plaintiff's Response at 16.

[68] TEX. BUS. & COM. CODE ANN. § 24.002(12) (West 2017) (A "transfer" "means every mode,…of disposing of or parting with an *asset or an interest in an asset*….") (emphasis added).

[69] TEX. BUS. & COM. CODE ANN. § 24.002(2)(A) (West 2017).

[70] Plaintiff's Response at 17.

hereafter arising."[71]  The termination of Wells Fargo's security interest was not filed until April 1, 2015.[72]  Therefore, as of September 22, 2014—the effective date of Northstar's release of NGP-NOG's capital commitment—Wells Fargo held a valid lien that fully encumbered the capital commitment.  For that reason, Northstar's release of NGP-NOG's capital commitment was not a "transfer" under TUFTA.[73]  Absent any "transfer" under TUFTA, Plaintiff's claims under TUFTA based on that release are not plausible claims for relief and should be dismissed.

### 7.    The discovery rule cannot save Plaintiff's fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).

The discovery rule cannot defer the accrual of the one-year statute of limitations barring Plaintiff's constructive fraudulent-transfer claim under Tex. Bus. & Com. Code § 24.006(b).  As an initial matter, Plaintiff cannot rely on the discovery rule because he never pleaded it—or a *single fact* that would support it—in the Complaint.[74]

But more importantly, the discovery rule cannot, as a matter of law, apply to defer the accrual of the statute of limitations for claims under § 24.006(b).  Section 24.010, which provides limitation periods for TUFTA claims, is a statute of repose rather than a statute of limitations.[75]  While statutes of limitation bar enforcement of a right, a statute of repose

---

[71] *See* Exhibit E to Northstar Directors' Motion to Dismiss.

[72] *See* Exhibit F to Northstar Directors' Motion to Dismiss.

[73] *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 414-16 (5th Cir. 2009) (holding that, because sale proceeds were encumbered by a valid lien, the payment of the sale proceeds was not a transfer under TUFTA and vacating the district court's judgment on the plaintiff's fraudulent transfer claim).

[74] *See Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 640 (S.D. Tex. 2007) ("Under Federal Rule of Civil Procedure 8 Plaintiffs' simple allegation of their "discovery of the scheme to defraud" is insufficient, especially as there is no suggestion that Plaintiffs were unaware of their injuries at the time, or very soon after, they were suffered."); *Resolution Tr. Corp. v. Boyar, Norton & Blair*, 796 F. Supp. 1010, 1014 (S.D. Tex. 1992) ("Since the RTC failed to plead facts showing that it could not have discovered, in the exercise of reasonable care and diligence, the facts establishing the elements of this cause of action, the discovery rule is not a proper defense to a limitations bar.");

[75] *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).

extinguishes the right altogether.[76]  Because it is impossible to defer the accrual of a right that

has been extinguished, the discovery rule cannot apply to a statute of repose such as § 24.010.[77]

Section 24.010(a)(1) does, however, expressly preserve a limited one-year discovery rule

*only* for actual fraudulent-transfer claims under § 24.005(a)(1).[78]  Courts uniformly hold that this

limited discovery rule does not apply to any fraudulent-transfer claims except claims under §

24.005(a)(1).[79]  Consistent with this black-letter law, each of the cases Plaintiff cites addresses

the discovery rule solely with regard to claims under § 24.005(a)(1).[80]  Plaintiff cites no case—

nor can he—applying the discovery rule to claims under § 24.006(b).  Because the discovery rule

cannot preserve Plaintiff's claim under § 24.006(b), that claim is barred and should be dismissed.

### 8.    Plaintiff pleads only conclusions devoid of facts regarding Northstar's insolvency at the time of each alleged transfer.

---

[76] *Vega v. United States*, 512 F. Supp. 2d 853, 860 (W.D. Tex. 2007).

[77] *See id.*

[78] TEX. BUS. & COM. CODE ANN. § 24.010(a)(1) (West 2017) (providing that claims "under Section 24.005(a)(1)" are "extinguished" unless brought within four years or "if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]").

