IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | Case No. 16-34028 |
| § | | |
| NORTHSTAR OFFSHORE GROUP LLC, § | | |
| § | | |
| Debtor. § | | Chapter 11 |
| § | | |
| JAMES KATCHADURIAN, Litigation Trustee, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Adversary No. 18-03079 |
| § | | |
| NGP ENERGY CAPITAL MANAGEMENT, § | | |
| L.L.C., et al., § | | |
| § | | |
| Defendants. § | | |

**TRUSTEE'S SUPPLEMENT TO OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS (Dkt. 39)**

Plaintiff James Katchadurian, Litigation Trustee for the Northstar Litigation Trust, respectfully submits this Supplement, per the Court's request at the August 27, 2018 hearing, addressing the issues of triggering creditors and trustee standing under 11 U.S.C. §544(b), through which the Trustee pursues state-law claims under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE §24.001 *et seq.* ("TUFTA").

1.  Under §544(b), a trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable . . . ." 11 U.S.C. §544(b). As the Fifth Circuit has explained, the trustee may "step into the shoes" of a creditor:

> If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use §544(b) to step into the shoes of that creditor and "avoid" the debtor's transfer. Although the cause of action belonged to one creditor, any property the trustee recovers becomes estate

> property and is divided *pro rata* among all general creditors. The trustee may recover the full extent of the fraudulently transferred property on the basis of one creditor's claim. In other words, an entire transfer may be set aside even though the creditor's claim is nominal.

*Matter of Mirant Corp.*, 675 F.3d 530, 534 (5th Cir. 2012) (cite omitted). Accordingly, a trustee must show a "triggering creditor" to establish standing under §544(b). *In re Wingspread Corp.*, 178 B.R. 938, 945-46 (Bankr. S.D.N.Y. 1995).

    2.      Importantly, "while the so-called 'triggering' creditor must be the same creditor on both the transfer date and the date of the commencement of the case, 'it need not hold the same claim at these two essential points in time.'" COLLIER ON BANKRUPTCY ¶544.06[1], 544-23 (16th ed.) (quoting *In re Allou Distributors*, 392 B.R. 24, 34 (Bankr. E.D.N.Y. 2008)). All that is required "is that the same creditor hold a claim at the time of the alleged fraudulent transfer and at the time the Complaint was filed," so that, because the creditor "held claims at both times, albeit different claims," the trustee will have standing under §544(b)). *Cohen v. Sikirica*, 487 B.R. 615, 628 (Bankr. W.D. Pa. 2013); *see also SPC Plastics Corp. v. Griffith*, 224 B.R. 27, 30-31 (6th Cir. B.A.P. 1998) (claim existing at the time of the transfer and on the petition date need not be the same with respect to a creditor that maintained an open account with the debtor); *In re RCM Global Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 523 (Bankr. S.D.N.Y. 1996) ("It is not necessary 'that the claim held by that creditor at the bankruptcy filing be identical to the one held at the time of the' fraudulent transfer.") (cite omitted).

    3.      This is because, as to creditors with an ongoing commercial relationship with the debtor, by which the creditor provides goods or services on credit, the creditor's right to avoid a transaction arises from this relationship rather than the balance owed at a particular point of time. The "existing creditor relationship is not defined by the balance on the account; it is the availability and continuous use of the credit facility that determines whether an appropriate creditor interest is

present against which to measure the propriety of a conveyance." *Belfance v. Bushey*, 210 B.R. 95 (6th Cir. B.A.P. 1997); *see also Kelly v. Speciale*, 2013 WL 3989061, at *8 n.10 (Bankr. M.D. Ga. 2013) ("Paying an open-ended loan down to zero does not terminate the lender's ongoing creditor status."); *Aluminum Mills Corp. v. Citicorp N.A., Inc.*, 132 B.R. 869, 890 (Bankr. N.D. Ill. 1991) ("debts which existed at the time of the bankruptcy filing were substantially the same debts as those which existed at the time of the LBO in that they arose from the same commercial relationships on the same accounts," so creditor that owed different amounts between the transfer date and bankruptcy petition date could pursue a state-law fraudulent transfer claim). While the Trustee did not locate any published TUFTA opinions on this point, the reasoning of the preceding cases and learned treatises are equally applicable to TUFTA claims asserted under §544(b), since the Texas act adopted the same uniform fraudulent transfer act incorporated by most states.

