**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 16-34028 |
| | § | |
| NORTHSTAR OFFSHORE GROUP, LLC | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| JAMES KATCHADURIAN, Litigation Trustee, on behalf of Northstar Litigation Trust, | § | |
| | § | |
| | § | |
| | § | ADVERSARY NO. 18-03079 |
| Plaintiff, | § | |
| v. | § | |
| | § | Jury |
| NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; DAVID HAYES; S. GLYNN ROBERTS; GAYLON FREEMAN; MARK STEVENS; and JAMES P. ULM, II, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MOVANTS' SUR-REPLY IN SUPPORT OF MOVANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENT TO OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**
[Relates to Dkt. No. 61]

Defendants NGP Energy Capital Management, L.L.C., NGP X US Holdings L.P., NGP

Natural Resources X, L.P., NGP X Parallel Holdings, L.P., NGP Natural Resources X Parallel

Fund, L.P., NOG Royalty Holdings, L.P., Christopher Ray, Jesse Bomer, Tomas Ackerman, David

Albin, and David Hayes (collectively, the "Movants") file their Sur-Reply in support of their

Response [Dkt. No. 61] (the "<u>Response</u>") to Plaintiff's Supplement to Opposition to Defendants' Motions to Dismiss [Dkt. No. 59] (the "<u>Plaintiff's Supplement</u>").[1]

1.      Plaintiff's Reply is nothing more than an attempt to mask Plaintiff's failure to establish standing under 11 U.S.C. § 544(b) to assert TUFTA claims.  Specifically, the creditors cited by Plaintiff in his Supplement[2] fall into two groups, neither of which qualify as triggering creditors under § 544(b) to assert claims under TUFTA § 24.005.[3]  First, Plaintiff cites creditors that became creditors *after* the September 22, 2014, transaction and *years after* the payment to Propel Energy in September 2012.[4]  Second, Plaintiff cites creditors that held *different claims* on the Petition Date than those claims they obtained *after* the 2012 and 2014 transactions.[5]  In fact, in order to have a requisite triggering creditor, Plaintiff would have to prevail on convincing this Court to create new law that would allow a creditor (a) that *did not hold a claim whatsoever* on the date of (or even within at least two years after) the 2012 transaction or the 2014 transaction;[6] (b) who *obtained a claim after the transaction at issue that was subsequently paid off*; and (c) subsequently obtained a *different claim* that it then held on the Petition Date.  Instead of citing any

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in Movants' Response.

[2] Notably, this Court should not even consider the creditors Plaintiff sets forth in his Supplement because he wholly failed to plead the identity – or even the existence – of any triggering creditor in his Complaint [Dkt. No. 1].

[3] As detailed in Movants' Response, because a TUFTA action under § 24.006 can only be brought on behalf of "present" creditors and Plaintiff does not even properly contend that there was a single creditor in existence at the time of the 2012 transaction or the 2014 transaction, his TUFTA § 24.006 claims must be dismissed. *See* Movants' Response at n.15 and ¶ 13.

[4] *See* Plaintiff's Supplement at ¶ 4.  In fact, the earliest claim Plaintiff alleges that is supported by a review of the underlying claim —a claim for $7.20—was invoiced on September 29, 2014, more than two years after the September 2012 transfer to Propel Energy and after the September 22, 2014 sale. *See* Movants' Response at ¶ 8.

[5] *See* Plaintiff's Supplement at ¶ 5 ("[T]hese creditors had different claims and were owed different amounts on the date of the alleged transfers and the bankruptcy date . . . ."); *see also* Exhibit A to Plaintiff's Supplement at ¶ 4 ("To be clear, the creditors listed in paragraphs 2 and 3 [which are identical to those listed paragraph 4 of Plaintiff's Supplement] had different claims and were owed different amounts on the dates specified above.").

[6] *See* Movants' Response at n.15 and ¶ 13. Notably, Plaintiff does not dispute Movants' assertion that Plaintiff failed to properly plead an existing creditor at the time of either transaction as a review of the Plaintiff's cited creditors' proofs of claim establishes that such creditors only held claims that arose *after* the September 22, 2014 sale and *years after* the payment to Propel Energy in September 2012.

creditor whatsoever that would qualify as a triggering creditor under existing case law, in the Plaintiff's Supplement, he attempts to conceal his lack of a triggering creditor by incorrectly accusing Movants of "misread[ing]" Plaintiff's cited cases.  The Plaintiff's allegations and characterization of cases in the Plaintiff's Supplement are demonstrably false.

