## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-34028 |
| | § | |
| NORTHSTAR OFFSHORE GROUP, LLC | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| JAMES KATCHADURIAN, Litigation Trustee, on behalf of Northstar Litigation Trust, | § | |
| | § | |
| | § | |
| | § | ADVERSARY NO. 18-03079 |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; DAVID HAYES; S. GLYNN ROBERTS; GAYLON FREEMAN; MARK STEVENS; and JAMES P. ULM, II, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

### TK DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
### OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE**

**MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  Introduction ...................................................................................................2

II.  Argument and Authorities...........................................................................5

    A.  Plaintiff fails to state any claims against NGP Capital or
        NGP Parallel Fund ...........................................................................6

    B  Plaintiff fails to state fraudulent-transfer claims against
       TK Defendants for Northstar's payment of the purchase
       price to Propel Energy for the Creole Assets .....................................7

        1.  Plaintiff's allegation that NGP-NOG and Individual
            TK Defendants financially benefitted from causing
            Northstar to overpay Propel Energy for the Creole
            Assets is facially implausible .......................................8

        2.  Neither NGP-NOG nor Individual TK Defendants
            received a benefit from Northstar's payment to
            Propel Energy that would render them liable
            under TUFTA or the Bankruptcy Code ....................................10

    C.  Plaintiff fails to state claims for actual fraudulent transfer
       against TK Defendants ....................................................14

    D.  The two-year look-back period bars Plaintiff's claim
       under 11 U.S.C. § 548(a)(1)(A) for Northstar's 2012
       payment of the purchase price for the Creole Assets to
       Propel Energy ................................................................16

    E.  Plaintiff fails to state a claim for breach of the fiduciary
       duty of loyalty against Individual TK Defendants for
       Northstar's purchase of the Creole Assets from Propel
       Energy .........................................................................17

    F.  Any amendment would be futile .....................................................19

III.  Conclusion................................................................................................20

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page iii**

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

<u>**Cases**</u>

*Asarco LLC v. Americas Mining Corp.*,
    382 B.R. 49 (S.D. Tex. 2007)........................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................2, 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................5, 6, 7

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
    838 F.2d 890 (7th Cir. 1988). ....................................................................13

*In re Brown Med. Ctr., Inc.*,
    552 B.R. 165 (S.D. Tex. 2016) ..................................................................15

*Clapper v. Am Realty Inv'rs, Inc.*,
    3:14-CV-2970-D, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016).......................9

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ....................................................................10

*In re Cyr*,
    602 B.R. 315 (Bankr. W.D. Tex. 2019)........................................................14

*In re Elrod Holdings Corp.*,
    394 B.R. 751 (Bankr. D. Del. 2008)..............................................................8

*In re Finley, Kumble*,
    130 F.3d 52 (2d Cir. 1997) .......................................................................13

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ..................................................................6

*In re Hechinger Inv. Co. of Del.*,
    327 B.R. 537 (D. Del. 2005).....................................................................14

*In re The Heritage Org., L.L.C.*,
    413 B.R. 438 (Bankr. N.D. Tex. 2009) .......................................................12

*In re Int'l Mgmt. Assoc.*,
    399 F.3d 1288 (11th Cir. 2005) .................................................................13

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page iv**

*Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................................12

*Janvey v. Libyan Invest. Auth.*,
    840 F.3d 248 (5th Cir. 2016) ..............................................................11, 12

*Jones v. Alcoa, Inc.*,
    339 F.3d 359 (5th Cir. 2003) ....................................................................16

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
    453 B.R. 645 (N.D. Tex. 2011)..................................................................10

*In re Life Partners Holdings, Inc.*,
    No. 15-40289-RFN11,  2017 WL 5599485  (N.D. Tex. Nov. 17, 2017) ..............14

*Mack v. Newton*,
    737 F.2d 1343 (5th Cir. 1984) ....................................................................13

*In re Mastro*,
    No. ADV 09-01577,  2011  WL 3300370
    (B.A.P. 9th Cir. Mar. 1, 2011) ..................................................................12

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ....................................................................16

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) ......................................................................18

*Papasan v. Allain*,
    478 U.S. 265 (1986)..................................................................................6

*Peacock v. AARP, Inc.*,
    181 F. Supp. 3d 430 (S.D. Tex. 2016)........................................................10

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ......................................................................2

*Reed v. Linehan (In re Soporex, Inc.)*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011) ........................................................18

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
    620 F.3d 465 (5th Cir. 2010) ....................................................................19

*Taylor v. Rothstein Kass & Co., PLLC*,
    No. 3:19-CV-1594-D,  2020 WL 554583  (N.D. Tex. Feb. 4, 2020)....................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................16

*In re Vivaro Corp.*,
    524 B.R. 536 (Bankr. S.D.N.Y. 2015) ...........................................................12

*In re Xtreme Power Inc.*,
    563 B.R. 614 (Bankr. W.D. Tex. 2016).....................................................17, 18

### Rules and Statutes

Federal Rule of Bankruptcy Procedure 7008 ............................................................7

Federal Rule of Civil Procedure 8.............................................................5, 7, 9, 14

Federal Rule of Civil Procedure 12....................................................1, 16, 17, 19

Texas Business & Commerce Code § 24.005 ............................................1, 14, 15, 20

Texas Business & Commerce Code § 24.008 ............................................................7, 8

Texas Business & Commerce Code § 24.009 ............................................................7, 8

11 U.S.C. § 544 ......................................................................................................7, 8