[79] *Janvey v. Suarez*, 978 F. Supp. 2d 685, 705 (N.D. Tex. 2013) ("Section 24.010(a)(2) of TUFTA expressly references constructive fraud claims brought under section 24.006(a), and states that such an action is extinguished unless it is brought "within four years after the transfer was made or the obligation was incurred." Unlike the preceding subsection (a)(1), which only references actual intent fraud claims brought under section 24.005(a)(1), section 24.010(a)(2) does not include a one-year discovery rule…. It is therefore apparent that Plaintiffs' pleading of facts to invoke the discovery rule has no application to their constructive fraud claim under TUFTA's statute of limitations."); *Walker v. Anderson*, 232 S.W.3d 899, 909–10 (Tex. App.—Dallas 2007, no pet.) ("Although similar to subsection 24.010(a)(1), subsections 24.010(a)(2) and (3) do not prevent claims from being extinguished when they are brought within one year after the transfer or obligation was or could reasonably have been discovered. That last provision in section 24.010(a)(1), which states "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant," is unique to section 24.005(a)(1)."); *Ching Enterprises, Inc. v. Barahona*, No. 14-14-00171-CV, 2016 WL 4706074, at *4 (Tex. App.—Houston [14th Dist.] Sept. 8, 2016, pet. denied) ("The TUFTA statute of repose provides that a cause of action brought under either section 24.005(a)(2) or section 24.006(a) is extinguished if not brought within four years after the transfer was made. This section of the statute does not contain a discovery rule.").

[80] *See* Plaintiff's Response at 22 (citing *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195 (5th Cir. 2013) (recognizing that "a claim under section 24.005(a)(1) of TUFTA has been held to accrue only when the claimant discovers or reasonably could have discovered the fraudulent nature of the conveyance."); *Janvey v. Romero*, 817 F.3d 184, 188 (5th Cir. 2016) (discussing the one-year discovery rule under § 24.010(a)(1), which only applies to claims "under Section 24.005(a)(1) of [TUFTA]…."); *Janvey v. Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d 825, 829 (N.D. Tex. 2011) (acknowledging that "the Receiver brings his claim under section 24.005(a)(1)" and discussing the application of the one-year discovery rule in § 24.010(a)(1))).

Plaintiff claims that "the Complaint directly pleads insolvency" but quotes nothing more than bald conclusions.[81]  The legal term "insolvent" is not a factual allegation, and this Court need not accept as true such a legal conclusion nor make any inference from it.[82]  Plaintiff's constructive fraudulent-transfer claims require that Northstar was insolvent at the time of the transfer or became insolvent as a result of the transfer.[83]  Insolvency can be proven in two ways: (1) by showing that "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation," or (2) by showing that the debtor "is generally not paying the debtor's debts as they become due."[84]  At most, the Complaint merely *recites* these legal tests when alleging that "Northstar was insolvent, inadequately capitalized, and unable to pay its debts as they came due."[85]  There is *not a single fact* pleaded that establishes either of these tests.

Nor can Plaintiff rely on any allegation that Northstar Directors "acknowledged [Northstar] was insolvent."[86]  This allegation, as with Plaintiff's other conclusory allegations that Northstar was "insolvent," is a legal conclusion not entitled to any presumption of truth.[87]  It alleges no facts showing that Northstar *was actually insolvent*.  As the litigation trustee of Northstar's bankruptcy estate, Plaintiff has access to Northstar's financial records.  Yet he fails to present *any* financial data showing that Northstar was actually insolvent *at any point in time* when Northstar Directors were affiliated with Northstar.  "Without a specific reference to [Northstar's] financial condition at the time—which [Plaintiff] should be capable of making in

---

[81] Plaintiff's Response at 21 (quoting the Complaint ¶ 5 (alleging Defendants "acknowledged the company was insolvent, inadequately capitalized, and unable to pay its debts as they came due"); ¶ 7 ("Throughout this time, Northstar was insolvent, inadequately capitalized, and unable to pay its debts as they came due.")).

[82] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[83] *See* TEX. BUS. & COM. CODE ANN. § 24.006 (West 2017); 11 U.S.C. § 548(a)(1)(B).

[84] TEX. BUS. & COMM. CODE ANN. § 24.003(a), (b) (West 2017); *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 387 (5th Cir. 2017).

[85] The Complaint ¶¶ 5, 7.

[86] The Complaint ¶ 5.