4. Here, many unsecured Northstar creditors were creditors at the time of the Propel overpayment (October 2012) and when the bankruptcy petition was filed (August 2016):

- A&B Valve & Piping, LLC (Creditor No. 9785128),
- Dulan, LLC (Creditor No. 9602398),
- J. Connor Consulting, Inc. (Creditor No. 9602434),
- Martin Energy Services (Creditor No. 9602445),
- Quality Construction & Production LLC (Creditor No. 9602483),
- Quality Production Management (Creditor No. 9602485),
- RigNet, Inc. (Creditor No. 9798260),
- Stallion Offshore Quarters, Inc. (Creditor No. 9602507),
- Transcontinental Gas Pipeline LLC (Creditor No. 9798455),
- United Vision Logistics (Creditor No. 9637875), and
- Wood Group PSN, Inc. (Creditor No. 9602540).

(The creditor numbers in this Supplement reference the creditor numbers listed on the PACER Claims Register for the underlying Northstar bankruptcy case.) Again, as for the release of capital commitments, many unsecured Northstar creditors—including many overlapping with the above

list—were creditors at the time of the release (September 2014) and when bankruptcy was filed (August 2016):

- A&B Valve & Piping, LLC (Creditor No. 9785128),
- American Eagle Logistics, LLC (Creditor No. 9602361),
- Archrock Partners (Creditor No. 9798210),
- Atchafalaya Measurement Controls, Inc. (Creditor No. 9602370),
- Coastal Crewboats, Inc. (Creditor No. 9602390),
- Dulan, LLC (Creditor No. 9602398),
- Gulf-Pro Services (Creditor No. 9574564),
- Halliburton Energy Services, Inc. (Creditor No. 9602425),
- J. Connor Consulting, Inc. (Creditor No. 9602434),
- Martin Energy Services (Creditor No. 9602445),
- Measurement Technologies, Inc. (Creditor No. 9602446),
- Offshore Rental (Creditor No. 9602461),
- Petronyx, LLC (Creditor No. 9805713),
- Quality Construction & Production LLC (Creditor No. 9602483),
- Quality Production Management (Creditor No. 9602485),
- RigNet, Inc. (Creditor No. 9798260),
- SempCheck Services Inc. (Creditor No. 9602499),
- Stallion Offshore Quarters, Inc. (Creditor No. 9602507),
- Traco Production Services, Inc. (Creditor No. 9602521),
- Transcontinental Gas Pipeline, LLC (Creditor No. 9798455),
- United Vision Logistics (Creditor No. 9637875), and
- Wood Group PSN, Inc. (Creditor No. 9602540).

5. Although these creditors had different claims and were owed different amounts on the date of the alleged transfers and the bankruptcy date, theirs were recurring debts arising from an ongoing commercial relationship with Northstar, which affords the Trustee standing to pursue TUFTA claims under sections 24.005(a) and 24.006(a). *See* Ex. A (A. Alcorn Decl. ¶4). For example, creditor Dulan, LLC, who had claims on both transfer dates and the date of the bankruptcy filing, had a monthly payment arrangement with Northstar for ongoing data-monitoring services. *See id.* ¶¶2-3, 5; *see also* Claims Register, Claim 5-1 at 4. In sum, the Trustee has standing to pursue all of its TUFTA claims.