2.       As an initial matter, the court in *In re Houston Drywall, Inc.*[7] never held that a claim arising four years after a transfer is made is a "reasonable time" under TUFTA § 24.005.  In fact, the *Houston Drywall* court specifically found that a claim arising "less than one year after the [transfer] took place" was a "reasonable time" under TUFTA § 24.005.[8]  As detailed in Movants' Response, the *Houston Drywall* court suggested *in dicta* in a footnote that the TUFTA four-year statute of limitations could be a *reference point* for determining whether a claim arose within a "reasonable time" after the transfer sought to be avoided was made.[9]  Thus, Plaintiff's allegation that Movants "fail to cite authority that says, in dicta or otherwise, that a claim must arise" within one year after a transfer is belied by *Houston Drywall*—the very case he cites.[10]

3.       Second, contrary to Plaintiff's contention, each of Plaintiff's cited cases in support of his argument that a TUFTA creditor may hold a different claim as of the transfer date and the bankruptcy petition date involved other states' fraudulent transfer statutes that *do not contain* TUFTA's undefined "reasonable time" requirement.  Rather, Plaintiff's cases involve other states' fraudulent transfer statutes that either (a) adopt the relevant Uniform Fraudulent Transfer Act language in full (and, therefore, specifically bestow standing on *all* future creditors, unlike

---

[7] *West v. Seiffert (In re Houston Drywall, Inc.)*, Adv. Pro. No. 06-03415, 2008 WL 2754526 (Bankr. S.D. Tex. July 10, 2008).

[8] *Id*. at *19 n.23.

[9] *Id*.; *see also* Movants' Response at ¶ 5.

[10] Plaintiff's Supplement at ¶ 1.

TUFTA) or (b) specifically define the post-transfer time period in which a claim may arise.[11] Unlike such cases, the Texas legislature specifically described the only plaintiff allowed to bring a claim under TUFTA §§ 24.005 and 24.006 as a creditor whose claim "arose before" or "within a reasonable time after" the transfer date.

4.       For this Court's convenience, below is a summary of the relevant cases and corresponding statutes cited in the Plaintiff's Supplement,[12] each of which apply state statutes with *different language* than TUFTA § 24.005 regarding what constitutes a future creditor:

- *Cohen v. Sikirica*, 487 B.R. 615, 620 (Bankr. W.D. Pa. 2013) (applying Pennsylvania law).
  - Statute: 12 Pa. Const. Stat. § 5104 provides that a transfer is fraudulent as to a creditor, "whether the creditor's claim arose *before or after* the transfer was made or the obligation was incurred." (emphasis added).[13]

- *SPC Plastics Corp. v. Griffith*, 224 B.R. 27, 30 (6th Cir. B.A.P. 1998) (applying a superseded version of Ohio law).[14]
  - Statute: *SPC Plastics* was decided under the former version of Ohio's relevant fraudulent transfer statute, and the plaintiff brought claims under Ohio Rev. Code § 1336.04, which only conferred standing on "present or existing creditors" holding

---

[11] As discussed below, in the Plaintiff's Supplement, Plaintiff cites three cases – *SPC Plastics Corp. v. Griffith*, 224 B.R. 27 (6th Cir. B.A.P. 1998), *Belfance v. Bushey*, 210 B.R. 95 (B.A.P. 6th Cir. 1997), and *Aluminum Mills Corp. v. Citicorp N. America, Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869 (Bankr. N.D. Ill. 1991) – that were decided under prior state statutes which contained language substantially similar to that in TUFTA § 24.006, providing that an action may only be brought on behalf of *present* creditors.  Such statutes provided standing only to creditors with claims arising *before* the transfer was made and thus are irrelevant to the time period allowed for future creditors—creditors with claims arising *after* the transfer was made.  None of the prior statutes contained the "reasonable time" language that TUFTA § 24.005 contains. Notably, the *current* versions of each state statute provide for the existence of a future creditor and either adopt the Uniform Fraudulent Transfer Act language in full (*In re Aluminum Mills Corp.*) or specifically define the post-transfer time period in which a claim may arise (*SPC Plastics* and *Belfance*).  Accordingly, Plaintiff's argument that the previous, superseded state statutes (containing language substantively similar to that in TUFTA § 24.006) did not define what constitutes future creditors is irrelevant to Plaintiff's TUFTA § 24.005 claims. And, because Plaintiff does not properly contend that there was a single creditor in existence at the time of the 2012 transaction or the 2014 transaction, such cases are also irrelevant to Plaintiff's TUFTA § 24.006 claims.

[12] *See* Plaintiff's Supplement at ¶¶ 2 and 3.

[13] The fact that the plaintiff in *Cohen* also brought claims under 12 Pa. Const. Stat. § 5105 (*i.e.,* fraudulent as only to *present* creditors) is a distinction without difference.  12 Pa. Const. Stat. § 5105 allows only creditors with claims arising "before the transfer was made," and thus is irrelevant to the time period allowed for future creditors—creditors with claims arising *after* the transfer was made under TUFTA § 24.005.  *See supra* n.11.