11 U.S.C. § 548 ...........................................................................1, 5, 7, 14, 16, 20

11 U.S.C. § 550 ...............................................................................................7, 8, 13

## TK DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
## OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, Defendants NGP Energy Capital Management, L.L.C., NGP X US Holdings L.P., NGP Natural Resources X, L.P., NGP X Parallel Holdings, L.P., NGP Natural Resources X Parallel Fund, L.P., and NOG Royalty Holdings, L.P. (together, "Entity TK Defendants"), and Christopher Ray, Jesse Bomer, Tomas Ackerman, David Albin, and David Hayes (together, "Individual TK Defendants") (collectively, "TK Defendants"), ask that the Court dismiss with prejudice the following claims asserted against them by James Katchadurian, Trustee of the Northstar Litigation Trust ("Plaintiff"), in Plaintiff's First Amended Complaint [Doc. 88] ("Amended Complaint"):

- Counts 1, 2, 5, and 6:  Claims for fraudulent transfers, conspiracy, and aiding and abetting against Defendants NGP Energy Capital Management, L.L.C. ("NGP Capital") and NGP Natural Resources X Parallel Fund, L.P. ("NGP Parallel Fund");

- Counts 1 and 2:  Claims for fraudulent transfer based on Plaintiff's allegations regarding a purchase price that debtor Northstar Offshore Group, LLC  ("Northstar") paid to Propel Energy L.L.C. ("Propel Energy") for oil and gas assets in the Creole Field (the "Creole Assets");

- Counts 1 and 2:   Claims for actual fraudulent transfers under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A); and

- Count 3:  Claims for breach of the fiduciary duty of loyalty based on Plaintiff's allegations  regarding Northstar's purchase of the Creole Assets from Propel Energy.

## I.      Introduction

The same fatal flaw that infected Plaintiff's Original Complaint—and for which the Court granted Plaintiff leave to attempt to cure—renders Plaintiff's claims for fraudulent transfers and breach of fiduciary duty implausible on their face.  Plaintiff claims in his Amended Complaint— as he did in his Original Complaint—that Individual TK Defendants breached their fiduciary duty of loyalty, and caused Northstar to make a fraudulent transfer, by "caus[ing] [Northstar] to overpay another NGP portfolio company, Propel [Energy], for the benefit of NGP."[1]

Plaintiff alleges that NOG Royalty Holdings, L.P. ("NGP-NOG") owned 87% of Northstar at the time of Northstar's purchase from Propel Energy.[2]  Even accepting as true Plaintiff's conclusory allegation that Propel Energy was an "NGP portfolio company,"[3]  Plaintiff fails to allege facts that would allow the Court to draw a reasonable inference that NGP-NOG possessed a financial incentive to cause Northstar to overpay for the Creole Assets.  Plaintiff alleges that Northstar purchased the Creole Assets from Propel Energy,[4] but fails to allege the percentage ownership of Propel Energy in those assets.  If in fact Propel Energy owned a much smaller percentage interest in the purchased Creole Assets than the interest owned by NGP-NOG in Northstar, then NGP-NOG's financial interest would be completely aligned with Northstar's financial interest—to pay *as little as possible* for the Creole Assets.

In that scenario—which as discussed below is in fact the case—the Individual TK Defendants would not have the conflicting interest that is the basis for Plaintiff's breach of

---

[1] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].

[2] Plaintiff's First Am. Compl. ¶ 5 [Dkt. No. 88].  In fact, it was NGP X US Holdings L.P. ("NGP X US") that held a membership interest in Northstar until July 7, 2014, when NGP X US assigned its membership interest in Northstar to NGP-NOG.

[3] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not accept conclusory allegations, unwarranted deductions, or legal conclusions.").

[4] Plaintiff's First Am. Compl. ¶¶ 40-41 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 2**

fiduciary duty claim. If Propel Energy owned a much smaller percentage interest in the purchased Creole Assets than the interest owned by NGP-NOG in Northstar, NGP-NOG would be *worse off* financially if Northstar "overpaid" for the Creole Assets. So without alleging what portion of the Creole Assets was owned by Propel Energy, Plaintiff has failed to allege facts that create a plausible inference that NGP-NOG's incentive was any different from Northstar's incentive. And if the interests of Northstar and NGP-NOG were 100% aligned on paying as little as possible for the Creole Assets, the Individual TK Defendants, who served as managers of Northstar, had no conflicting interest by virtue of their affiliation with NGP-NOG or any other Entity TK Defendant. Merely alleging that Propel Energy held *some* unspecified interest in the Creole Assets sold to Northstar is not enough to reasonably infer a conflicting incentive held by any TK Defendant. Rather, to create the inference he asks the Court to draw, Plaintiff must allege that Propel Energy owned a sufficient enough interest in the Creole Assets that NGP-NOG or an affiliate would benefit financially more from the resulting windfall on the seller side than NGP-NOG would suffer a detriment as an alleged 87% owner on the buyer side. As discussed below, Plaintiff cannot, consistent with the requirements of Rule 11, allege facts sufficient to allow for a plausible inference that NGP-NOG had a different financial interest than Northstar in the purchase price of the Creole Assets.

In fact, the Purchase and Sale Agreement (the "PSA") for the Creole Assets—a document that is part of the pleadings that the Court may consider in determining TK Defendants' Motion for Partial Dismissal—highlights precisely the implausibility of any such financial motive. Propel Energy owned only about a 35% working interest in the Creole Assets and thus would have received a small fraction—only about $11.5 million—of the alleged $33 million that

Plaintiff claims Northstar overpaid for the Creole Assets.[5]  Causing Northstar to overpay Propel Energy for the Creole Assets would be a losing proposition for TK Defendants and to their financial *detriment* rather than their financial benefit.   Instead, Propel Energy's minority ownership interest in the Creole Assets created the *opposite* financial incentive—to cause Northstar to *pay as little as possible* to Propel Energy.