[87] *See Ashcroft*, 556 U.S. at 678.

light of his access to [Northstar's] financial books and records—[Plaintiff] cannot plausibly show that [Northstar] was insolvent at the time of the transfers."[88]

Indeed, Plaintiff's own allegations render any claim of insolvency at the time of the alleged transfers facially implausible.  Plaintiff does not even *allege*—much less plead facts showing—that Northstar was insolvent when it purchased the Creole Assets or became insolvent as a result of that purchase.  Plaintiff pleads that Northstar purchased the Creole Assets in September 2012.[89]  Yet over *a year later*, as Plaintiff pleads, "[i]n November 2013, Northstar obtained a $120 million short-term bank loan from Wells Fargo."[90]  Common sense dictates that no bank would loan any money to Northstar—much less $120 million—if Northstar was insolvent or was in any danger of becoming insolvent.  Indeed, Northstar was able to pay off the $120 million loan in 2014 after the sale closed, further undermining any possibility of insolvency at that time.  And in fact, Northstar did not file for bankruptcy for nearly *four years* after it purchased the Creole Assets and nearly *two years* after it released NGP-NOG's capital commitment.[91]  Not only has Plaintiff failed to plausibly allege that Northstar was insolvent at the time of the alleged transfers that are basis for his fraudulent-transfer claims, but he *cannot*

---

[88] *In re ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017) (finding that "Plaintiff cannot plausibly show that ATP was insolvent at the time of the transfers" when "Plaintiff failed to present any financial data showing that ATP was actually insolvent or had little capital when making the [transfers]").

[89] The Complaint ¶ 39.

[90] The Complaint ¶ 41.

[91] *In re Northstar Offshore Group, LLC*, Case No. 16-34028, Doc. 1 (S.D. Tex. Aug. 12, 2016) (Involuntary Petition).  *See e.g., Committee of Unsec. Creditors v. Motorola (In re Iridium Operating, LLC)*, 373 B.R. 283, 349 (Bankr. S.D.N.Y. 2007) ("Courts examining the question of adequate capital also place great weight on the ability of the debtor to obtain financing.  The fact that [the debtor] closed on three syndicated bank loans and raised over $2 billion in the capital markets [after the alleged fraudulent transfer] is an indication of both solvency and capital adequacy."); *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1071 (3d Cir. 1992) (finding no fraudulent transfer and stating that lower court property considered debtor's availability to obtain financing after the alleged fraudulent transfer).  Further, after the 2014 sale of Northstar, on or about April 2, 2015, the First National Bank of Central Texas ("FNBCT") entered into that certain Letter of Credit Loan Agreement with Northstar GOM Holdings Group LLC ("Northstar Holdings") and Northstar, whereby FNBCT agreed to cause other financial institutions to issue up to $30 million in letters of credit for the benefit of Northstar Holdings and/or the Debtor. *See* Debtor's Disclosure Statement [Bankr. Dkt. 983] at Art. C (1)(b).  *See Mellon Bank, N.A. v. Metro Comms., Inc.*, 945 F.2d 635, 647 (3d Cir. 1991) (considering debtor's ability to obtain financing after the alleged fraudulent transfer in concluding that there was no fraudulent transfer).

plausibly allege insolvency.  Plaintiff therefore fails to state claims for constructive fraudulent transfer in Counts 1 and 2 of the Complaint.

**B.      Plaintiff fails to state a claim for breach of fiduciary duty against Northstar Directors.**

Plaintiff's legal conclusions and new allegations—allegations appearing *nowhere* in the Complaint—fail to rebut the business-judgment rule protecting Northstar Directors.  To rebut the business-judgment rule on a 12(b)(6) motion to dismiss, the alleged *facts* must raise the reasonable inference that the board of directors breached either its (1) duty of loyalty; or (2) duty of care.[92]  Because he pleads *no such facts*, Plaintiff fails to rebut the business-judgment rule and thus fails to state a claim for breach of fiduciary duty against Northstar Directors.

**1.      There are no facts showing that Northstar Directors lacked independence.**

Plaintiff's "[g]eneral allegations of domination over [Northstar's board] are simply not sufficient under Delaware law to state a traditional duty of loyalty claim."[93]  The inquiry relevant to determining whether a director is independent "asks not whether the director has derived some benefit from the transaction, but rather whether the director's decision resulted from the director being controlled by another."[94]  To raise a question concerning the independence of a particular board member**,** a plaintiff asserting the "control of one or more directors must allege *particularized facts* manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'"[95]

---

[92] *In re Xtreme Power Inc.*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016).