6. In any event, the claims under TUFTA section 24.005(a) are not limited to those that could have been asserted by a creditor that held a claim prior to the transfer at issue. Section 24.005(a), in contrast to §24.006(a), makes transfers voidable as to "present *and future* creditors." TEX. BUS. & COM. CODE §24.005(a) (emph. added). TUFTA covers transfers as to creditors whose claims "arose before *or within a reasonable time after* the transfer was made." *Id.* (emph. added). What's a "reasonable time" is not defined in the statute, but courts define the phrase consistent with the statute of limitations for §24.005(a) claims:

> Although the definition of "reasonable time" under TUFTA is not specifically defined, the four year statute of limitations suggest that a "reasonable time" is within four years.

*In re Houston Drywall, Inc.*, 2008 WL 2754526, at *20 n.23 (Bankr. S.D. Tex. 2008) (cite omitted)); *accord* OHIO REV. CODE §1336.04(A) (transfer fraudulent as to a creditor if the claim arose "before or within a reasonable time *not to exceed four years after*, the transfer was made") (emph. added).

7. Each triggering creditor named above had claims that arose "within a reasonable time after" the Propel overpayment and release of capital commitments, because the claims arose within the four-year statute of limitations for §24.005(a) claims. Moreover, Northstar's claims registry and schedules identify over 400 pre-petition claims, all of which arose within four years of the transfers at issue. *See* registry of scheduled and filed claims maintained by Northstar's claims and noticing agent, Prime Clerk, at https://cases.primeclerk.com/northstar/Home-ClaimInfo.

8. In addition, some creditors hold claims that arose well within the four-year limitations period. For example, unsecured creditor Martin Energy Services (Creditor No. 9602445) had a claim for $7.20 that was invoiced in September 2014 and unpaid by the time of the bankruptcy filing in August 2016. *See* Claims Register, Case No. 16-34028, Claim 95-1 at 4.

This was less than two years after the Propel overpayment in October 2012 and at about the same time as the release of capital commitments in September 2014. Unsecured creditor RigNet, Inc. (Creditor No. 9798260) had a claim for $594 for services performed in February 2015 that was unpaid as of the bankruptcy filing, a claim that arose within three years of the Propel overpayment and less than six months after the release of capital commitments. *See id.*, Claim 69-1 at 2.

9. Accordingly, at the least, the Trustee has standing under Section 544(b) as to the TUFTA Section 24.005(a) claims.

## Conclusion

For these reasons and those in Plaintiff's Opposition to the Motions to Dismiss (Dkt. 39), Plaintiff respectfully requests that the Court deny Defendants' Motions to Dismiss (Dkts. 19, 23).

Date: September 10, 2018

Respectfully submitted,

*/s/ Paul Yetter*

| | |
|---|---|
| William R. Greendyke | R. Paul Yetter |
| State Bar No. 08390450 | State Bar No. 22154200 |
| william.greendyke@nortonrosefulbright.com | pyetter@yettercoleman.com |
| Bob B. Bruner | Robert K. Ellis |
| State Bar No. 24062637 | State Bar No. 24076367 |
| bob.bruner@nortonrosefulbright.com | rellis@yettercoleman.com |
| NORTON ROSE FULBRIGHT US LLP | Wyatt J. Dowling |
| 1301 McKinney, Suite 5100 | State Bar No. 24074152 |
| Houston, Texas 77010 | wdowling@yettercoleman.com |
| (713) 651-5151 | YETTER COLEMAN LLP |
| (713) 651-5246 (Fax) | 811 Main, Suite 4100 |
| | Houston, Texas 77002 |
| | (713) 632-8000 |
| | (713) 632-8002 (Fax) |

ATTORNEYS FOR PLAINTIFF
JAMES KATCHADURIAN, LITIGATION TRUSTEE,
NORTHSTAR LITIGATION TRUST

**Certificate of Service**

    I certify that on September 10, 2018, a true and correct copy of the foregoing Supplement was served on all parties via the Court's electronic filing system.

                                                */s/ Robert K. Ellis*
                                                Robert K. Ellis