[14] In their Supplement, Movants inadvertently stated that *SPC Plastics* involved Pennsylvania law, rather than Ohio law.  However, this does not change or otherwise impact the applicable analysis.  *See supra* n.11.

claims "at the time of the transfer" and was silent as to future creditors.[15]  Unlike Plaintiff's failure to identify a single creditor in existence at the time of the 2012 transaction or the 2014 transaction here, in *SPC Plastics* it was "undisputed that at least two trade creditors" at the time of the transfer continued to be creditors as of the debtor's petition date and therefore qualified as "present" creditors.  In addition, because *SPC Plastics* did not involve future creditors, it is irrelevant as to Plaintiff's TUFTA § 24.005 "future creditor" claims.

- *Belfance v. Bushey*, 210 B.R. 95 (B.A.P. 6th Cir. 1997) (applying a superseded version of Ohio law).
  - <u>Statute</u>: *In re Bushey*, like *SPC Plastics*, was also decided under the former version of Ohio's relevant fraudulent transfer statute, and the plaintiff brought claims under Ohio Rev. Code §§ 1336.04, 1336.06 and 1336.07, which conferred standing on "existing," "present" or "future creditors."[16]  Unlike Plaintiff's failure to identify a single creditor in existence at the time of the 2012 transaction or the 2014 transaction here, in *In re Bushey*, two creditors were owed money at the time of the transfer and the bankruptcy filing and, thus qualified as "existing" and "present" creditors to confer standing.[17]  In addition, because *In re Bushey* did not involve future creditors, it is irrelevant as to Plaintiff's TUFTA § 24.005 "future creditor" claims.

- *In re RCM Global Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 519 (applying New York law).
  - <u>Statute</u>: N.Y. Debt. & Cred. Law § 274 provides that a transfer is fraudulent "as to creditors and as to *other persons who become creditors during the continuance of such business or transaction*…." (emphasis added).

- *Kelly v. Speciale (In re Gregg)*, Adv. Pro. No. 11-4047, 2013 WL 3989061 (Bankr. M.D. Ga. 2013) (applying Georgia law).
  - <u>Statute</u>: Ga. Code Ann. § 18-2-74 provides that a transfer is fraudulent "as to a creditor, whether the creditor's claim arose *before or after* the transfer was made or the obligation was incurred…." (emphasis added).[18]

---

[15] Moreover, in contrast to TUFTA, the current version of Ohio's relevant fraudulent transfer law, Ohio Rev. Code § 1336.04(A), provides that a transfer is fraudulent as to a creditor if the claim arose "before or within a reasonable time *not to exceed four years after*, the transfer was made." (emphasis added).

[16] 201 B.R. at 101 and n.10.  *See supra* n.15.

[17] 201 B.R. at 101 and n.9.

[18] The fact that the plaintiff in *Kelly* also brought claims under Ga. Code Ann. § 18-2-75 (*i.e.,* fraudulent as only to *present* creditors), is a distinction without difference.  Ga. Code. Ann. § 18-2-75 applies only to a creditor whose claim arose *before* the transfer was made and thus is irrelevant to the Plaintiff's claims against Movants because the Plaintiff has failed to identify a single creditor in existence at the time of the 2012 transaction or the 2014 transaction.

5

- *Aluminum Mills Corp. v. Citicorp N. America, Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869 (Bankr. N.D. Ill. 1991) (applying a superseded version of Illinois law).
  - <u>Statute</u>: *Aluminum Mills* was decided under the former version of Illinois' relevant fraudulent transfer statute,[19] which required "the existence of an unsecured creditor whose claim against the debtor was pending at the time of the alleged fraudulent transfer."[20]  Unlike Plaintiff's failure to identify a single creditor in existence at the time of the 2012 transaction or the 2014 transaction here, in *Aluminum Mills* it was undisputed that "debts which existed at the time of the bankruptcy filing were substantially the same debts as those which existed at the time of the [transfer]" and thus, the holders of such debts qualified as creditors to confer standing to the unsecured creditors' committee.[21]  In addition, because *Aluminum Mills* did not involve future creditors, it is irrelevant as to Plaintiff's TUFTA § 24.005 "future creditor" claims.

Accordingly, these cases and their corresponding statutes further emphasize that, in contrast to such statutes, the exclusive TUFTA plaintiff is a creditor whose claim "arose before" (which Plaintiff does not properly allege exists for either transfer) or "within a reasonable time after" the transfer date – not a creditor who obtained a claim after the transfer and then subsequently held a different claim as of the petition date.[22]

     5.     Finally, as detailed in Movants' Motion to Dismiss, it is Plaintiff's burden to show that he has standing to bring a fraudulent transfer claim under § 544(b).[23]  Every case Plaintiff cites in support of his argument that a TUFTA creditor may hold a different claim as of the transfer date and the bankruptcy petition date involved "open accounts," except for two of the cases which did not address the issue.[24]  Specifically, in each instance, the respective court relied on the relevant

---

[19] *See* Ill. Rev. Stat. Ch. 59 § 4 (repealed); *see also supra* n.11.  Moreover, in contrast to TUFTA, the current version of Illinois' relevant fraudulent transfer law, Ch. 740 Ill. Comp. Stat. Act 160/5, provides that a transfer is fraudulent "as to a creditor, whether the creditor's claim arose *before or after* the transfer was made or the obligation was incurred…."). (emphasis added).