Taken as true, Plaintiff's own allegations demonstrate exactly that incentive to pay as little as possible for the Creole Assets.  Plaintiff points to an email communication that, properly viewed, demonstrates the *opposite* of the inference Plaintiff asks the Court to draw.  Plaintiff claims that, with respect to the price that Northstar would pay for the Creole Assets, "NGP Director Ackerman told Northstar Director Roberts to 'think about where you love the deal and let me know and I can back channel.'"[6]  Importantly, Roberts, the alleged recipient of the email, is one of Northstar's managers that Plaintiff alleges does *not* have any affiliation with any TK Defendant.[7]  So Roberts' only interest would have been to cause Northstar to pay the *lowest* price possible for the Creole Assets.  A price that Roberts would "love" would necessarily be a **low price**, not a price that would that constitute an "overpayment."   So, assuming that Plaintiff accurately quotes from an email that was sent,[8] the email reflects that Ackerman, a Northstar manager who is alleged to have an affiliation with one or more Entity TK Defendants, is telling Roberts to pick a purchase price that is **so low** that Roberts would "love it."   The "back channel"

---

[5] Exhibit A, Purchase and Sale Agreement between Propel Energy, LLC and Each of the Other Undersigned Sellers (collectively, as Seller) and Northstar Offshore Group, LLC, as Buyer, dated Sept. 27, 2012, at 121.  *See* Plaintiff's First Am. Compl. ¶ 41 [Dkt. No. 88] ("Northstar initially proposed a bid value of $80 million for the asset. Through its NGP Directors, NGP caused Northstar to increase its bid by 40% to over $113 million.").

[6] Plaintiff's First Am. Compl. ¶ 41 [Dkt. No. 88].

[7] Plaintiff's First Am. Compl. ¶ 73 [Dkt. No. 88] (noting that Roberts, Freeman, Stevens, and Ulm were "employed as Northstar's senior officers.").

[8] TK Defendants do not know whether Plaintiff has accurately quoted from an email that was sent, as only Plaintiff has access to Northstar's email records and has not produced emails to TK Defendants.  For purposes of this motion, TK Defendants will assume, without conceding, that the email quote is accurate.

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 4**

can only be viewed as an effort to help persuade the sellers of the Creole Assets to accept a price **low enough** that Roberts would "love it." It is nonsensical to suggest that the email creates an inference that Ackerman was trying to persuade Roberts to *overpay* for the Creole assets. There is no reason why Roberts (CEO of Northstar) would "love" to have Northstar overpay in an asset purchase.

For that reason—among the following ones—Plaintiff's Amended Complaint fails to state claims for which the Court can grant relief:

- Counts 1, 2, 5, and 6: Plaintiff fails to plead any factual allegations regarding the role of Defendants NGP Capital or NGP Parallel Fund in any of the claims that Plaintiff asserts against them. Therefore, Plaintiff's claims against NGP Capital and NGP Parallel Fund for fraudulent transfers, conspiracy, and aiding and abetting should be dismissed.

- Counts 1 and 2: Plaintiff cannot recover from any TK Defendant for the payment of the purchase price for the Creole Assets to Propel Energy because no TK Defendant was a transferee of that purchase price, and Plaintiff's allegations that TK Defendants financially benefitted from that payment to Propel Energy are facially implausible.

- Counts 1 and 2: Plaintiff fails to plead facts plausibly suggesting the fraudulent intent element of his claims for actual fraudulent transfers.

- Count 2: Plaintiff's claim under 11 U.S.C. § 548 for Northstar's purchase of the Creole Assets is barred by the two-year look-back period.

- Count 3: Plaintiff fails to plead facts negating the business judgment rule because no facts raise the reasonable inference that any Individual TK Defendant breached his fiduciary duty of loyalty to Northstar in connection with Northstar's purchase of the Creole Assets from Propel Energy.

## II.    Argument and Authorities

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face."[9]

---

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 5**

Accordingly, "a plaintiff's obligation to provide the "grounds" of his "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10]   Furthermore, although courts must accept all factual allegations as true, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."[11]   The burden, therefore, rests on the plaintiff to provide a complaint with "enough factual matter (taken as true) to suggest that [the plaintiff] is entitled to relief."[12]

A complaint's factual allegations must "raise a right to relief above the speculative level"[13] and state a claim that is "plausible on its face."[14]   This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."[15]   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]   But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[17]   Plaintiff's causes of action fail to cross the line from possibility to plausibility and therefore fail as a matter of law.

## A.    Plaintiff fails to state any claims against NGP Capital or NGP Parallel Fund.

Plaintiff asserts claims for fraudulent transfer, conspiracy, and aiding and abetting against NGP Capital and NGP Parallel Fund.[18]   Yet nowhere in his Amended Complaint (other than

---

[10] *Id.*

[11] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Twombly*, 550 U.S. at 556.

[13] *Id.* at 555.

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 679.

[18] Plaintiff's First Am. Compl. ¶¶ 59-71, 79-83 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 6**

naming them as defendants) does Plaintiff allege *any* factual basis for asserting any claims against them.

Rule 7008 of the Federal Rules of Bankruptcy Procedure makes Rule 8 applicable to adversary proceedings.  Under Rule 8, Plaintiff must plead "enough factual matter (taken as true) to suggest that [he] is entitled to relief" against NGP Capital and NGP Parallel Fund.[19]   To satisfy that standard, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that [NGP Capital and NGP Parallel Fund] [are] liable for the misconduct alleged."[20]   Plaintiff alleges *no facts whatsoever*—much less facts plausibly suggesting—that NGP Capital or NGP Parallel Fund are liable for any of the misconduct Plaintiff alleges in his Amended Complaint.   Therefore, Plaintiff fails to state a claim for relief that is plausible on its face against NGP Capital and NGP Parallel Fund, and Plaintiff's claims against them should be dismissed.

**B.      Plaintiff fails to state fraudulent-transfer claims against TK Defendants for Northstar's payment of the purchase price to Propel Energy for the Creole Assets.**

In Counts 1 and 2 of his Amended Complaint, Plaintiff claims that Northstar's alleged overpayment to Propel Energy for the purchase of the Creole Assets was a fraudulent transfer.[21] But neither the Texas Uniform Fraudulent Transfer Act ("TUFTA") nor 11 U.S.C. § 548 permits Plaintiff to recover for that transfer from TK Defendants.