[93] *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, CIV.A. 20228-NC, 2004 WL 1949290, at *10 (Del. Ch. Aug. 24, 2004).  *See also Miramar Firefighters Pension Fund v. AboveNet, Inc.*, C.A. 7376-VCN, 2013 WL 4033905, at *3 (Del. Ch. July 31, 2013) (allegations that directors "succumbed" to a party's desire or "acquiesced in" that party's plan are "insufficient to raise a reasonable inference that [the directors] were beholden to, or controlled by, [that party]").

[94] *In re Xtreme Power Inc.*, 563 B.R. 614, 632 (Bankr. W.D. Tex. 2016) (applying Delaware law).

[95] *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002) (emphasis added).

Plaintiff alleges that Northstar Directors had "financial interests in [Entity Defendants]."[96] But without particularized facts explaining *what* financial interests Northstar Directors held in Entity Defendants or *how* those unspecified financial interests rendered Northstar Directors under the control of Entity Defendants, Plaintiff cannot plausibly allege that Northstar Directors' decisions as Northstar managers were compromised.[97]

Plaintiff further alleges that "a majority [of the Northstar board] had financial interests in the transactions at issue."[98]   But this allegation—which in any event is conclusory—indicates nothing about whether the board was controlled by *someone else*.   Plaintiff has pleaded no facts explaining how any Northstar Directors was dominated by any Entity Defendant or beholden to any Entity Defendants and has therefore failed to plausibly allege that Northstar Directors lacked independence.

### 2.     Plaintiff fails to plead elements of a claim for breach of the duty of care.

Plaintiff cannot plausibly allege a claim for breach of the duty of care without a showing of gross negligence.[99]   The duty of care requires directors and officers to inform themselves fully and in a deliberate manner before making a business decision.[100]   But a failure to make an informed business decision will only result in a breach of the duty of care if the directors'

---

[96] Plaintiff's Response at 31.

[97] *See, e.g., Official Committee of Unsecured Creditors v. Meltzer*, 1:17-CV-256-NT, 2018 WL 2123558, at *6 (D. Me. May 8, 2018) ("Allegations that a director has a relationship with a third party do not suffice absent some indication of how that affiliation influenced the director's decision-making." (applying Delaware law)).

[98] Plaintiff's Response at 31.

[99] *See Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1113 (Del. Ch. 2008) (noting "a corporate director is only considered to have breached his duty of care in instances of gross negligence"); *Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 985 (Del. Ch. 2000) ("[T]o overcome the presumption that the director defendants acted on an informed basis plaintiffs must show gross negligence.").   *See also In re Think3, Inc.*, 529 B.R. 147, 172 (Bankr. W.D. Tex. 2015) (Under Delaware law, breach of the duty of care is "predicated upon concepts of gross negligence.").

[100] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 368 (Del. 1993).

decision-making process was committed with gross negligence.[101]  Gross negligence, in the duty-of-care context, has been defined as "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason."[102]

Plaintiff has failed to plead even a "formulaic recitation" of the elements of a claim for breach of the duty of care.[103]  Rather, the Complaint alleges—in conclusory fashion—that Northstar Directors "violated their fiduciary duties through acts of self-dealing and conflicting interests…."[104]  These are allegations of breaches of the duty of loyalty only.[105]  There is no allegation *anywhere* in the Complaint that Northstar Directors acted with gross negligence in the process by which they made any business decision.  In particular, there is no allegation that Northstar Directors failed to review *any* sort of financial analysis or other documentation, or conduct *any* sort of meaningful deliberation.

In an apparent attempt to "allege" the gross negligence that he pleads nowhere in the Complaint, Plaintiff now claims the *ultimate decisions* of the Northstar board "would raise the inference that the directors failed to adequately inform themselves."[106]  But a breach of the duty of care involves a deficiency in the *process employed* in order to reach a decision—namely that the directors failed to inform themselves of available material facts *before* reaching the decision.[107]  So Plaintiff's allegation that Northstar overpaid Propel Energy for the Creole Assets

---

[101] *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008); *see also In re Xtreme Power Inc.*, 563 B.R. 614, 640 (Bankr. W.D. Tex. 2016) (applying Delaware law).

[102] *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006).

[103] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

[104] The Complaint ¶ 71.