[20] 132 B.R. at 889.

[21] *Id*. at 890.

[22] *See supra* n.3.

[23] *See* Movants' Motion to Dismiss at 25-26.

[24] Two of the cases Plaintiff cites did not discuss whether the debtor must have an open account with a creditor holding a different claim on the transfer date and petition date in order to confer standing on the creditor.  *See Cohen*, 487 B.R. at 620 (holding only that "the same creditor [held] a claim at the time of the alleged fraudulent transfer and at the time the Complaint was filed" and not addressing whether the claim involved an open account); *In re RCM Global Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514 (recognizing that the defendant was not seeking to dismiss the

state statute (which in each case did *not* involve TUFTA's "within a reasonable time" requirement) and the fact that the debtor had "availability and continuous use of [a] credit facility" with the claimant[25] to find that the claimant qualified as a triggering creditor.[26]  But a review of the claimants Plaintiff contends qualify as triggering creditors in the Northstar bankruptcy case[27] fails to reflect *that even one of them* held a claim based on an open account.  Therefore, even assuming *arguendo* that TUFTA does not require that a triggering creditor hold the same claim on the transfer date and the petition date (which Movants deny), the very cases Plaintiff cites reflect that he does not have standing in any event because, among other things, he has wholly failed to show that there is a single creditor holding a claim as of the relevant dates based on an open account.

6.      For these reasons and the reasons in Movants' Motion to Dismiss Plaintiff's Original Complaint [Dkt. No. 19], Movants' Reply in Support of Movants' Motion to Dismiss [Dkt. No. 47], and Movants' Response [Dkt. No. 61], Movants ask that this Court enter an order dismissing with prejudice each of Plaintiff's causes of action asserted against Movants in Plaintiff's Original Complaint.

Dated:  October 12, 2018.

---

fraudulent transfer action, but noting that the creditors had claims for unpaid "services" at both the time of the transfer and the petition date).

[25] *SPC Plastics Corp*, 224 B.R. at 31. *See also Belfance*, 210 B.R. at 99 (explaining an open account as a credit-debt relationship based "on a revolving charge or open account," such as a line of credit a debtor has with a lending institution).

[26] *See SPC Plastics Corp.*, 224 B.R. at 30 ("It is undisputed that at least two trade creditors with open accounts at the time of the LBO were creditors of the Debtor on the same open accounts at the time of the bankruptcy filing."); *Belfance*, 210 B.R. at 99 ("Citibank Visa and Citibank MasterCard [were] [e]ach owed a debt on a revolving charge or open account."); *Kelly*, 2013 WL 3989061 at *8 and n.10 (defendant did not dispute that seven credit card claimants held allowable unsecured claims as of the petition date and the transfer dates or anytime thereafter based on "an open-ended, revolving loan"); *Aluminum Mills Corp.*, 132 B.R. at 890 ("[T]he Complaint elaborates by describing the open accounts as trade accounts under which Debtor has continuously owed money to the creditor.").

[27] *See* Plaintiff's Supplement at ¶¶ 4, 8.

Respectfully submitted,


**THOMPSON & KNIGHT LLP**

By: /s/ *David M. Bennett*
    David M. Bennett
    Bar No. 02139600
    Stephen C. Rasch
    Bar No. 16551420
    Cassandra Sepanik Shoemaker
    Bar No. 24070592
    Julie C. Abernethy
    Bar No. 24056947

    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    Telephone: (214) 969-1700
    Facsimile: (214) 969-1751

**ATTORNEYS FOR NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; AND DAVID HAYES**

059310.000023 21263206.8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of October, 2018, a true and correct copy of the foregoing was served (i) on the parties via the Court's electronic notification system; and (ii) on the below parties by regular US mail.

/s/ *David M. Bennett*
David M. Bennett

William R. Greendyke
Robert Bernard Bruner
1301 McKinney, Suite 5100
Houston, TX 77010

R. Paul Yetter
Robert K. Ellis
Wyatt J. Dowling
811 Main, Suite 4100
Houston, Texas 77002

John F. Higgins
State Bar No. 24062714
1000 Main St., 36th Floor
Houston, Texas 77002

Stephen B. Edmundson
Gregory S. Hudson
1221 McKinney Street, Suite 2900
Houston, Texas 77010