TUFTA allows recovery for a fraudulent transfer only against the debtor, the transferee, or the person for whose benefit the transfer was made.[22]   11 U.S.C. § 550(a) allows recovery for a transfer avoided under 11 U.S.C. § 544(b) only from the initial transferee, any immediate or

---

[19] *Twombly*, 550 U.S. at 556.

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] Plaintiff's First Am. Compl. ¶¶ 59-71 [Dkt. No. 88].

[22] TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009 (West 2017).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 7**

mediate transferee of such initial transferee, or the entity for whose benefit the transfer was made.[23]   Plaintiff does not allege that any TK Defendant was a transferee of the purchase price for the Creole Assets.  Instead, Plaintiff alleges that Northstar paid the allegedly inflated price for the Creole Assets to Propel Energy.[24]   So, based on Plaintiff's allegations, TUFTA and the Bankruptcy Code may allow for recovery from TK Defendants for the purchase price paid to Propel Energy *only if* Northstar paid the purchase price to Propel Energy for the benefit of TK Defendants.[25]   Plaintiff's only allegations regarding any "benefit"—which in any event are conclusory ones—are implausible on their face and thus fail to state fraudulent-transfer claims against TK Defendants.

> **1.  Plaintiff's allegation that NGP-NOG and Individual TK Defendants financially benefitted from causing Northstar to overpay Propel Energy for the Creole Assets is facially implausible.**

Plaintiff contends that NGP-NOG—and Individual TK Defendants through their "financial interests" in NGP-NOG—profited from causing Northstar to inflate the purchase price paid to Propel Energy for the Creole Assets:

> From the outset, NGP used its control of Northstar to manufacture inflated profits for NGP at Northstar's expense.  In mid-2012, NGP wanted Northstar to buy an offshore oil field from one of NGP's other investments....[26]
>
> NGP wanted Northstar to buy the Creole Field interests from Propel for an inflated price. Padding its profits from the sale of this field would give NGP both immediate accounting benefits and a

---

[23] 11 U.S.C. § 550(a)(1)-(2).

[24] Plaintiff's First Am. Compl. ¶¶ 40-41 [Dkt. No. 88].

[25] *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009 (West 2017) (allowing recovery for fraudulent transfers against a transferee or the person for whose benefit the transfer was made); 11 U.S.C. § 550(a)(1)-(2) (allowing recovery for a transfer avoided under 11 U.S.C. § 544(b) only from a transferee or the entity for whose benefit the transfer was made).  *See Clapper v. Am Realty Inv'rs, Inc.*, 3:14-CV-2970-D, 2016 WL 302313, at *12-13 (N.D. Tex. Jan. 25, 2016) (dismissing claim under Texas Uniform Fraudulent Transfer Act against defendants who were not transferees of assets fraudulently transferred when there were no facts explaining how the alleged fraudulent transfers resulted in any benefit to any defendant); *In re Elrod Holdings Corp.*, 394 B.R. 751, 757 (Bankr. D. Del. 2008) (dismissing fraudulent transfer claims under bankruptcy code against defendants who were not transferees).

[26] Plaintiff's First Am. Compl. ¶ 6 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 8**

> reputational boost in raising future funds…. The NGP Directors
> used this control of Northstar to their personal benefit by virtue of
> their financial ties to NGP as current employees. The NGP
> Directors benefitted from this self-dealing because as employees of
> NGP, their NGP compensation would have been impacted in part
> by the profits of and distributions from Propel.[27]

Strikingly absent from the Amended Complaint is a single fact that would make that alleged financial benefit even *possible*—much less plausible under Rule 8: Plaintiff fails to identify *what portion* of the Creole Assets Propel Energy actually owned and thus *what portion* of the alleged "inflated profits" NGP-NOG could have received through its (unspecified) affiliation with Propel Energy. That factual allegation is necessary to render plausible Plaintiff's allegation that NGP-NOG *could* financially benefit from causing Northstar to pay an inflated price to Propel Energy because Plaintiff alleges that NGP-NOG owned 87% of Northstar when Northstar paid that price to Propel Energy.[28] So Plaintiff would have to assert that Propel Energy owned a larger portion of the Creole Assets than NGP-NOG owned an interest in Northstar to plausibly suggest that NGP-NOG would "manufacture inflated profits for [itself] at Northstar's expense" by paying a higher price to Propel Energy.[29] Merely alleging that Propel Energy owned *some* interest in the Creole Assets does not raise any reasonable inference that NGP-NOG's potential financial interest in the alleged "inflated price" outweighed its alleged 87% financial interest in Northstar.

Further, any such factual allegation that NGP-NOG would "profit" at Northstar's expense by paying an "inflated price" to Propel Energy is belied by the PSA's terms. The PSA identifies each of the sellers that sold their working interests in the Creole Assets to Northstar and their

---

[27] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].

[28] Plaintiff's First Am. Compl. ¶ 5 [Dkt. No. 88].

[29] *See* Plaintiff's First Am. Compl. ¶ 6 [Dkt. No. 88] ("From the outset, NGP used its control of Northstar to manufacture inflated profits for NGP at Northstar's expense.").

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 9**

respective working interests in the Creole Assets.[30]  Propel Energy was one of eleven sellers of the Creole Assets and owned only a 35% working interest in the Creole Assets.[31]  The Court may consider the PSA because Plaintiff references the PSA in his Amended Complaint, and the PSA is central to Plaintiff's fraudulent-transfer claims.[32]  Plaintiff expressly references the PSA in his Amended Complaint.[33]  The PSA is central to Plaintiff's fraudulent-transfer claims because the facial plausibility of those claims—namely that NGP-NOG was financially incentivized to cause Northstar to pay an "inflated price"—depends upon the terms of the PSA showing that Propel Energy had a significant enough ownership interest in the Creole Assets to allow the Court to reasonably infer that NGP-NOG would profit from that "inflated price" paid at Northstar's expense.[34]  The PSA's terms—the terms identifying the sellers and the working interests they sold to Northstar—confirm that Plaintiff's allegation of *any* "benefit" is implausible on its face.