[105] *See In re Xtreme Power Inc.*, 563 B.R. at 632 (applying Delaware law).

[106] Plaintiff's Response at 32.

[107] *See, e.g.*, *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 368 (Del. 1993), *decision modified on other grounds*, 636 A.2d 956 (Del. 1994) ("[A] trial court will not find a board to have breached its duty of care unless the directors individually and the board collectively have failed to inform themselves fully and in a deliberate manner *before* voting as a board….") (emphasis added); *In re RJR Nabisco, Inc. Shareholders Litig.*, CIV.A. 10389, 1989 WL

says nothing about whether Northstar Directors failed to inform themselves when making the decision to buy the Creole Assets.[108]  Nor does Plaintiff's allegation that Northstar released capital commitments owed by NGP-NOG raise any inference about the decision-making *process* leading to that release.[109]

Accordingly, the sole case Plaintiff cites—*McMullin v. Beran*—found a deficiency in the decision-making process that was grossly negligent.[110]  And notably, the standard under which the Delaware Supreme Court in *McMullin* evaluated the complaint was the pre-*Twombly* standard that no longer applies to federal pleadings.[111]  Even under that more liberal standard, the court pointed to *specific factual allegations* in the complaint showing a deficiency in the decision-making *process*.[112]

Here, there are no factual allegations—or even conclusions—in the Complaint referencing or discussing a deficiency in the deliberative process leading to the decisions that are the basis for Plaintiff's breach-of-fiduciary-duty claim.  Thus, there is no cause of action pleaded for a breach of the duty of care.

---

7036, at *13 (Del. Ch. Jan. 31, 1989) ("The business judgment form of judicial review encompasses three elements: a threshold review of the objective financial interests of the board whose decision is under attack (*i.e.,* independence), a review of the board's subjective motivation (*i.e.,* good faith), and *an objective review of the process by which it reached the decision under review (i.e., due care).*") (emphasis added).

[108] *See* Plaintiff's Response at 32.

[109] *See* Plaintiff's Response at 32.

[110] 765 A.2d 910, 921–22 (Del. 2000).

[111] *Id.* at 916 ("This Court, like the trial court, 'must determine whether it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiffs would not be entitled to relief.'").

[112] *See id.* at 921-22 ("McMullin alleges that the Chemical Board authorized ARCO to unilaterally negotiate the merger agreement without establishing any procedural safeguards to protect the interests of the minority shareholders…. The Amended Complaint alleges that the Chemical Board met only once to consider the Transaction negotiated by ARCO with Lyondell. At that meeting, ARCO's financial advisor, Salomon Smith Barney, made a presentation to the Chemical Board regarding the terms of Lyondell's proposal and the sale process conducted by ARCO. The Chemical Board approved the Transaction with Lyondell at that one meeting on the basis of the disclosures made to them by ARCO's financial advisor."). *See also id.* at 922 ("The business judgment rule is rebutted if the plaintiff shows that the directors failed to exercise due care in informing themselves *before* making their decision.") (emphasis added).

C.      **Plaintiff fails to state a claim for breach of a term of the Contract.**

As noted in their Motion to Dismiss, Plaintiff does not allege that any Northstar Director breached the contract.  Northstar Directors note this again so that the Court does not consider anything in Count 4 as an impediment to dismissal.

D.      **Plaintiff fails to state a claim for conspiracy against Northstar Directors.**

1.      **There is no cause of action for conspiracy to commit fraudulent transfers.**

Contrary to Plaintiff's contention, Texas law does not provide a cause of action for conspiracy to commit fraudulent transfers.  In *Official Stanford Investors Committee v. Greenberg Traurig, LLP*, the United States District Court for the Northern District of Texas recognized that "TUFTA does not provide for secondary liability."[113]

Not one of the three cases Plaintiff cites supports allowing recovery for fraudulent transfers under a conspiracy theory.[114]  *Essex Crane Rental Corp. v. Carter* did not raise the issue of whether a claim for conspiracy to commit fraudulent transfer could exist.[115]  Rather, the only issue was whether there was evidence to support such a claim.[116]  And as the court in *Greenberg Traurig* noted, the *Essex Crane* court acknowledged that a conspiracy claim was restricted to defendants who were parties to the transfer.[117]  *Laxson v. Giddens* involved a claim for conspiracy under the Deceptive Trade Practices Act, not TUFTA.[118]  And notably, both of the individuals alleged to have conspired "split the profits" and thus obtained a benefit from

---

[113] *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014).