> **2.    Neither NGP-NOG nor Individual TK Defendants received a benefit from Northstar's payment to Propel Energy that would render them liable under TUFTA or the Bankruptcy Code.**

Plaintiff alleges that (1) Northstar paid an "inflated price" to Propel Energy for the Creole Assets; and (2) NGP-NOG and Individual TK Defendants benefitted from that "inflated price" via "accounting benefits," "a reputational boost in raising future funds," and

---

[30] Exhibit A, Purchase and Sale Agreement between Propel Energy, LLC and Each of the Other Undersigned Sellers (collectively, as Seller) and Northstar Offshore Group, LLC, as Buyer, dated Sept. 27, 2012, at 121.

[31] Exhibit A, Purchase and Sale Agreement between Propel Energy, LLC and Each of the Other Undersigned Sellers (collectively, as Seller) and Northstar Offshore Group, LLC, as Buyer, dated Sept. 27, 2012, at 121.

[32] Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[33] Plaintiff's First Am. Compl. ¶ 41 [Dkt. No. 88] ("In September of 2012, Northstar and Propel signed the sale agreement significantly overpaying for the Creole Field interests.").

[34] Documents are central to a claim when they are necessary to establish an element of one of the plaintiff's claims. *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 434 (S.D. Tex. 2016).  Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 10**

"compensation…impacted in part by the profits of and distributions from Propel [Energy]."[35] But those alleged benefits are not the type of independent or direct benefits that warrant recovery under TUFTA or the Bankruptcy Code from NGP-NOG or Individual TK Defendants.

First, the Amended Complaint contains no allegations sufficient to support that NGP-NOG and Individual TK Defendants received any independent benefit from the alleged overpayment.  In *Janvey v. Libyan Investment Authority,* the United States Court of Appeals for the Fifth Circuit held that a director or shareholder's mere control over a company that received a fraudulent transfer, alone, does not make the director or shareholder liable as an intended beneficiary of the fraudulent transfer.[36]   Rather, a director, shareholder, or officer of the transferee cannot be held liable for a fraudulent transfer unless it receives an "independent benefit" from the transfer.[37]   An "independent benefit" is the type of benefit that would result to a guarantor "[w]hen a debtor transfers assets to a creditor to satisfy a guaranteed debt":

> When a debtor transfers assets to a creditor to satisfy a guaranteed debt, there are independent benefits: The creditor, as transferee, receives the assets, and the guarantor, as the beneficiary, retains assets that it would otherwise have lost as a result of the debtor's insolvency. Another creditor might seek to recover either the assets transferred by the debtor or the assets saved by the creditor, or both. This is because the transferee and beneficiary have independent obligations.[38]

Plaintiff alleges that Propel Energy was a "NGP company," "NGP affiliate," and "NGP portfolio company."[39]   Even interpreting those conclusory allegations as asserting that NGP-NOG was a sole member of Propel Energy or that Individual TK Defendants were directors or officers of Propel Energy—facts Plaintiff does *not* allege—it was Propel Energy and the other

---

[35] Plaintiff's First Am. Compl. ¶¶ 6, 40 [Dkt. No. 88].
[36] *Janvey v. Libyan Invest. Auth.*, 840 F.3d 248, 266 (5th Cir. 2016).
[37] *Id.*
[38] *Id.*
[39] Plaintiff's First Am. Compl. ¶¶ 40, 63, 74 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 11**

sellers of the Creole Assets, as transferees of the purchase price, which had an obligation under the PSA. "[NGP-NOG's and Individual TK Defendants'] obligation is merely derivative of that obligation, not independent of it."[40]   So "[e]ven if [NGP-NOG or an Individual TK Defendant] itself owned and controlled [Propel Energy's] assets, either [NGP-NOG/Individual TK Defendant] or [Propel Energy] would have received the benefit of the transfer, but not both."[41] Plaintiff admits that Propel Energy received the alleged overpayment.[42]   Therefore, the derivative benefits that Plaintiff alleges NGP-NOG and Individual TK Defendants obtained from causing Northstar to pay an "inflated price" to Propel Energy—"accounting benefits," "a reputational boost in raising future funds," and "compensation…impacted in part by the profits of and distributions from Propel [Energy]"[43]—provide no legal basis for fraudulent-transfer liability.[44]

Second, the benefits that Plaintiff claims NGP-NOG and Individual TK Defendants received from the alleged "inflated price" paid to Propel Energy did not derive directly from it. "The benefit must derive directly from the transfer, not from the use to which it is put by the

---

[40] *Janvey*, 840 F.3d at 266; *see also id.* ("Further, when a debtor transfers assets to a creditor to satisfy a guaranteed debt, the guarantor is involved as a party, or at least an independent obligor, to the contract giving rise to the transfer. But LIA [the transferee's sole shareholder] was not a party to the subject contract.").

[41] *Id.*

[42] Plaintiff's First Am. Compl. ¶ 41 [Dkt. No. 88].

[43] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].