[114] *See* Plaintiff's Response at 38.

[115] *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 377 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

[116] *See id.* at 377-79.

[117] *Greenberg Traurig*, 2014 WL 12572881, at *11 (citing *Essex Crane*, 371 S.W.3d at 386-87).

[118] *See Laxson v. Giddens*, 48 S.W.3d 408, 411 (Tex. App.—Waco 2001, pet. denied).

violation of the statute.[119]   The court in *Greenberg Traurig*—the same court that previously decided *Biliouris v. Sundance Resources, Inc.*[120]—acknowledged that its "decision in [*Biliouris*] was reached without the benefit of briefing on this particular issue [whether a claim exists for conspiracy to commit fraudulent transfers]," thus abrogating its decision in *Biliouris*.[121]

2.      **Plaintiff fails to allege elements of a conspiracy claim.**

To state a claim for conspiracy, among other elements, a plaintiff must plead facts that support (1) a meeting of the minds on the object or course of action; and (2) one or more unlawful overt acts.[122]   Plaintiff claims that the Complaint "details how Defendants agreed to act and carried through with those actions."[123]   But nowhere does the Complaint allege any agreement or even imply one.   And there is not "enough *factual* matter (taken as true) to suggest that an [unlawful] agreement was made."[124]   Nor can Plaintiff allege an unlawful act because its claim for breach of fiduciary duty fails and its fraudulent-transfer claims cannot serve as a basis for a conspiracy claim.[125]

**E.      Plaintiff fails to state a claim for aiding and abetting against Northstar Directors.**

There is no cause of action for aiding and abetting fraudulent transfers.[126]   Plaintiff mistakes a cause of action under TUFTA—allowing recovery for fraudulent transfers from transferees—as a right to recover for fraudulent transfers under an aiding and abetting cause of

---

[119] *Id.* at 410.

[120] 559 F. Supp. 2d 733 (N.D. Tex. 2008).

[121] *Greenberg Traurig*, 2014 WL 12572881, at *11.

[122] *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *6.

[123] Plaintiff's Response at 37.

[124] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).

[125] *See Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 223–24 (5th Cir. 2017) ("Moreover, because, as discussed *supra*, Plaintiff's fiduciary duty breach claims fail, Plaintiff cannot satisfy the 'unlawful act' requirement of civil conspiracy.").

[126] *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 3:12-CV-4641-N, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014) (holding that Texas does not recognize a cause of action for aiding and abetting fraudulent transfers).

action.[127]  But the sole case Plaintiff cites—*Mack v. Newton*—recognizes that Texas law "does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof."[128]  Plaintiff cannot recover for fraudulent transfers under an aiding and abetting theory.

## III.     Conclusion

For these reasons and the reasons explained in Northstar Directors' Motion to Dismiss Plaintiff's Original Complaint [Dkt. 23], Northstar Directors ask that this Court enter an order dismissing with prejudice each of Plaintiff's causes of action asserted against Northstar Directors in Plaintiff's Original Complaint.

Dated:   August 3, 2018.

Respectfully submitted,

COZEN O'CONNOR

By: /s/ *Gregory S. Hudson*
    Gregory S. Hudson
    State Bar No. 00790929
    Southern District Bar No. 19006
    1221 McKinney Street, Suite 2900
    Houston, Texas 77010
    Telephone: (832) 214-3909
    Facsimile: (832) 214-3905
    E-mail:  ghudson@cozen.com

**ATTORNEYS FOR DEFENDANTS**
**S. GLYNN ROBERTS;**
**GAYLON FREEMAN;**
**MARK STEVENS; AND**
**JAMES P. ULM, II**

---

[127] *See* Plaintiff's Response at 38.
[128] *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system on August 3, 2018.

/s/ *Gregory S. Hudson*
Gregory S. Hudson

R. Paul Yetter
Robert K. Ellis
Wyatt J. Dowling
811 Main, Suite 4100
Houston, Texas 77002

John F. Higgins
Eric M. English
1000 Main St., 36th Floor
Houston, Texas 77002

David M. Bennett
Stephen C. Rasch
Cassandra Shoemaker
1722 Routh Street, Suite 1500
Dallas, Texas 75201