[44] *Janvey*, 840 F.3d at 267 (finding that sole shareholder of transferee was not transfer beneficiary under TUFTA); *In re Vivaro Corp.*, 524 B.R. 536, 562 (Bankr. S.D.N.Y. 2015) (holding that conclusory allegations regarding 'benefit' from challenged transfers to defendants did not state a cause of action to hold defendants liable for alleged fraudulent transfers that was plausible on its face, and observing a lack of any specific allegations about *how or why* defendants benefited from the transfers or that they were the intended beneficiaries of the transfers); *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr. S.D.N.Y. 1999) (clarifying that "[t]he key to pegging the entity for whose benefit the initial transfer was made has two sides: 1) the entity must be the intended beneficiary and 2) the intended benefit must originate from the initial transfer," and dismissing without prejudice the complaint because the trustee failed to plead what benefit the individual was intended to receive from the payments to his son or, if he did receive a benefit, that he was the intended beneficiary);

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 12**

transferee."[45]   So only someone who receives a benefit from the *initial transfer* is a person for whose benefit the transfer was made.[46]   "The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money."[47] Nowhere in his Amended Complaint does Plaintiff allege that any TK Defendant received any part of the alleged "inflated price" paid to Propel Energy—the actual property that Plaintiff contends was fraudulently transferred.   To the contrary, indirect, derivative benefits such as "accounting benefits," "a reputational boost in raising future funds," and "compensation…impacted in part by the profits of and distributions from Propel [Energy]"[48] are the *only* benefits Plaintiff contends NGP-NOG and Individual TK Defendants received.   Such alleged "benefits" cannot render NGP-NOG or Individual TK Defendants liable for any alleged "inflated price" that Propel Energy received.

---

[45] *In re Mastro*, No. ADV09-01577, 2011 WL 3300370, at *9–10 (B.A.P. 9th Cir. Mar. 1, 2011) ("The benefit must derive directly from the transfer, not from the use to which it is put by the transferee. Someone who receives the money later on is not an entity for whose benefit such transfer was made."). *See also In re The Heritage Org., L.L.C.*, 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009) ("The phrase 'entity for whose benefit such transfer was made' does 'not simply reference the next pair of hands; it references entities that benefit as guarantors of the debtor or otherwise, without ever holding the funds.' . . . Nor is an unquantifiable advantage the sort of 'benefit' contemplated by § 550. Rather, the common example of the sort of 'benefit' contemplated by Congress in enacting § 550 is the benefit to the guarantor by the payment of the underlying debt of the debtor."); *In re Int'l Mgmt. Assoc.*, 399 F.3d 1288, 1292-93 (11th Cir. 2005) (whatever benefit one shareholder obtained when, in order to satisfy condition placed by lender on extension of credit to bankrupt corporation, corporation repurchased its allegedly worthless stock from its other shareholder for sum of $100,000 and thereby enabled this first shareholder to gain sole control over corporation's assets, as reduced by its $100,000 payment to second shareholder, was not the kind of quantifiable benefit needed to support recovery against first shareholder, following avoidance of this stock repurchase transaction as fraudulent transfer, on theory that first shareholder was "entity for whose benefit" the fraudulent transfer was made). *See also id.* at 1292 ("The paradigm case of a benefit under § 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor."); *In re Finley, Kumble*, 130 F.3d 52, 57 (2d Cir. 1997) (stating that the phrase "entity for whose benefit such transfer was made" usually "references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds"); *Mack v. Newton*, 737 F.2d 1343, 1359-60 (5th Cir. 1984) (rejecting as too broad the trustee's allegation that the principals in a partnership had received an incidental benefit from auctioning off cattle and using the proceeds to operate their dairy enterprise, deeming this "an incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received").

[46] *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988).

[47] *Id.*

[48] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 13**

Plaintiff has failed to plausibly allege any legal basis that would allow him to recover from TK Defendants for Northstar's payment to Propel Energy. Plaintiff's fraudulent-transfer claims based on that payment should be dismissed.

**C.     Plaintiff fails to state claims for actual fraudulent transfer against TK Defendants.**

Plaintiff's actual fraudulent-transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) (Count 1) and 11 U.S.C. § 548(a)(1)(A) (Count 2) should be dismissed because Plaintiff fails to plead facts plausibly suggesting that TK Defendants acted with actual intent to defraud any of Northstar's creditors.

Plaintiff's actual fraudulent-transfer claims under TEX. BUS. & COM. CODE § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A) require that Plaintiff plead facts showing that a defendant transferred assets "with actual intent to hinder, delay, or defraud any of the debtor's creditors."[49] In order to plausibly allege TK Defendants' "actual intent to hinder, delay, or defraud any of [Northstar's] creditors," Plaintiff must, at the very least, allege facts demonstrating the "badges of fraud"[50] listed in TUFTA or the Bankruptcy Code that could provide circumstantial evidence

---

[49] *In re Life Partners Holdings, Inc.*, No. 15-40289-RFN11, 2017 WL 5599485, at *5 (N.D. Tex. Nov. 17, 2017).

[50] *See* TEX. BUS. & COM. CODE ANN. § 24.005(b) (West 2017) (providing that, "[i]n determining actual intent…, consideration may be given, among other factors, to whether: (1) transfer or obligation was to an insider; (2) debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation incurred, the debtor had been sued or threatened with a suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor"); *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005) (badges of fraud under 11 U.S.C. § 548 are (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control, or dominion by the debtor; and (6) secrecy or concealment of the transaction).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 14**

of actual intent to defraud creditors.[51] But the only "badges of fraud" that Plaintiff pleaded—that the consideration was not reasonably equivalent to the value of the asset transferred and that Northstar was insolvent—are not sufficient to allege actual intent to hinder, delay, or defraud creditors because those are elements of a constructive fraud claim.[52]

And interestingly, facts that Plaintiff does plead demonstrate that TK Defendants did *not* have an intent to defraud any creditors. Plaintiff claims that, with respect to determining the price that Northstar would pay for the Creole Assets, "NGP Director Ackerman told Northstar Director Roberts to 'think about where you love the deal and let me know and I can back channel.'"[53] This alleged quote indicates that TK Defendants were trying to negotiate the *lowest price* possible for the Creole Assets by consulting a Northstar manager who was not affiliated with any Entity TK Defendant about the price.

Plaintiff further alleges that TK Defendants wrote in various emails that they had every motive to *create and preserve as much equity as possible in Northstar*:

- "Northstar is in survival mode. The goal is to salvage as much equity value as we can without going bankrupt."[54]

- "We have no more time, we don't want to bankrupt this company for the sake of all of our reputations."[55]

---

[51] *In re Cyr*, 602 B.R. 315, 326 (Bankr. W.D. Tex. 2019) (explaining that while the Fifth Circuit has not yet decided the issue of whether Rule 9(b)'s heighted pleading standards apply to fraudulent transfers, the Western District Bankruptcy Court has held that Rule 9(b) applies to fraudulent transfer claims based on actual fraud but holding that "[b]ecause badges of fraud are used to establish actual intent to hinder, delay, or defraud—the condition of the debtor's mind at the time of the transfer—factual allegations regarding badges of fraud need only comply with Rule 8 and plead factual allegations that demonstrate that relief is plausible.").

[52] *See In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 171 (S.D. Tex. 2016) (dismissing claim for actual fraudulent transfer under Texas Uniform Fraudulent Transfer Act and 11 U.S.C. § 548 because the only badges of fraud that the plaintiff pleaded with particularity were insolvency and lack of reasonably equivalent value, and the plaintiff therefore failed to state a claim for actual fraudulent transfer rather than constructive fraudulent transfer); *Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-1594-D, 2020 WL 554583, at *12 (N.D. Tex. Feb. 4, 2020) (recognizing that fraudulent transfer claims based on actual intent under Section 24.005(a)(1) of the Texas Business and Commerce Code are "likely subject to Rule 9(b)", and holding that plaintiff failed to sufficiently allege facts to allow a reasonable inference to be drawn that the debtors acted with fraudulent intent because plaintiff failed to plead *any* of the badges of fraud).

[53] Plaintiff's First Am. Compl. ¶ 41 [Dkt. No. 88].

[54] Plaintiff's First Am. Compl. ¶ 46 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 15**

Because Plaintiff fails to—nor can he—plausibly allege that TK Defendants acted with actual intent to defraud any of Northstar's creditors, Plaintiff's actual fraudulent-transfer claims in Counts 1 and 2 of the Amended Complaint should be dismissed.

**D.    The two-year look-back period bars Plaintiff's claim under 11 U.S.C. § 548(a)(1)(A) for Northstar's 2012 payment of the purchase price for the Creole Assets to Propel Energy.**

A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time barred and the pleadings fail to set forth or raise some basis for tolling the statute.[56]   Plaintiff added a claim to his Amended Complaint—without leave to do so—under 11 U.S.C. § 548(a)(1)(A) for Northstar's payment of the purchase price for the Creole Assets to Propel Energy. [57]

Section 548(a)(1) allows a two-year look-back period from the date of the filing of the bankruptcy petition.[58]   Plaintiff alleges that Northstar made the alleged overpayment to Propel Energy in September 2012.[59]   Northstar filed its bankruptcy petition on August 12, 2016.[60] Therefore, as of the petition date, the two-year look-back period had already expired (as of August 12, 2014) on Plaintiff's § 548(a)(1) claim based on Northstar's 2012 purchase of the Creole Assets.   Plaintiff does not allege—nor can he allege—that any tolling doctrine tolled that

---

[55] Plaintiff's First Am. Compl. ¶ 49 [Dkt. No. 88].

[56] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

[57] Plaintiff's First Am. Compl. ¶ 70 [Dkt. No. 88].

[58] 11 U.S.C. § 548(a)(1).

[59] Plaintiff's First Am. Compl. ¶¶ 6, 40, 41, 63 [Dkt. No. 88].

[60] "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 16**

two-year look-back period.   Therefore, considering the filing date of Northstar's bankruptcy petition—a matter of which the Court may take judicial notice—it is evident on the face of the Amended Complaint that the two-year look-back period bars Plaintiff's claim under § 548(a)(1)(A) based on Northstar's 2012 purchase of the Creole Assets in Count 2 of the Amended Complaint.

**E.      Plaintiff fails to state a claim for breach of the fiduciary duty of loyalty against Individual TK Defendants for Northstar's purchase of the Creole Assets from Propel Energy.**

Plaintiff claims in Count 3 of the Amended Complaint that Individual TK Defendants "violated their fiduciary duties through acts of self-dealing and conflicting interests, including having Northstar overpay NGP affiliates for the Creole Field assets…."[61]  But Plaintiff fails to plead facts sufficient to rebut the presumption of the business judgment rule because the facts alleged do not raise the reasonable inference that Individual TK Defendants breached their duties of loyalty to Northstar.

The business-judgment rule places on Plaintiff the burden of pleading facts sufficient to rebut the presumption that a director acted in the best interest of a corporation.[62]  To rebut the business-judgment rule on a 12(b)(6) motion to dismiss, the alleged facts must raise the reasonable inference that the board of directors breached either its duty of loyalty or duty of care.[63]  If a plaintiff fails to satisfy this burden, the court should decline to substitute its judgment for the decision of the board, provided the board's decision can be attributed to any rational

---

[61] Plaintiff's First Am. Compl. ¶ 74 [Dkt. No. 88].

[62] *In re Xtreme Power Inc.*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016) (applying Delaware law).  Delaware law applies to the scope of a member or manager's obligations to Northstar because Northstar was formed under the laws for Delaware. *Asarco LLC v. Americas Mining Corp.*, 382 B.R. 49, 61 (S.D. Tex. 2007) (applying Texas choice-of-law rules, Delaware law—the state under which limited liability company was formed—applied to whether defendant owed limited liability company a fiduciary duty and whether he breached that duty).

[63] *In re Xtreme Power Inc.*, 563 B.R. at 642.

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 17**

business purpose. [64]

The duty of loyalty requires directors to place the best interests of a company above any self-interest held by a director and not shared by all stockholders generally. [65]  Delaware law presumes that directors always act in a loyal manner. [66]  To rebut this presumption, a plaintiff must allege facts plausibly suggesting that the individual directors were either (1) interested in the transaction at issue; or (2) lacked independence to oppose its consummation. [67]  Absent rebutting this presumption, there can be no breach of the duty of loyalty. [68]

Under Delaware law, "interest" means "that directors can neither appear on both sides of the transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." [69]  So evidence of a personal benefit accruing to a director will not establish disloyalty unless the director has a "material" self-interest in the transaction. [70]  Materiality exists when "the alleged benefit is significant enough to make it improbable that the director can perform its duties without being influenced by an overriding personal interest." [71]  So to qualify as a "material" self-interest, "the nature of the director's interest must be substantial, not merely incidental." [72]

Yet such an incidental and immaterial—and in any event implausible—personal benefit is *all* Plaintiff has alleged Individual TK Defendants received from Northstar's alleged payment

---

[64] *Id.*

[65] *Id.* at 632.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002).

[70] *In re Xtreme Power Inc.*, 563 B.R. 614, 632 (Bankr. W.D. Tex. 2016).

[71] *Id.*

[72] *Reed v. Linehan (In re Soporex, Inc.)*, 463 B.R. 344, 393 (Bankr. N.D. Tex. 2011) (applying Delaware law).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 18**

of an "inflated price" to Propel Energy.   Plaintiff alleges that Individual TK Defendants personally financially benefitted from that payment "because as employees of NGP, their NGP compensation would have been impacted in part by the profits of and distributions from Propel [Energy]."[73]

But, as explained above, Plaintiff's allegation that Individual TK Defendants received *any* personal financial benefit—much less the immaterial one Plaintiff alleges—is implausible on its face.   As explained above, the facts Plaintiff asserts reveal that NGP-NOG's financial incentive—and thus Individual TK Defendants' financial incentive—was aligned with Northstar's financial incentive.[74]   And that incentive was for Northstar to pay as little as possible for the Creole Assets, including the 35% working interest that was owned by Propel Energy. Plaintiff alleges that NGP-NOG owned 87% of Northstar and that Individual TK Defendants were "senior NGP employees."[75]   But nowhere does Plaintiff allege *what part* of the Creole Assets Propel Energy owned and thus *how* Individual TK Defendants—presumably through their employment with NGP-NOG or an affiliated entity—would have profited from inflating the purchase price at Northstar's expense.

That Individual TK Defendants would derive *any* personal financial benefit from Propel Energy's unspecified—and factually only 35%—financial interest in the alleged overpayment at the expense of their employer's alleged 87% financial interest in Northstar defies rationality. Plaintiff cannot plausibly allege facts sufficient to support his entitlement to relief for any breach of the duty of loyalty and thus cannot rebut the business judgment rule.   Plaintiff's claims for breach of the fiduciary duty of loyalty based on Northstar's purchase from Propel Energy should

---

[73] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88].

[74] Plaintiff's First Am. Compl. ¶ 40 [Dkt. No. 88] ("…NGP director Ackerman told Northstar Director Roberts to 'think about where you love the deal and let me know and I can back channel.'").

[75] Plaintiff's First Am. Compl. ¶¶ 5, 73 [Dkt. No. 88].

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 19**

be dismissed.

## F.    Any amendment would be futile.

Amendment of a complaint is not warranted where it would be futile—where the complaint would not be able to withstand a motion to dismiss under Rule 12(b)(6).[76]   As discussed above, Plaintiff's claims are either legally defective and/or are factually deficient.  The legal defects cannot be cured.   And Plaintiff cannot—absent filing false pleadings—plead any facts that would cure the factual deficiencies underlying his claims.   Further, Plaintiff already had the chance to amend his complaint and did so.   He should not have another "bite at the apple" in an attempt to create viable claims that he does not possess.  TK Defendants ask that the Court dismiss Plaintiff's claims with prejudice to refiling.

### III.    Conclusion

For these reasons, TK Defendants ask that the Court enter an order dismissing with prejudice the following causes of action that Plaintiff asserts against them in the Amended Complaint:

- <u>Counts 1, 2, 5, and 6</u>:  Claims for fraudulent transfer, conspiracy, and aiding and abetting against Defendants NGP Capital and NGP Parallel Fund;

- <u>Counts 1 and 2</u>:  Claims for fraudulent transfer based on Plaintiff's allegations regarding Northstar's purchase of the Creole Assets from Propel Energy;

- <u>Counts 1 and 2</u>:   Claims for actual fraudulent transfers under Tex. Bus. & Com. Code § 24.005(a)(1) and 11 U.S.C. § 548(a)(1)(A); and

- <u>Count 3</u>:  Claims for breach of the fiduciary duty of loyalty based on Plaintiff's allegations regarding Northstar's purchase of the Creole Assets from Propel Energy.

---

[76] *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

**Motion for Partial Dismissal of Plaintiff's First Amended Complaint – Page 20**

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: _/s/ David M. Bennett_

    David M. Bennett
    Bar No. 02139600
    Stephen C. Rasch
    Bar No. 16551420
    Cassandra Sepanik Shoemaker
    Bar No. 24070592
    Julie C. Abernethy
    Bar No. 24056947

    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    Telephone: (214) 969-1700
    Facsimile: (214) 969-1751

**ATTORNEYS FOR NGP ENERGY CAPITAL MANAGEMENT, LLC; NGP X US HOLDINGS, L.P.; NGP NATURAL RESOURCES X, L.P.; NGP X PARALLEL HOLDINGS, L.P.; NGP NATURAL RESOURCES X PARALLEL FUND, L.P.; NOG ROYALTY HOLDINGS, LP; CHRISTOPHER RAY; JESSE BOMER; TOMAS ACKERMAN; DAVID ALBIN; AND DAVID HAYES**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system on June 23, 2020.

/s/ *David M. Bennett*
David M. Bennett